1

2

3    O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   KEVIN SO,                    )  Case No. CV 08-03336 DDP (AGRx)
                                  )
12             Plaintiff,         )  **ORDER DENYING DEFENDANT LOPATIN'S**
                                  )  **MOTION TO DISMISS FOR FAILURE TO**
13        v.                      )  **STATE A CLAIM, MOTION TO DISMISS**
                                  )  **FOR IMPROPER VENUE, AND MOTION TO**
14   LAND BASE, LLC; UNIVEST      )  **COMPEL ARBITRATION**
     FINANCIAL SERVICES, INC.;    )
15   BORIS LOPATIN, individually  )  [Motion filed on October 16,
     and d/b/a BORIS LOPATIN      )  2009]
16   ASSOCIATES and CHARLES W.    )
     WOODHEAD,                    )
17                                )
               Defendants.        )
18   _____  )

19        This matter comes before the Court on a Motion to Dismiss

20   filed by the defendant Boris Lopatin ("Lopatin"), appearing pro se.

21   After reviewing the papers submitted by the parties and considering

22   the arguments raised therein, the Court DENIES the motion and

23   adopts the following order.

24   **I.    BACKGROUND**

25        The plaintiff Kevin So ("Plaintiff"), a wealthy businessman

26   living in Hong Kong, alleges that he was duped by several

27   conspiring co-defendants, including Lopatin, into investing $30

28   million in an elaborate Ponzi scheme known as the Private

1  Placement Project.  (Second Amended Complaint ("SAC") ¶¶ 22, 39.)

2  Plaintiff asserts a number of causes of action against Lopatin and

3  the other defendants, including, among others, fraud, conversion,

4  and unjust enrichment.

5     Lopatin, appearing pro se, has filed what is styled as a

6  Motion to Dismiss the SAC.[1]  The motion asserts that the SAC should

7  be dismissed because (1)Plaintiff lacks standing, (2) Plaintiff and

8  Lopatin are parties to a binding arbitration agreement, and (3)

9  venue is improper.  Because courts have a duty to construe pro se

10  motions liberally, the Court construes Lopatin's motion as (1) a

11  motion to dismiss for failure to state a claim under Federal Rule

12  of Civil Procedure 12(b)(6) based on Plaintiff's lack of standing;

13  (2) a motion to dismiss for improper venue pursuant to Federal Rule

14  of Civil Procedure 12(b)(3); and (3) a motion to compel

15  arbitration.

16  **II.  DISCUSSION**

17     **A.   Motion to Dismiss for Failure to State a Claim**

18        1.  <u>Legal Standard</u>

19     A complaint will survive a motion to dismiss when it

20  "contain[s] sufficient factual matter, accepted as true, to state a

21  claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>,

22  129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>,

23

24        [1]Lopatin purports to file his motion on behalf of Land Base,
25  LLC, and Boris Lopatin Associates.  (<u>See, e.g.</u>, Reply 2:6-8.)
    However, pursuant to Local Rule 83-2.10.1, "[a] corporation
26  including a limited liability corporation, a partnership including
    a limited liability partnership, an unincorporated association, or
27  a trust may not appear in any action or proceeding <u>pro se</u>."  The
    Court therefore considers this motion to have been filed on behalf
28  of Lopatin individually and not on behalf of Land Base, LLC, or
    Boris Lopatin Associates.

1   550 U.S. 544, 570 (2007)).  When considering a 12(b)(6) motion, a

2   court must "accept as true all allegations of material fact and

3   must construe those facts in the light most favorable to the

4   plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

5   Although a pleading need not include "detailed factual

6   allegations," it must be "more than an unadorned, the-defendant-

7   unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.

8   Conclusory allegations or allegations that are no more than a

9   statement of a legal conclusion "are not entitled to the assumption

10  of truth." Id. at 1950.  In other words, a pleading that merely

11  offers "labels and conclusions," a "formulaic recitation of the

12  elements," or "naked assertions" will not be sufficient to state a

13  claim upon which relief can be granted.  Id. at 1949 (citations and

14  internal quotation marks omitted).

15      "When there are well-pleaded factual allegations, a court

16  should assume their veracity and then determine whether they

17  plausibly give rise to an entitlement of relief." Id. at 1950.

18  Plaintiffs must allege "plausible grounds to infer" that their

19  claims rise "above the speculative level." Twombly, 550 U.S. at

20  555-56.  "Determining whether a complaint states a plausible claim

21  for relief" is "a context-specific task that requires the reviewing

22  court to draw on its judicial experience and common sense." Iqbal,

23  129 S. Ct. at 1950.

24          2.  Analysis

25      Lopatin argues that Plaintiff lacks standing because he has

26  not produced evidence that he in fact lost $30 million and "the

27  true source of the then invested funds is unquestionably in

28  dispute, and of grave concern." (Mot. 3:21-22.)

1    In order to satisfy Article III's standing requirements, a

2  plaintiff must show:

3       (1) it has suffered an injury in fact that is (a) concrete
        and particularized and (b) actual or imminent, not
4       conjectural or hypothetical; (2) the injury is fairly
        traceable to the challenged action of the defendant; and (3)
5       it is likely, as opposed to merely speculative, that the
        injury will be redressed by a favorable decision.
6  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S.

7  167, 180-81 (2000) (internal quotation marks omitted).  At the

8  motion to dismiss stage, allegations are presumed to be correct,

9  and thus "general factual allegations of injury resulting from the

10 defendant's conduct may suffice" to establish the prerequisites for

11 standing.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561

12 (1992).

13    Plaintiff has alleged that he invested in the Private

14 Placement Project and that, as a result, he suffered a financial

15 loss nearly equaling his $30 million investment.  (SAC ¶¶ 22, 39.)

16 At the motion to dismiss stage, these allegations are sufficient to

17 establish Plaintiff's standing.  <u>Lujan</u>, 504 U.S. at 561.

18 Therefore, Lopatin's motion to dismiss pursuant to Federal Rule of

19 Civil Procedure 12(b)(6) is denied.

20    **B.   Motion to Dismiss for Improper Venue**

21         **1.   <u>Legal Standard</u>**

22    Where subject matter jurisdiction is based on diversity of

23 citizenship, venue is proper in:

24       (1) a judicial district where any defendant resides, if
        all defendants reside in the same State, (2) a judicial
25       district in which a substantial part of the events or
        omissions giving rise to the claim occurred, or a
26       substantial part of property that is subject of the
        action is situated, or (3) a judicial district in which
27       any defendant is subject to personal jurisdiction at the
        time the action is commenced, if there is no district in
28       which the action may otherwise be brought.

1  28 U.S.C. § 1391(a).  A motion to dismiss based on a forum

2  selection clause is treated as a Rule 12(b)(3) motion to dismiss

3  for improper venue. See Arqueta v. Banco Mexicano, S.A., 87 F.3d

4  320, 324 (9th Cir. 1996).  When considering a Rule 12(b)(3) motion,

5  the district court need not accept the pleadings as true, Richards

6  v. Lloyd's of London, 135 F.3d 1289, 1292 (9th Cir. 1998), and may

7  consider facts outside of the pleadings, Arqueta, 87 F.3d at 324.

8  In the event of any material disputes of fact, the district court

9  must draw all reasonable inferences in favor of the non-moving

10  party.  Murphy v. Schneider National, Inc., 362 F.3d 1133, 1140

11  (9th Cir. 2004) (internal quotations omitted).

12          2.   Analysis

13      In connection with the alleged Ponzi scheme, Plaintiff and

14  Land Base, LLC entered into a Private Enterprise Assets Exchange

15  Benefits Participation Agreement (the "Land Base Agreement").

16  (Opp. Ex. A.)  Article 5 of the Land Base Agreement provides that

17  "[t]he Law of England and Wales shall be the proper Law . . . with

18  exception of Article 4 that is to be governing [sic] by the Laws of

19  District Columbia, USA [sic]."  (Id.)

20      Lopatin appears to argue that this is a forum selection clause

21  and that venue may only be laid in England.  As an initial matter,

22  the Court notes that Lopatin does not appear to be a party to the

23  Land Base Agreement.  Although he signed the Agreement, he did so

24  in his representative capacity as an officer of Land Base, LLC, and

25  not in his individual capacity.  Therefore, the Court is not

26  convinced that Lopatin has standing to enforce any purported forum

27  selection clause contained within the Land Base Agreement.

28

1    However, even assuming _arguendo_ that he has standing to

2    enforce the terms of the Land Base Agreement, the clause at issue

3    is a choice-of-law provision rather than a forum selection clause.

4    _See, e.g._, 17 Am. Jur. 2D _Contracts_ § 259 (defining a forum

5    selection clause as one that "designates a particular state or

6    court as the jurisdiction in which the parties will litigate

7    disputes arising out of the contract"); _id._ § 261 (defining a

8    choice-of-law provision as one that "names a particular state and

9    provides that the substantial laws of that jurisdiction will be

10   used to determine the validity and construction of the contract").

11    Aside from this choice-of-law provision, Lopatin has failed to

12   articulate why venue is improper.  The Court is satisfied that

13   venue is properly laid in this judicial district either on the

14   basis of 28 U.S.C. §1391(a)(2) or (a)(3).  Therefore, Lopatin's

15   Motion to Dismiss for Improper Venue is denied.

16   **C.   Motion to Compel Arbitration**

17        1.   Legal Standard

18    The Federal Arbitration Act embodies a federal policy in favor

19   of arbitration, and any doubts concerning the scope of arbitrable

20   issues should be resolved in favor of arbitration.  _Simula, Inc. v._

21   _Autoliv, Inc._, 175 F.3d 716, 719 (9th Cir. 1999).  The Federal

22   Arbitration Act provides:

23        If any suit or proceeding be brought in any of the courts
          of the United States upon any issue referable to
24        arbitration under an agreement in writing for such
          arbitration, the court in which such suit is pending, upon
25        being satisfied that the issue involved in such suit or
          proceeding is referable to arbitration under such an
26        agreement, shall on application of one of the parties stay
          the trial of the action until such arbitration has been had
27        in accordance with the terms of the agreement, providing
          the applicant for the stay is not in default in proceeding
28        with such arbitration.

                                    6

1   9 U.S.C. § 3.  Under the FAA, the court's role "is therefore
2   limited to determining (1) whether a valid agreement to arbitrate
3   exists and, if it does, (2) whether the agreement encompasses the
4   dispute at issue."  <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>,
5   207 F.3d 1126, 1130 (9th Cir. 2000).

6          2.  <u>Analysis</u>

7          Article 4 of the Land Base Agreement, which contains terms
8   relating to non-disclosure of confidential information, provides
9   that "[a]ny controversy or claim arising out of or relating to this
10  Transaction Code . . . regarding herein Article 4 Non-disclosures
11  and / or non-circumvention, Good Faith which is not settled by the
12  Parties, shall be subject to binding arbitration."  (<u>Id.</u>)

13         For the reasons set forth above, the Court again notes that
14  Lopatin may not enforce an purported arbitration agreement to which
15  he is not a party.  <u>Britton v. Co-Op Banking Group</u>, 916 F.2d 1405,
16  1413 (9th Cir. 1990) (holding that because the right to compel
17  arbitration is contractual, "one who is not a party to a contract
18  has no standing to compel arbitration").

19         In any event, however, the arbitration provision contained in
20  the Land Base Agreement pertains only to disputes "regarding herein
21  Article 4 Non-disclosures and/ or non-circumvention, Good Faith."
22  (Opp. Ex. A, Art. IV.)  Although broad arbitration clauses should
23  be read expansively, "when an arbitration clause by its terms
24  extends only to a specific type of dispute, . . . a court cannot
25  require arbitration on claims that are not included."  <u>Simon v.</u>
26  <u>Pfizer</u>, 398 F.3d 765, 775 (6th Cir. 2005).  The court must "look
27  past the labels the parties attach to their claims to the
28  underlying factual allegations and determine whether they fall

1   within the scope of the arbitration clause." <u>3M Co. v. Amtex</u>

2   <u>Security, Inc.</u>, 542 F.3d 1193, 1199 (8th Cir. 2008).  The present

3   lawsuit is not a dispute regarding disclosure of confidential

4   information; rather, it is a case alleging that Lopatin and others

5   conspired to defraud Plaintiff out of $30 million.  Plaintiff's

6   claims fall outside of the scope of the arbitration clause.

7        Therefore, because (1) it is not clear Lopatin has standing to

8   enforce the terms of the Land Base Agreement in his individual

9   capacity and (2) this case falls outside the scope of the

10   arbitration clause, Lopatin's Motion to Compel Arbitration is

11   denied.

12   **III. CONCLUSION**

13        For the foregoing reasons, Lopatin's motion to dismiss for

14   failure to state a claim, motion to dismiss for improper venue, and

15   motion to compel arbitration are DENIED.

16   IT IS SO ORDERED.

19   Dated: December 16, 2009

20                    DEAN D. PREGERSON
                        United States District Judge