TODD D. THIBODO (State Bar No. 171655) todd@thibodo.com
LAW OFFICES OF TODD D. THIBODO
A PROFESSIONAL CORPORATION
16133 Ventura Boulevard, Suite 580
Encino, California  91436
Tel:  (818) 907-5769
Fax:  (818) 907-5793

Attorney for Defendants KM & ASSOCIATES
INTERNATIONAL, LLC, KB&M PROJECTS
INTERNATIONAL, LLC and CTL PROJECTS
INTERNATIONAL, LLC

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN SO,<br><br>                Plaintiff,<br><br>     v.<br><br>LAND BASE, LLC, et al.,<br><br>                Defendants. | CASE NO. CV 08-3336 DDP (AGRx)<br><br>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION, BY DEFENDANTS KEVIN KONDAS, MIRA MELTZER, KM & ASSOCIATES INTERNATIONAL, LLC, KB&M PROJECTS INTERNATIONAL, LLC AND CTL PROJECTS INTERNATIONAL, LLC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date:        06-07-10<br>Time:       10:00 a.m.<br>Room:      3<br>             [Hon. Dean D. Pregerson]<br><br>Complaint filed:  05-20-08<br>Final Pretrial<br>Conference:    07-26-10<br>Trial:         08-03-10<br><br>[Filed and served concurrently with Statement of Uncontroverted Facts and Conclusions of Law; Declaration of Todd D. Thibodo with Exhibits A to Q; [Proposed] Order] |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 7, 2010, at 10:00 a.m. in Courtroom 3 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California, Defendants Kevin R. Kondas, Mira Meltzer, KM & Associates, International, LLC, KB&M Projects International, LLC, and CTL Projects International, LLC will and hereby do move the Court for an order granting summary judgment, or in the alternative, summary adjudication, pursuant to Federal Rule of Civil Procedure 56 on the grounds that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.

More specifically, all of Plaintiff's claims against Defendants are subject to a three-year statute of limitations.  Because Plaintiff's claims accrued more than three years prior to the time he filed suit against Defendants, his claims are time-barred.

Further, Plaintiff's first, second, third and ninth causes of action against Defendants Kondas, Meltzer and KM & Associates, International, LLC fail as a matter of law because none of these defendants made any material misrepresentation to Plaintiff, or concealed any material facts from Plaintiff, and because Plaintiff did not and could not have reasonably relied on the misrepresentations he alleges were made.

Finally, Plaintiff's breach of fiduciary duty claim fails because, as a matter of law, none of the moving defendants owed any fiduciary duty to Plaintiff.

This motion is made following meetings of counsel that took place pursuant to Central District Local Rule 7-3 the week of April 26 through April 30, 2010.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Todd D. Thibodo with Exhibits A to Q, the Statement of Uncontroverted Facts and Conclusions of Law filed and served concurrently herewith, the papers and pleadings on file in this

1   matter, and any such oral and documentary evidence as may be presented prior to,

2   or at the time of, the hearing on this matter.

3

4   DATED:  May 7, 2010          TODD D. THIBODO
                                 LAW OFFICES OF TODD D. THIBODO
5                                A PROFESSIONAL CORPORATION

6                                By:     /s/ *Todd D. Thibodo*
                                         Todd D. Thibodo
7
                                 Attorney for Defendants KM & ASSOCIATES
8                                INTERNATIONAL, LLC, KB&M PROJECTS
                                 INTERNATIONAL, LLC and CTL PROJECTS
9                                INTERNATIONAL, LLC

10  DATED:  May 7, 2010          WILLIAM P. DONOVAN, JR.
                                 DLA PIPER LLP (US)
11
                                 By:     /s/ *William P. Donovan, Jr.*
12                                       William P. Donovan, Jr.

13                               Attorneys for Defendant KEVIN R. KONDAS

14  DATED:  May 7, 2010          WAYNE E. BEAUDOIN
                                 LAW OFFICE OF WAYNE E. BEAUDOIN
15                               A PROFESSIONAL CORPORATION

16                               By:     /s/ *Wayne E. Beaudoin*
                                         Wayne E. Beaudoin
17

18                               Attorney for Defendant MIRA MELTZER

19

20

21

22

23

24

25

26

27

28

-3-

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.   The UK Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.   Kevin So . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.   Kevin So and Lucy Lu Decide to Invest their Families' Money in
           "Private Placements." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.   In April 2005, Despite Notice of Potential Fraud, Plaintiff Transfers $30
           Million to HSBC in London in Order to Invest with Michael Brown,
           Because He Is Motivated by the Thought of Turning the $30 Million into
           $100 Million. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      E.   By October 2005, Litigation Commences in the United Kingdom over
           the Private Placement and Plaintiff's HSBC Account. . . . . . . . . . . . . . 7

      F.   So Admits in the UK Trial That the Promises He Alleges Were Made
           Regarding the "Private Placement" Were "Completely Incredible.". . . . 8

      G.   The UK Court Determines That Any Reasonable Person in So's
           Circumstances Would Have Been on Notice of Fraud in April 2005. . . 9

      H.   So Entered into the Project Funding Agreement with KMAI in March
           2005, and He Admits That He Was Aware as of Early 2005 That He Paid
           KMAI a "Commission" for the Reported Profits from the Investment. 10

      I.   Plaintiff Files His Original Complaint in this Case on May 20, 2008
           Against Land Base LLC, Univest, Lopatin and Woodhead. . . . . . . . . 11

      J.   Plaintiff Files A First Amended Complaint on January 16, 2009, naming
           Kondas, Meltzer, KMAI, KB&M and CTL as Defendants for the First
           time. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      K.   Plaintiff's Second Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . 12

III.  STANDARD FOR MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . 12

-i-

IV. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.  A Three-Year Statute of Limitations Applies to All of Plaintiff's Causes of Action against Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        1.    Fraudulent Misrepresentation, Negligent Misrepresentation, Fraudulent Concealment of Material Facts, Conversion and Civil Conspiracy Are Governed by a Three-year Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.    Plaintiff's Claims for Constructive Trust, Unjust Enrichment, Breach of Fiduciary Duty and Accounting Are Governed by a Three-year Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . 14

    B.  Plaintiff's Claims Accrued Not Later than April 2005, More than Three Years Before He Filed His Initial Complaint in this Case. . . . . . . . . . . 14

        1.    The UK Judgment Establishes So Was on Notice That the Private Placement Investment Was Tainted with Fraud as of April 2005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.    The UK Judgment is Entitled to Collateral Estoppel Effect in this Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    C.  Even If the Judgment in the UK Litigation Is Not Given Collateral Estoppel Effect, Plaintiff's Claims Accrued Not Later than October 2005, When the UK Litigation Began, and His Claims Are Still Barred by the Three-year Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . 18

        1.    There Is No "Relation Back" to the Original Complaint Filing Date for the KM Defendants under California Law. . . . . . . . . . . 19

        2.    There Is No "Relation Back" to the Original Complaint Filing Date for the KM Defendants under Federal Law. . . . . . . . . . . . . 21

-ii-

V.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY
     ADJUDICATION OF PLAINTIFF'S FIRST, SECOND, THIRD, NINTH
     AND FIFTEENTH CAUSES OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . . 21

     A.   The KM Defendants Made No Representations of Any Kind to Plaintiff
          Prior to April 2005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

     B.   Plaintiff Relied Entirely on Promises from HSBC in His Decision to
          Transfer His and Lu's Funds in April 2005. . . . . . . . . . . . . . . . . . . . 23

     C.   Plaintiff Did Not Rely and Could Not Have Justifiably Relied on the
          Representations He Alleges in His Second Amended Complaint. . . . . 23

     D.   Plaintiff's Breach of Fiduciary Duty Claim Against Kondas, Meltzer and
          KMAI Fails as a Matter of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

-iii-

TABLE OF AUTHORITIES

<u>Cases</u>

*Aaroe v. First American Title Ins. Co.*,
    222 Cal. App. 3d 124 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Amerus Life Ins. Co. v. Bank of America, N.A.*,
    143 Cal. App. 4th 631 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 248 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Andrews v. Metro North Commuter R. Co.*,
    882 F.2d 705 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Austin v. Massachusetts Bonding & Ins. Co.*,
    56 Cal. 2d 596, 15 Cal. Rptr. 817, 364 P.2d 681 (1961) . . . . . . . . . . . . . . . 20

*Bacon v. Soule*,
    19 Cal. App. 428, 126 P. 384 (1912) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bedolla v. Logan & Frazer*,
    52 Cal. App. 3d 118, 125 Cal. Rptr. 59 (1975) . . . . . . . . . . . . . . . . . . . . 14, 15

*Brandon G. v. Gray*,
    111 Cal. App. 4th 29, 3 Cal. Rptr.3d 330 (2003) . . . . . . . . . . . . . . . . . . . . . 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 325 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*City of Vista v. Robert Thomas Securities*,
    84 Cal. App. 4th 882, 101 Cal. Rptr. 2d 237 (2000) . . . . . . . . . . . . . . . . . . 14

*Day v. Greene*,
    59 Cal.2d 404, 380 P.2d 385 (Cal. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
    153 Cal. App. 4th 1308, 64 Cal. Rptr.3d 9 (2007) . . . . . . . . . . . . . . . . . . . . 15

*Estate of Peebles*,
    27 Cal. App. 3d 163, 103 Cal. Rptr. 560 (1972) . . . . . . . . . . . . . . . . . . . . . . 14

-iv-

*F.D.I.C. v. Dintino,*

    167 Cal. App.4th 333, 84 Cal. Rptr.3d 38 (2008) . . . . . . . . . . . . . . . . . . . . 14

*Fox v. Ethicon Endo-Surgery, Inc.,*

    35 Cal. 4th 797, 110 P.3d 914, 27 Cal. Rptr. 3d 661 (2005) . . . . . . . . . 15, 19

*Hazel v. Hewlett,*

    201 Cal. App.3d 1458, 247 Cal. Rptr. 723 (1988) . . . . . . . . . . . . . . . . . . . 20

*Hilton v. Guyot,*

    159 U.S. 113 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Louisiana-Pacific Corp. v. ASARCO, Inc.,*

    5 F.3d 431 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Merritt v. County of Los Angeles,*

    875 F.2d 765 (9th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Montana v. United States,*

    440 U.S. 147 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mooney v. Caspari,*

    138 Cal. App. 4th 704 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Okun v. Morton,*

    203 Cal. App. 3d 805, 250 Cal. Rptr. 220 (1988) . . . . . . . . . . . . . . . . . . . . 22

*Optical Surplus, Inc. v. Superior Court,*

    228 Cal. App.3d 776, 279 Cal. Rptr. 194 (1991) . . . . . . . . . . . . . . . . . . . . 20

*Pony Express Records, Inc. v. Springsteen,*

    163 F. Supp. 2d 465 (D.N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*Rendall-Speranza v. Nassim,*

    107 F.3d 913 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rickel v. Schwinn Bicycle Co.,*

    144 Cal. App. 3d 648, 192 Cal. Rptr. 732 (1983) . . . . . . . . . . . . . . . . . . . . 24

-v-

*Stitt v. Williams,*

     919 F.2d 516 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 24

*West v. Conrail,*

     481 U.S. 35, 107 S. Ct. 1538, 95 L. Ed.2d 32 (1987) . . . . . . . . . . . . . . . . . 13

*Woo v. Superior Court,*

     75 Cal. App. 4th 169, 89 Cal. Rptr. 2d 20 (1999) . . . . . . . . . . . . . . . . . 19, 20


California Statutes

Cal. Code Civ. Proc. § 338(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cal. Code Civ. Proc. §§ 335, 338(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cal. Code Civ. Proc. § 474 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20


Federal Statutes

28 U.S.C. § 1332(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


Treatises

WILLIAM W SCHWARZER, A. WALLACE TASHIMA, AND JAMES M. WAGSTAFFE, CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL, ¶ 8:1553 (Thomson Reuters 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 21

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   PRELIMINARY STATEMENT

This lawsuit is the latest in a series of lawsuits Plaintiff Kevin So has brought in an attempt to recoup money lost in an investment he made in the United Kingdom in April 2005.  There have been at least two trials of lawsuits involving Plaintiff's investment, one in the High Court of Justice, Queen's Bench Division, Commercial Court, in London, England (the "UK Litigation"), and one in federal district court in Washington, D.C.

The UK Litigation began in October 2005.  It involved claims by So against HSBC Bank PLC ("HSBC"), the bank in which he and Lu deposited the investment funds, for breach of contract, breach of trust and negligence.  In the UK Litigation, So claimed that HSBC and Michael Brown, the man who absconded with his money, were solely responsible for his losses.

After extensive pre-trial proceedings (Plaintiff has produced approximately 70,000 pages of documents that were generated in the UK Litigation), the case went to trial.  Trial lasted seven weeks, from October 4, 2007 to November 22, 2007, and Plaintiff testified for four days.  On December 7, 2007, the court issued a 78-page Judgment (the "UK Judgment").  The trial court, which was affirmed on appeal, rejected So's claims against HSBC.

The UK Judgment resolved issues that are essential in this case, and the resolution of these issues is entitled to collateral estoppel effect in this case.  One of the issues determined in the UK Judgment was that So was on notice of potential fraud in the Private Placement investment by no later than April 2005.

All of the claims Plaintiff has alleged against defendants Kondas, Meltzer, KM & Associates, International, LLC, KB&M Projects International, LLC, and CTL Projects International, LLC (collectively, the "KM Defendants") in this case are governed by a three-year statute of limitations.  Because Plaintiff's claims against the KM Defendants arose more than three years prior to May 20, 2008, the

-1-

date he filed the original complaint in this case, Plaintiff's claims are barred by the statute of limitations.

In addition, even if this Court were to give no collateral estoppel effect to the issues determined by the UK Judgment, Plaintiff's claims in this case are still barred by the statute of limitations. The UK Litigation had commenced by October 2005, and Plaintiff has admitted the funds were "frozen" by October 2005. Plaintiff had also engaged an attorney in England in October 2005. Accordingly, the very latest Plaintiff's causes of action accrued under any theory is October 2005. Plaintiff did not add Kondas, Meltzer, KMAI, KBM or CTL as defendants until he filed his First Amended Complaint in January 16, 2009. There is no relation back to the filing date of the original complaint, and, therefore, even under the October 2005 accrual date, Plaintiff's claims against Kondas, Meltzer, KMAI, KBM or CTL are still barred by the three-year statute of limitations.

In addition, Plaintiff's first, second, third and ninth causes of action against Kondas, Meltzer and KMAI fail as a matter of law because Kondas, Meltzer and KMAI made no material misrepresentations to Plaintiff. Nor did they conceal any material facts from Plaintiff. Further, Plaintiff did not rely, and could not have reasonably relied, on any of the misrepresentations he alleges were made.

Finally, Plaintiff's fifteenth cause of action for breach of fiduciary duty fails as a matter of law, because these moving Defendants did not owe any fiduciary duty to Plaintiff.

For all of these reasons, the Court should grant the KM Defendants' motion for summary judgment. In the alternative, the Court should grant partial summary judgment as to Plaintiff's first, second, third, ninth and fifteenth causes of action for fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment of material facts, civil conspiracy and breach of fiduciary duty.

## II.   STATEMENT OF FACTS

### A.   The UK Litigation

The subject matter of this lawsuit, the investment in the "Private Placement" by Plaintiff So and his partner Lucy Lu was also the subject of more than three years of litigation in England, in 2005 through March 2009 (the "UK Litigation"). (Declaration of Todd D. Thibodo ("Thibodo Decl."), Exh. A, Plaintiff's Initial Rule 26 Disclosure Statement.)  Plaintiff was a party to the UK Litigation and was represented by a team of solicitors and barristers in the UK Litigation.  (Thibodo Decl., Exh. B, Volume 1 of the Deposition of Kevin So, March 11, 2010 ("So Depo., Vol. 1"), 8:12-15; 11:3-11; 17:2-9; Thibodo Decl., Exh. C, Volume 2 of the Deposition of Kevin So, March 12, 2010 ("So Depo., Vol. 2"), 157:11-15.)  So was also represented during the UK Litigation by Kalbian & Hagerty LLP, the same Washington, D.C. law firm that represents him in this case.  (Thibodo Decl., Exh. C, So Depo., Vol. 2, 176:22-179:8; Thibodo Decl., Exh. D, Exhibit 10.)  In his deposition in this case, So testified, "Everything I said in the court in the United Kingdom was true." (Thibodo Decl., Exh. B, So Depo., Vol. 1, 8:25-9:4.)

During the UK Litigation, So submitted a "Witness Statement of Kevin So," dated August 11, 2006 ("So Witness Statement"), which he adopted as his "evidence-in-chief" at trial.[1]  During the first day of his trial testimony in the UK Litigation, So testified in response to questions from his own attorney and the trial judge that he reviewed and signed the So Witness Statement.  (Thibodo Decl., Exh. F, 10/15/07 Transcript of Trial Testimony of Kevin So, High Court of Justice, Queen's Bench Division, Commercial Court, 2005 Folio No. 841 ("So Trial Tr., 10/15/07"), 17:16-25.)  He also testified to and corrected a typographical error at paragraph 59 of the document.  (Thibodo Decl., Exh. F, So Trial Tr.,

---

1/  The So Witness Statement was produced by Plaintiff during discovery in this case and is bates numbered "SO-0001279-1289."  A true and correct copy is attached as Exhibit E to the Thibodo Decl.

1   10/15/07, 18:7-11.)  Finally, So testified in the UK Litigation that he adopted the

2   So Witness Statement as his "evidence-in-chief" in the trial.  (Thibodo Decl., Exh.

3   F, So Trial Tr., 10/15/07, 19:8-12.)  On December 7, 2007, the court issued a 78-

4   page Judgment in *HSBC Bank PLC v. 5th Ave. Partners Ltd.*, Case No. 2005 Folio

5   841, [2007] EWHC 2819 (Comm) (the "UK Judgment"),[2] which was affirmed on

6   appeal on March 9, 2009.

7        The following facts are in large part taken from the So Witness Statement and

8   the So Trial Transcripts.

9        **B.   Kevin So**

10       Plaintiff Kevin So is the General Manager and Chief Executive of a

11  substantial group of companies based in Guangdong, China.  (Thibodo Decl., Exh.

12  F, So Trial Tr., 10/15/07, 23:2-10; Thibodo Decl., Exh. E, So Witness Statement,

13  p. 2, ¶ 7.)  Since 2006, he has been studying for a Masters Degree in Economics.

14  (Thibodo Decl., Exh. E, So Witness Statement, p. 2, ¶ 3; Thibodo Decl., Exh. B,

15  So Depo. Vol. 1, 99:13-100:1.)

16       **C.   Kevin So and Lucy Lu Decide to Invest their Families' Money in**

17            **"Private Placements."**

18       In December 2004, So and his friend Lucy Lu decided to invest $30 million,

19  ninety percent of which belonged to So's family and ten percent of which

20  belonged to Lu's family, in "private placements."  (Thibodo Decl., Exh. E, So

21  Witness Statement, p. 3, ¶¶ 14-6, pp. 3-5, ¶¶ 18-32; Thibodo Decl., Exh. I, So Trial

22  Tr., 10/18/07, 44:12-14.)  At the time, So wanted to generate quick profits for a

23  number of projects his family's company had planned.  (Thibodo Decl., Exh. E, So

24  Witness Statement, p. 6, ¶¶ 38-40.)  "Either on his own authority or with such

25

26  2/  The UK Judgment was authenticated by Plaintiff in response to Defendant's
27  Request for Admissions.  A true and correct copy of the UK Judgment is attached
    as Exh. J to the Thibodo Decl.  A true and correct copy of Plaintiff's Amended
    Responses to Defendant's First Set of Requests for Admissions is attached as Exh.
28  K to the Thibodo Decl.

-4-

1   approval as was necessary from members of Mr. So and Mrs. Lu's families, [So]

2   agreed that the[] funds could be used if Mrs. Lu could find a suitable private

3   placement investment." (Thibodo Decl., Exh. J, UK Judgment, ¶ 50.)

4       Lu was introduced to Lopatin and Brown by Keith Millar, who was a friend

5   of Lu's husband. (Thibodo Decl., Exh. M, Plaintiff's May 20, 2008 Complaint, p.

6   9, ¶ 29 (Docket No. 1).)[3]  Lu regularly informed So of the substance of her

7   conversations with Millar.[4]  (Thibodo Decl., Exh. M, Complaint, p. 9, ¶ 30.)  In

8   March and April 2005, Lu, acting with So's authority and on So's behalf, met with

9   Michael Brown, the manager of the "Private Placement" investment. (Thibodo

10  Decl., Exh. E, So Witness Statement, p. 8, ¶¶ 53-58.)

11  **D.   In April 2005, Despite Notice of Potential Fraud, Plaintiff Transfers**

12  **$30 Million to HSBC in London in Order to Invest with Michael**

13  **Brown, Because He Is Motivated by the Thought of Turning the $30**

14  **Million into $100 Million.**

15      In April 2005, So entered into the "Land Base Agreement" in order to

16  invest in the private placement that was to be managed by Michael Brown.

17  (Thibodo Decl., Exh. O, Second Amended Complaint (Docket No. 177) ("SAC"),

18  Exhibit C.)  At around the same time, he received an "Irrevocable Bank

19  Instruction" (the "Letter of Instruction") that was signed and stamped by one of

20  the HSBC London branch managers.  (Thibodo Decl., Exh. O, SAC, Exhibit B.)

21

22  3/  Plaintiff's initial complaint is a party admission, and his amendment does not

23  make it any less so.  WILLIAM W SCHWARZER, A. WALLACE TASHIMA, AND JAMES M. WAGSTAFFE, CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL, ¶ 8:1553

24  (Thomson Reuters 2010) (citing *Andrews v. Metro North Commuter R. Co.*, 882 F.2d 705 (2nd Cir. 1989)).

25  4/  Contrary to Plaintiff's allegations in his Second Amended Complaint, Millar

26  was never a member of KMAI.  (Thibodo Decl., Exh. P, Volume 1 of the Deposition of Kevin Kondas, March 18, 2010 ("Kondas Depo., Vol. 1"), 52:6-14;

27  100:16-102:11; Thibodo Decl., Exh. Q, Exhibit 3 to Kondas Depo., Vol. 1, pp. 9-15 (Operating Agreement for KM & Associates International, LLC).  Nor was

28  Millar ever authorized to act on behalf of KMAI.  (Thibodo Decl., Exh. P, Kondas Depo., Vol. 1, 81:23-82:2.)

-5-

1  Millar told So and Lu that the Letter of Instruction meant that their funds would be

2  held in a "segregated, non-depletion account" in their names at HSBC.  (Thibodo

3  Decl., Exh. E, So Witness Statement, p. 7, ¶ 50; Thibodo Decl., Exh. H, So Trial

4  Tr., 10/17/07, 10:24-11:24.)

5      Shortly after receiving the Letter of Instruction, So wrote directly to HSBC

6  and specifically asked HSBC for assurances that his and Lu's account with the

7  HSBC London (where they intended to deposit the private placement investment

8  funds) was, in fact, "a segregated and non-depletion account" and that there would

9  not be any "loss in the principal."  (Thibodo Decl., Exh. B, So Depo., Vol. 1,

10  113:5-114:25; Thibodo Decl., Exh. J, UK Judgment, ¶ 74.)  So recalled that Lu

11  said "Brown and Mr. Lopatin both had told her that if we had any doubts about the

12  investment we could contact . . . HSBC directly to make further enquiries."

13  (Thibodo Decl., Exh. E, So Witness Statement, p. 8, ¶ 58; Thibodo Decl., Exh. I,

14  So Trial Tr., 10/18/07, 34:17-35:4.)  HSBC never responded to So's inquiry,

15  however.  (Thibodo Decl., Exh. B, So Depo., Vol. 1, 114:15-20.)  Instead, HSBC

16  forwarded So's letter to Brown, who became "furious" that So had contacted

17  HSBC and told Lu that the contact was "unacceptable."  (Thibodo Decl., Exh. B,

18  So Depo., Vol. 1, 114:22-24; Thibodo Decl., Exh. I, So Trial Tr., 10/18/07, 32:12-

19  16.)  Brown threatened to reject So and Lu as clients.  (Thibodo Decl., Exh. J, UK

20  Judgment, ¶ 90.)

21      So understood that Brown was furious about So's inquiry to HSBC even

22  before So and Lu invested any money with Brown.  (Thibodo Decl., Exh. B, So

23  Depo., Vol. 1, 114:25-115:3.)  After learning that Brown had become furious

24  about his contact with HSBC, So never attempted to contact HSBC again.

25  (Thibodo Decl., Exh. I, So Trial Tr., 10/18/07, 42:4-7.)

26      Despite these revelations, despite the fact that he never received the

27  assurances he requested, and despite the fact that So was not being pressured by

28  anyone to make the investment, So and Lu transferred the $30 million from the

-6-

1   joint So/Lu account in HSBC Bank in Hong Kong to an account with HSBC

2   London the next day.  (Thibodo Decl., Exh. I, So Trial Tr., 10/18/07, 47:7-48:8.)

3   So could have sought professional advice regarding the Land Base Agreement,

4   Michael Brown, and the Private Placement, had he wanted to, but he did not.

5   (Thibodo Decl., Exh. I, So Trial Tr., 10/18/07, 48:9-24.)  The reason So and Lu

6   decided to go forward with Michael Brown is that they believed "it was a scheme

7   which would produce spectacular profits."  (Thibodo Decl., Exh. J, UK Judgment,

8   p. 51, ¶ 206.)

9       So later claimed in his witness statement:  "Of greatest importance to me was

10   that [Lu] had been provided with a signed and stamped letter from HSBC and that

11   the letter confirmed that our money would be held safe by HSBC in a segregated,

12   non-depletion account and that the money would only be used for the purpose of

13   trading in A+ rated instruments."  (Thibodo Decl., Exh. E, So Witness Statement,

14   p. 8, ¶ 57.)  So also testified that "[t]he main reason for my confidence on this

15   investment was the money was with HSBC."  (Thibodo Decl., Exh. G, So Trial

16   Tr., 10/16/07, 54:6-22.)

17     **E.**   **By October 2005, Litigation Commences in the United Kingdom**

18          **over the Private Placement and Plaintiff's HSBC Account.**

19       By October 2005, HSBC London had frozen Plaintiff's account and

20   commenced litigation (the "UK Litigation") with So, Lu, Brown and other Private

21   Placement investors.  (Thibodo Decl., Exh. J, UK Judgment, ¶ 4.)  So had also

22   engaged an attorney in England by October 2005.  (Thibodo Decl., Exh. I, So Trial

23   Tr., 10/18/07, 62:19-63:10.)  In November 2005, a representative of HSBC

24   contacted So and informed him that if he cooperated with HSBC's investigation of

25   Michael Brown, he would "get [his and Lu's] $30 million investment back."

26   (Thibodo Decl., Exh. I, So Trial Tr., 10/18/07, 65:3-66:23.)

27       So and Lu sued Brown for fraud as part of the UK Litigation, and they

28   obtained summary judgment.  So, Lu, and other investors also made claims against

-7-

HSBC in the UK Litigation, for breach of contract, breach of trust and negligence. (Thibodo Decl., Exh. J, UK Judgment, ¶¶ 2, 4-6.)

      **F.**    **So Admits in the UK Trial That the Promises He Alleges Were Made Regarding the "Private Placement" Were "Completely Incredible."**

In his Second Amended Complaint, Plaintiff alleges that he reasonably relied on Defendants' representations that:

- he would realize "spectacular returns with very little risk";
- his principal would remain safe in the HSBC bank account;
- he could withdraw his funds at any time;
- his principal would not be subject to any risk; and
- his [and Lu's] investment "would quickly reach $100 million in value."

(Thibodo Decl., Exh. O, SAC, ¶¶ 54, 120).  More than a year before he made these allegations, however, So had already testified under oath, during the UK trial, that such promises were "unusual," "difficult to believe," and "completely incredible":

MR JUSTICE WALKER:  Mr. So, to make a profit under which $30 million was turned into $100 million is unusual, is it not?

A.  Correct.

MR JUSTICE WALKER:  An opportunity like that does not arise very often; correct?

A.  Correct.

. . . .

MR JUSTICE WALKER:  Go back to getting $30 million turned into $100 million.  Is not that difficult to believe?  Is it not difficult to believe?

A.  Yes, it is unusual.

MR JUSTICE WALKER:  If you are then told:  what is more, all the time, your $30 million is safe; is not that even more difficult to believe?

A.  Yes, correct, yes.

-8-

MR JUSTICE WALKER:  And then you are told: on top of that, you can

have the $30 million back at any time; is not that incredible?

. . . .

MR JUSTICE WALKER:  My question is: is not this combination of

amazingly good terms, completely incredible?

A.  Yes.  If you combine all those factors together, yes, it is.

(Thibodo Decl., Exh. H, So Trial Tr., 10/17/07, 66:20-68:18.)

**G.   The UK Court Determines That Any Reasonable Person in So's Circumstances Would Have Been on Notice of Fraud in April 2005.**

In the UK Judgment, the UK court rejected all of So's and Lu's claims against HSBC.  (Thibodo Decl., Exh. J, UK Judgment, ¶¶ 10, 11.)  The UK court also found that a reasonable person in Plaintiff's position "would have thought there was something terribly wrong with the proposed transaction[]" after So's failed attempt to directly contact HSBC in April 2005 to get assurances regarding the "segregated, non-depletion account."  (Thibodo Decl., Exh. J, UK Judgment, pp. 30-31, ¶¶ 137.)  In this regard, the Judgment set forth the following conclusions regarding the "Letter of Instruction" and So's failed April 2005 inquiry to HSBC regarding the Letter of Instruction:

For the reasons given in Annex B I am sure that . . . Mr So and Mrs Lu

doubted whether HSBC had accepted or would accept any responsibility

to monitor and control what 5th Avenue did with their money.  It was for

that reason that Mr So's letter to Mrs Arnull was emailed both to her and

to HSBC Hong Kong.  HSBC itself did not reply to that letter.

Mr So's letter sought verification that an account in the joint names of

5th Avenue, Mr So and Mrs Lu was a "segregated & non-depletion

account", that the beneficiary was "Kevin So/Lucy Yan Lu" and that

"under no circumstances shall the principal amount of Funds deposited

in the Thirty Million USD ($30M USD) be permitted to be withdrawn as

-9-

stated hereto & for payments of wire charges (if any)." . . . . Here it
seems to me that the reasonable person must be put into the position of
Mr So and Mrs Lu.  They knew that Mr So's letter had come to the
attention of Mr Brown, and that his response was to email Mrs Lu saying
that Mr So's letter to HSBC had been unacceptable and that Mr Brown
had told HSBC not to respond to it.  After Mrs Lu's discussions with Mr
Lopatin, Mr So and Mrs Lu knew that Mr Lopatin was saying that they
should not communicate with HSBC in that manner again without first
contacting him, that there would be no response from HSBC to Mr So's
Letter, and that if Mr So and Mrs Lu were to go ahead with the
transaction, it would be on the basis that they would not have a response
from HSBC to Mr So's letter.  In these circumstances a reasonable
person would have thought that something was terribly wrong with the
proposed transaction.  If HSBC was intending to be bound, what possible
reason could there be for the failure by Mrs Arnull to respond to Mr So's
letter?  The explanations put forward by others were obvious nonsense.
At the stage when the $30 million was transferred no reasonable person
in the position of Mr So and Mrs Lu would have believed that HSBC
intended to be bound by the Letter of Instruction.

(Thibodo Decl., Exh. J; UK Judgment, pp. 30-31, ¶¶ 135, 136, 137.)

**H.    So Entered into the Project Funding Agreement with KMAI in**
**March 2005, and He Admits That He Was Aware as of Early 2005**
**That He Paid KMAI a "Commission" for the Reported Profits from**
**the Investment.**

So entered into the "Irrevocable Project Funding Agreement" with KMAI on
March 24, 2005.  (Thibodo Decl., Exh. O, SAC, Exhibit D.)  In addition, Plaintiff
testified in his deposition in this case that as of early 2005, he was aware and
understood that KMAI received a "commission" from him as a result of the

-10-

1  reported profits on Plaintiff's investment in the Private Placement.  (Thibodo

2  Decl., Exh. B, So Depo., Vol. 1, 54:16-55:17.)  Plaintiff never alleged any claims

3  against KMAI or Kondas in the UK Litigation, however.  (Thibodo Decl., Exh. J;

4  UK Judgment, ¶¶ 2, 4, 6.)

5       **I.    Plaintiff Files His Original Complaint in this Case on May 20, 2008**

6           **Against Land Base LLC, Univest, Lopatin and Woodhead.**

7      Plaintiff filed his original complaint in this lawsuit on May 20, 2008

8  (Thibodo Decl., Exh. M, Complaint), more than three years after he and Lu

9  invested in the Private Placement, and more than three years after the UK court

10  found that Plaintiff knew or should have known that there was "something terribly

11  wrong" with the Michael Brown Private Placement investment.  Plaintiff did not

12  allege that there were any fictitious "DOE" defendants, or any defendants whose

13  identities he was unaware of.  The only non-party "co-conspirators" Plaintiff

14  alleged were Keith Millar and Michael Brown, who still are not parties to this

15  action, .  (Thibodo Decl., Exh. M, Complaint, p. 3, ¶ 10.)  Plaintiff also named the

16  London law firm of Fox Williams, where Brown and Lopatin allegedly arranged

17  meetings with representatives of HSBC "to further . . . advance their fraudulent

18  scheme[.]"  (Thibodo Decl., Exh. M, Complaint, p. 6, ¶ 21.)

19      Plaintiff was well aware of the identity of Kondas, Meltzer and KMAI at the

20  time he filed his original complaint.  (Thibodo Decl., Exh. B, So Depo., Vol. 1,

21  20:11-21:11; 54:16-55:17; Thibodo Decl., Exh. L, Second Witness Statement of

22  Kevin So, dated October 31, 2006 ("So Second Witness Statement"), ¶¶ 13, 32.)

23  He did not name Kondas, Meltzer KMAI, KBM or CTL as defendants in his

24  original complaint, however.  (Thibodo Decl., Exh. M, Complaint.)

25       **J.    Plaintiff Files A First Amended Complaint on January 16, 2009,**

26           **naming Kondas, Meltzer, KMAI, KB&M and CTL as Defendants**

27           **for the First time.**

28      On January 16, 2009, Plaintiff filed his First Amended Complaint, which

-11-

1    added Kondas, Meltzer, KMAI, KBM and CTL as defendants.  (Thibodo Decl.,

2    Exh. N, First Amended Complaint, with Exhibits (Docket No. 95) ("FAC").)

3         **K.   Plaintiff's Second Amended Complaint.**

4         Plaintiff filed his Second Amended Complaint on July 16, 2009.  (Thibodo

5    Decl., Exh. O.)  The Second Amended Complaint alleges causes of action against

6    Kondas, Meltzer and KMAI for (1) fraudulent misrepresentation, (2) negligent

7    misrepresentation, (3) fraudulent concealment of material facts, (4) conversion, (5)

8    unjust enrichment, (6) constructive trust, (7) civil conspiracy, (8) respondeat

9    superior, (9) alter ego (as between Kondas, Meltzer and KMAI), (10) breach of

10   fiduciary duty, and (11) accounting.  Plaintiff has alleged causes of action against

11   KBM and CTL for (1) constructive trust, (2) civil conspiracy, and (3) accounting.

12   **III.  STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

13        Summary judgment is appropriate where "the pleadings, depositions, answers

14   to interrogatories, and admissions on file, together with the affidavits, if any, show

15   that there is no genuine issue as to any material fact and that the moving party is

16   entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue

17   exists if "the evidence is such that a reasonable jury could return a verdict for the

18   nonmoving party," and material facts are those "that might affect the outcome of

19   the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 248

20   (1986).  Thus, the "mere existence of a scintilla of evidence" in support of the

21   nonmoving party's claim is insufficient to defeat summary judgment.  *Id.* at 252.

22   Furthermore, there is no genuine issue for trial "[w]here the record taken as a

23   whole could not lead a rational trier of fact to find for the non-moving party."

24   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

25        If the moving party does not bear the burden of proof at trial, the moving

26   party is entitled to summary judgment if he can demonstrate that "there is an

27   absence of evidence to support the non-moving party's case."  *Celotex Corp. v.*

28   *Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its burden, the

-12-

burden shifts to the nonmoving party, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." *Id*. at 259.  Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 325.

## IV.  PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Subject matter in this case is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).  (Thibodo Decl., Exh. O, SAC, ¶ 18.)  All of Plaintiff's claims against the KM Defendants are state law claims.  A federal court exercising diversity jurisdiction over state law claims applies the forum state's statute of limitations.  *West v. Conrail*, 481 U.S. 35, 39 n. 4, 107 S. Ct. 1538, 1541 n. 4, 95 L. Ed.2d 32 (1987).  Accordingly, California law governs the applicable statute of limitations in this case.

### A.  A Three-Year Statute of Limitations Applies to All of Plaintiff's Causes of Action against Defendants.

#### 1.  Fraudulent Misrepresentation, Negligent Misrepresentation, Fraudulent Concealment of Material Facts, Conversion and Civil Conspiracy Are Governed by a Three-year Statute of Limitations.

A three-year statute of limitations exists for cases of fraud.  Cal. Code Civ. Proc. §§ 335, 338(d).  The three-year statute of limitations also applies to claims for civil conspiracy based on fraud.  *Aaroe v. First American Title Ins. Co.*, 222 Cal. App. 3d 124 (1990).  Similarly, California law provides a three-year statute of limitations for conversion.  Cal. Code Civ. Proc. § 338(c).  *Amerus Life Ins. Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631 (2006).

-13-

**2.**      **Plaintiff's Claims for Constructive Trust, Unjust Enrichment, Breach of Fiduciary Duty and Accounting Are Governed by a Three-year Statute of Limitations.**

There is a three-year statute of limitations for claims for constructive trust, unjust enrichment and breach of fiduciary duty and accounting where the gravamen of the claim or the alleged basis for the remedy is fraud.  *See Day v. Greene*, 59 Cal.2d 404, 380 P.2d 385 (Cal. 1963)(applying three-year statute of limitations to constructive trust claim where fraud was the gravamen of the action and the basis for alleging the constructive trust); *F.D.I.C. v. Dintino*, 167 Cal. App.4th 333, 84 Cal. Rptr.3d 38 (2008) (a three-year statute of limitations applies to claim for unjust enrichment); *City of Vista v. Robert Thomas Securities*, 84 Cal. App. 4th 882, 889, 101 Cal. Rptr. 2d 237 (2000) (holding that the statute of limitations for a breach of fiduciary duty claim is three years where the gravamen of the claim is fraud); *Estate of Peebles*, 27 Cal. App. 3d 163, 166, 103 Cal. Rptr. 560 (1972) (stating that the statute of limitations for a cause of action for an accounting depends on "the nature of the right sued upon, not the form of action or the relief demanded").  In this case, as Plaintiff has stated in his SAC, the gravamen of the case is fraud.  (Thibodo Decl., Exh. O, SAC, ¶ 1.)  Accordingly, a three-year statute of limitations applies to these claims as well.

**B.      Plaintiff's Claims Accrued Not Later than April 2005, More than Three Years Before He Filed His Initial Complaint in this Case.**

Courts generally apply an objective test to determine whether a cause of action has accrued so as to start the limitations period.  *See, e.g.*, *Brandon G. v. Gray*, 111 Cal. App. 4th 29, 35, 3 Cal. Rptr.3d 330 (2003).  When a party "is put on notice" of a fraud perpetrated against them, such notice is enough to start the limitations period.  *Id*.  The statute of limitations "commences to run after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. . . ."  *Bedolla v. Logan & Frazer*, 52 Cal. App.

-14-

1   3d 118, 130, 125 Cal. Rptr. 59 (1975).  *See also Fox v. Ethicon Endo-Surgery,*

2   *Inc.,* 35 Cal. 4th 797, 807, 110 P.3d 914, 27 Cal. Rptr. 3d 661 (2005) ("under the

3   delayed discovery rule, a cause of action accrues and the statute of limitations

4   begins to run when the plaintiff has reason to suspect an injury and some wrongful

5   cause . . ." and "[t]he discovery rule . . . allows accrual of the cause of action even

6   if the plaintiff does not have reason to suspect the defendant's identity . . . because

7   the identity of the defendant is not an element of a cause of action").  The plaintiff

8   need not have proof of fraud, or even actual notice of fraud.  Rather, "suspicion" is

9   the basis for "inquiry notice."  *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal.

10  App. 4th 1308, 1319, 64 Cal. Rptr.3d 9 (2007) (*citing Fox*, 35 Cal. 4th at 803).  In

11  the context of investment fraud, the statute of limitations begins to run as soon as a

12  potential victim of fraud becomes aware, or should have become aware, of a

13  misrepresentation.  *Stitt v. Williams*, 919 F.2d 516, 521-22 (9th Cir. 1990).

14          1.      **The UK Judgment Establishes So Was on Notice That the**

15                  **Private Placement Investment Was Tainted with Fraud as of**

16                  **April 2005.**

17          As set forth in section II.G., above, one of the issues determined by the UK

18  Judgment concerned the effect of So's attempt to obtain assurances directly from

19  HSBC that the $30 million would be placed in a "segregated, non-depletion"

20  account in So's and Lu's names.  When HSBC failed to respond, and when

21  Michael Brown became "furious" at So's contact with the bank and threatened to

22  "block the deal," the UK court determined that any reasonable person in these

23  circumstances would have "thought that something was terribly wrong with the

24  proposed transaction. . . .  At the stage when the $30 million was transferred no

25  reasonable person in the position of Mr. So and Mrs. Lu would have believed that

26  HSBC intended to be bound by the Letter of Instruction."  (Thibodo Decl., Exh. J,

27  UK Judgment, ¶ 137.)  In other words, at this point, April 2005, any reasonable

28  person in So's position would have known, or would have been, at the very least,

-15-

1    suspicious, that Michael Brown had misrepresented a critical part of the

2    transaction, and that the transaction Brown was proposing was, therefore, tainted

3    with fraud.

4         **2.     The UK Judgment is Entitled to Collateral Estoppel Effect in**

5              **this Case.**

6         Generally, collateral estoppel may preclude the re-litigation of issues raised in

7    a prior proceeding. *Mooney v. Caspari*, 138 Cal. App. 4th 704, 717 (2006).

8    "'[O]nce an issue is actually and necessarily determined by a court of competent

9    jurisdiction, that determination is conclusive in subsequent suits based on a

10   different cause of action involving a party to the prior litigation.'" *Pony Express*

11   *Records, Inc. v. Springsteen*, 163 F. Supp. 2d 465, 473 (D.N.J. 2001)(quoting

12   *Montana v. United States*, 440 U.S. 147, 153 (1979). "So long as a party has been

13   given a 'full and fair opportunity to litigate' a matter, he or she is precluded from

14   further litigation of the same matter." *Id.*

15        The doctrine of comity provides the basis for giving preclusive effect to a

16   foreign country's judgment. *Pony Express Records*, 163 F. Supp. 2d at 472.

17   Under the doctrine of comity:

18        if the foreign judgment was entered by a competent court, having both

19        personal and subject matter jurisdiction, if the judgment was brought

20        upon due allegations and proofs, giving the parties opportunity to defend

21        against the claims, and if the judgment is entered in a clear and formal

22        record, then "the judgment is prima facies evidence, at least, of the truth

23        of the matter adjudged; and it should be held conclusive upon the merits

24        tried in the foreign court," unless there is a special ground on which to

25        impeach the judgment.

26   *Id.* (citing and quoting *Hilton v. Guyot*, 159 U.S. 113 (1895). In *Pony Express*

27   *Records*, the District Court gave preclusive effect to three factual findings by the

28   British High Court of Justice, Chancery Division in a case under the British

-16-

Copyright Act, finding that the UK court's judgment met all of the *Hilton* requirements were met.  In particular, the court stated:

> From the opinion of the [UK] court it appears that both parties received adequate notice of the action, and that the British court carefully and thoroughly considered their respective allegations and proofs, provided Masquerade with ample opportunity to defend itself, and recorded the court's final decision clearly within that opinion.  For instance, documents from the UK litigation indicate that Masquerade was developing its litigation strategies at least as early as August 1996, while the U.K. Judgment is dated December 10, 1998. [Citation.]  The opinion of the High Court runs to 74 pages, and details extensive evidence presented to the court, as well as the court's thorough analysis of that evidence.  Indeed, this court generally considers the courts of the United Kingdom fair and just tribunals.  [Citation.]  Finally, there do not appear to be, nor has either party to this action alleged, any special grounds on which the judgment should be impeached.  As a result, this court will hold the UK judgment conclusive as to the issues tried upon the merits therein, to the extent that they satisfy the other requirements of the doctrine of collateral estoppel.

163 F. Supp. 2d at 473 (citations omitted).  With regard to the three factual findings the court gave preclusive effect, the District Court reasoned, "The High Court . . . weighed the credibility of various witnesses, interpreted documents supplied as evidence to the court, and drew conclusions about the likely behavior of the parties in light of their respective interests in Springsteen's songs." *Id.* at 475-476.  After determining that the UK court's factual findings were entitled to preclusive effect, the District Court granted summary judgment to Springsteen.

Here, as in *Pony Express Records*, the UK Judgment satisfies the *Hilton* requirements.  So clearly submitted to personal jurisdiction, by appearing,

-17-

1  defending against HSBC's claims, and by asserting counterclaims against HSBC.

2  There is no dispute that the UK court had subject matter jurisdiction.  Further, as

3  with the UK judgment in *Pony Express Records*, the UK Judgment here was

4  certainly brought upon due allegations and proofs, and, by virtue of the seven-

5  week trial, the parties had ample opportunity to defend against (and prosecute) the

6  claims.  As with the UK judgment in *Pony Express Records*, in the UK Judgment

7  here, the UK court's opinion extensively lays out the evidentiary basis for its

8  conclusions with respect to the issues of the case and states the extensive hearings

9  that took place in order to justify the conclusions reached.  It is clear from the UK

10 Judgment that the High Court "weighed the credibility of various witnesses,

11 interpreted documents supplied as evidence to the court, and drew conclusions

12 about the likely behavior of the parties in light of their respective interests[.]"  163

13 F. Supp. 2d at 475-476.  For all of these reasons, this Court should give preclusive

14 effect to the findings in the UK Judgment under the doctrine of comity.  Because

15 Plaintiff's claims arose more than three years before he filed suit against the KM

16 Defendants, Plaintiff's claims are time-barred.  Accordingly, the Court should

17 grant the KM Defendants' motion for summary judgment.

18  **C.  Even If the Judgment in the UK Litigation Is Not Given Collateral**

19  **Estoppel Effect, Plaintiff's Claims Are Time-barred, as they Accrued**

20  **Not Later than October 2005, When the UK Litigation Began.**

21  As set forth in section II.E., above, HSBC London froze Plaintiff's account in

22 October 2005 and commenced the UK Litigation with So, Lu and others.

23 (Thibodo Decl., Exh. J, UK Judgment, ¶ 4.)  So then engaged an attorney in

24 England by October 2005.  (Thibodo Decl., Exh. I, So Trial Tr., 10/18/07, 62:19-

25 63:10.)  In November 2005, So was contacted by an HSBC representative in

26 November 2005, who told him that if he cooperated with HSBC's investigation of

27 Michael Brown, he would "get [his] $30 million investment back."  (Thibodo

28 Decl., Exh. I, So Trial Tr., 10/18/07, 65:3-66:23.)  The initiation of a lawsuit by

-18-

HSBC, and So's engagement of a UK attorney, show that So was on inquiry notice by not later than October 2005.  Given HSBC's statement that it was investigating Michael Brown, and its further statement that So, by his cooperation, could get the $30 million "back," it is incontestable that by no later than November 2005, So clearly had "reason to suspect an injury and some wrongful cause. . . ."  *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th at 807.

### 1.    There Is No "Relation Back" to the Original Complaint Filing Date for the KM Defendants under California Law.

In a federal case where state law supplies the statute of limitations, relation back is governed by provisions of state law.  *See, e.g., Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir.1989) (Section 1983 case where state law provides the applicable statute of limitations, state law determines relation back).

The general rule in California is that an amended complaint that adds a new defendant does not relate back to the date of the original complaint, and the statute of limitations is applied as of the date the amended complaint is filed.  *Woo v. Superior Court*, 75 Cal. App. 4th 169, 176, 89 Cal. Rptr. 2d 20 (1999).  An exception exists for "the substitution under [Cal. Code Civ. P.] Section 474 of a new defendant for a fictitious Doe defendant named in the original complaint as to whom a cause of action was stated in the original complaint."  *Id*.  "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly. . . ."  Cal. Code Civ. P. § 474.  "If the requirements of section 474 are satisfied, the amended complaint substituting a new defendant for a fictitious Doe defendant filed after the statute of limitations has expired is deemed filed as of the date the original complaint was filed."  75 Cal. App. 4th at 176, 89 Cal. Rptr. 2d 20 (*citing Austin v. Massachusetts Bonding & Ins. Co.*, 56 Cal. 2d 596, 599, 15 Cal. Rptr. 817, 364 P.2d 681 (1961)).

-19-

In *Woo*, the California Court of Appeal held that there was no relation back, and that the defendant's motion for summary judgment on statute of limitations grounds should have been granted, because the plaintiff was aware of the newly-added defendant's identity before she filed her complaint.  The plaintiff, therefore, failed to meet the "non-procedural requirement for application of the section 474 relation-back doctrine [] that [she] must have been genuinely ignorant of Woo's identity at the time she filed her original complaint."  75 Cal. App. 4th at 177 (citing *Optical Surplus, Inc. v. Superior Court*, 228 Cal. App.3d 776, 783-784, 279 Cal. Rptr. 194 (1991) and *Hazel v. Hewlett*, 201 Cal. App.3d 1458, 1464-1466, 247 Cal. Rptr. 723 (1988)).

In this case, Plaintiff has failed to comply with any of the requirements of Cal. Code Civ. P. § 474.  Plaintiff did not name any "Doe" defendants in his original complaint.[5]  He did not even allege anywhere in his original complaint or First Amended Complaint that there were any potential defendants whose identities were unknown to him.  In addition, because Plaintiff actually knew the identities of Kondas, Meltzer and KMAI well before the time he filed his original complaint (Thibodo Decl., Exh. B, So Depo., Vol. 1, 20:11-21:11; 55:3-17; Thibodo Decl., Exh. L, So Second Witness Statement, ¶ ¶ 13, 32), he cannot meet the substantive requirement of § 474 that he must have been genuinely ignorant of their identities before he filed his original complaint.  Accordingly, under California law, the allegations of the First Amended Complaint against the newly-added KM Defendants do not relate back to the original complaint for statute of limitations purposes.

---

5/  Plaintiff made allegations against "Doe" defendants for the first time in his Second Amended Complaint, which was filed on July 16, 2009.  Thibodo Decl., Exh. O, SAC, ¶ 17.

-20-

**2.      There Is No "Relation Back" to the Original Complaint Filing Date for the KM Defendants under Federal Law.**

Even under Fed. R. Civ. P. 15(c)(1)(C), there would be no relation back, because under Rule 15(c)(1)(C), there is no relation back when the plaintiff knew of the new defendant's *identity* but was mistaken as to defendant's *liability*: "If plaintiff made a conscious choice to sue certain defendants and not others, it cannot join them after the statute has run upon discovering their responsibility for the acts sued upon." WILLIAM W SCHWARZER, A. WALLACE TASHIMA, AND JAMES M. WAGSTAFFE, CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL, ¶ 8:1638 (Thomson Reuters 2010) (*citing Louisiana-Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993); *Rendall-Speranza v. Nassim*, 107 F.3d 913, 917–919 (D.C. Cir. 1997). This is precisely what happened here. In this case, Plaintiff testified that he was aware of Kondas, Meltzer and KMAI as of early 2005. (Thibodo Decl., Exh. B, So Depo., Vol. 1, 20:11-21:11; 54:16-55:17; Thibodo Decl., Exh. L, So Second Witness Statement, ¶¶ 13, 32.) Accordingly, as with California state law, Plaintiff's allegations against the KM Defendants in his later FAC do not relate back.

Thus, even if the Court does not give preclusive effect to the UK Judgment, Plaintiff's claims still arose more than three years before he filed suit against the KM Defendants. Because Plaintiff's later claims against the KM Defendants do not relate back to the date of his initial complaint, Plaintiff's claims are time-barred. Accordingly, the Court should grant the KM Defendants' motion for summary judgment for this additional reason.

**V.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY ADJUDICATION OF PLAINTIFF'S FIRST, SECOND, THIRD, NINTH AND FIFTEENTH CAUSES OF ACTION.**

The essential elements of Plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment and conspiracy to commit

-21-

fraud are (1) false representation, concealment or non-disclosure; (2) knowledge
of the misrepresentation concealment or non-disclosure; (3) intent to induce
reliance; (4) justifiable reliance; and (5) resulting damages.  *See, e.g., Okun v.
Morton*, 203 Cal. App. 3d 805, 828, 250 Cal. Rptr. 220 (1988).  "*All* of these
elements must be present if actionable fraud is to be found; one element absent is
fatal to recovery."  *Id.*  The court of appeal further explained:

> A misrepresentation of fact is material if it induced the plaintiff to alter
> his position to his detriment.  Stated in terms of reliance, materiality
> means that without the misrepresentation, the plaintiff would not have
> acted as he did.  It must be shown that the plaintiff actually relied upon
> the misrepresentation; *i.e.*, that the representation was an immediate
> cause of his conduct which alters his legal relations, and that without
> such representation, he would not, in all reasonable probability, have
> entered into the contract or other transaction.

*Id.* (internal citations and quotes omitted).  In other words, the party alleging fraud
must plead and prove that he justifiably relied on the misrepresentation *before*
taking action to his detriment, and that he was damaged *because* of his reliance on
the alleged misrepresentations.  In this case, Plaintiff's prior testimony and
admissions prevent him from making that showing.  Plaintiff has admitted that
none of the KM Defendants made any representation to him that caused him to act
to his detriment.  Further, he has testified that the false representations that he *did*
rely on were all made by Brown or HSBC.  Finally, he has precluded himself from
making any showing of justifiable reliance by admitting that the very
misrepresentations he alleges in his Second Amended Complaint were
"completely incredible."  Because Plaintiff cannot prove that the KM Defendants
made any misrepresentation to him, and because he cannot prove that he relied on
any representation by the KM Defendants, or that any such reliance was justified,
his four fraud claims against the KM Defendants fail as a matter of law.

-22-

### A. The KM Defendants Made No Representations of Any Kind to Plaintiff Prior to April 2005.

Plaintiff has admitted that he had no communications with any of the KM Defendants prior to investing his money in the Private Placement. (Thibodo Decl., Exh. L, So Second Witness Statement, ¶ 32.) When he was asked at his deposition in this case whether, in his opinion, Meltzer had *ever* lied to him, Plaintiff testified that he could only "speculate." (Thibodo Decl., Exh. C, So Depo., Vol. 2, 257:20-24. With regard to Kondas, Plaintiff testified that all of his information came from his attorneys. (Thibodo Decl., Exh. C, So Depo., Vol. 2, 261:15-24.)[6]

### B. Plaintiff Relied Entirely on Promises from HSBC in His Decision to Transfer His and Lu's Funds in April 2005.

Plaintiff has testified that he believed Michael Brown had a "senior position at HSBC" (Thibodo Decl., Exh. I, 10/18/07 Trial Tr., 71:1-4), that he "trusted HSBC completely" (Thibodo Decl., Exh. I, 10/18/07 Trial Tr., 14:1-14), that "the main reason for [his] confidence on this investment was the money was with HSBC[,]" and "all decisions [were] made because the funds was with HSBC." (Thibodo Decl., Exh. G, 10/16/07 Trial Tr., 55:6-22.)

### C. Plaintiff Did Not Rely and Could Not Have Justifiably Relied on the Representations Alleged in His Second Amended Complaint.

The basis of Plaintiff's fraud claim is that he reasonably relied on false promises of "spectacular returns with very little risk." (SAC, ¶ 54.) Specifically, Plaintiff alleges that he reasonably relied on false promises that (1) his principal would remain safe in an HSBC bank account; (2) he could withdraw his funds at

---

6/ In addition to lacking any evidence that any of the KM Defendants made any misrepresentation to Plaintiff, or any evidence that Plaintiff relied on any representation by any of the KM Defendants, Plaintiff's Second Amended Complaint fails to "state with particularity the circumstances constituting fraud or mistake" with regard to any of the KM Defendants. Fed. R. Civ. P. 9(b).

-23-

1  any time; (3) his principal would not be subject to any risk; and (4) his investment

2  "would quickly reach $100 million in value."  (SAC, ¶ 120.)  As set forth above in

3  section II. F., Plaintiff obviously could not have justifiably relied on these

4  representations, no matter what the source, as he conceded in the UK trial that

5  these alleged representations were "completely incredible."  (Thibodo Decl., Exh.

6  H, So Trial Tr., 10/17/07, 66:20-68:18.)  In order for reliance to be justifiable, it

7  must be reasonable.  *See, e.g., Stitt v. Williams,* 919 F.2d at 523-524.

8           **D.     Plaintiff's Breach of Fiduciary Duty Claim Against Kondas,**

9                    **Meltzer and KMAI Fails as a Matter of Law.**

10          In the Second Amended Complaint, Plaintiff makes the conclusory allegation

11  that "[b]y virtue of their agreeing to locate a viable investment opportunity for So,

12  [KM Defendants] owed So a fiduciary duty. . . ."  (Thibodo Decl., Exh. O, SAC, ¶

13  63.)  "A 'fiduciary relation' in law is ordinarily synonymous with a 'confidential

14  relation.'  It is also founded upon the trust or confidence reposed by one person in

15  the integrity and fidelity of another, and likewise precludes the idea of profit or

16  advantage resulting from the dealings of the parties and the person in whom the

17  confidence is reposed."  *Rickel v. Schwinn Bicycle Co.*, 144 Cal. App. 3d 648, 654,

18  192 Cal. Rptr. 732 (1983) (*citing Bacon v. Soule*, 19 Cal. App. 428, 434, 126 P.

19  384 (1912).

20          There is no evidence whatsoever that Plaintiff reposed any "trust or

21  confidence" in Kondas, Meltzer or KMAI, and, indeed, he has not even made any

22  such allegations.  Instead, Plaintiff has admitted that he had no communications

23  with any of the KM Defendants prior to investing his money in the Private

24  Placement (Thibodo Decl., Exh. L, So Second Witness Statement, ¶ 32), that all of

25  his information regarding Kondas came from his attorneys (Thibodo Decl., Exh.

26  C, So Depo., Vol. 2, 261:15-24), and that he met Meltzer for the first time last year

27  and has never spoken to her in person.  (Thibodo Decl., Exh. C, So Depo., Vol. 2,

28  248:3-249:1.)  So further testified that he sued Meltzer because he understood that

-24-

1    she was "a key manager at KM & A Company" but that all of his information in

2    that regard came from his attorney.  (Thibodo Decl., Exh. C, So Depo., Vol. 2,

3    249:10-250:1; 257:13-19.)  When asked whether Meltzer had ever given him

4    investment advice, or ever advised him to invest money with Brown, So testified,

5    "I don't recall."  (Thibodo Decl., Exh. C, So Depo., Vol. 2, 252:7-253:16)  As a

6    matter of law, So reposed no trust or confidence in Kondas, Meltzer or KMAI,

7    and, therefore, there was no fiduciary relationship between Plaintiff and Kondas,

8    Meltzer or KMAI.  For all of these reasons, Plaintiff's breach of fiduciary duty

9    claim fails as a matter of law, and the Court should grant summary adjudication of

10   this claim, as well.

11   **VI.  CONCLUSION**

12        Based on all of the foregoing, Defendants Kevin Kondas, Mira Meltzer, KM

13   & Associates, International, LLC, KB&M Projects International, LLC, and CTL

14   Projects International, LLC request that the Court grant their motion for summary

15   judgment, or in the alternative summary adjudication.

16

17   DATED:  May 7, 2010        TODD D. THIBODO
                                LAW OFFICES OF TODD D. THIBODO
18                              A PROFESSIONAL CORPORATION
                                By:_____/s/ *Todd D. Thibodo*
19                                      Todd D. Thibodo
                                Attorney for Defendants KM & ASSOCIATES
20                              INTERNATIONAL, LLC, KB&M PROJECTS
                                INTERNATIONAL, LLC and CTL PROJECTS
21                              INTERNATIONAL, LLC

22   DATED:  May 7, 2010        WILLIAM P. DONOVAN, JR.
                                DLA PIPER LLP (US)
23                              By:_____/s/ *William P. Donovan, Jr.*_____
                                      William P. Donovan, Jr.
24                              Attorneys for Defendant KEVIN R. KONDAS

25   DATED:  May 7, 2010        WAYNE E. BEAUDOIN
                                LAW OFFICE OF WAYNE E. BEAUDOIN
26                              A PROFESSIONAL CORPORATION

27                              By:_____/s/ *Wayne E. Beaudoin*_____
                                      Wayne E. Beaudoin
28                              Attorney for Defendant MIRA MELTZER

                                       -25-