# EXHIBIT M



IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

KEVIN SO,                           )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )
                                    )  Case No. CV 08 - 03336 MMM (AGRx)
                                    )
LAND BASE LLC,                      )
                                    )
UNIVEST FINANCIAL SERVICES, INC.,   )
                                    )
BORIS LOPATIN, individually and     )
d/b/a  BORIS LOPATIN ASSOCIATES,    )
                                    )
and                                 )
                                    )
CHARLES W. WOODHEAD,                )
                                    )
        Defendants.                 )
_____)

## COMPLAINT

Plaintiff, Kevin So ("Kevin So" or "Mr. So"), by its counsel Kalbian Hagerty LLP, states

the following for his claims against Defendants Land Base LLC ("Land Base"), Boris Lopatin,

individually and d/b/a Boris Lopatin Associates (Defendants Land Base and Lopatin shall be

referred to collectively as "Lopatin" or "the Lopatin Defendants"), Charles W. Woodhead, and

Univest Financial Services, Inc. ("Univest") (collectively, "Defendants").

### I. Nature of the Case

1.      This action arises from the fraud perpetrated by Defendants Land Base and

Lopatin, acting in concert with various non-party co-conspirators, through a conspiracy wherein

these Defendants intended to and did steal millions of dollars from unsuspecting investors like

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 3 of 71   Page ID
#:6047
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 2 of 40

the Plaintiff.  Acting in concert, the Lopatin Defendants each played a role in what amounted to a sophisticated Ponzi scheme that left a trail of deceit from California to London to Hong Kong.

## II.     Parties

2.      Plaintiff Kevin So is a non-resident of the United States, a citizen of the People's Republic of China, and a resident of Hong Kong.  Mr. So is a successful businessman and CEO of Guangdong Arche Cosmetics Co. Ltd., which is principally in the business of manufacturing cosmetic products.

3.      Defendant Land Base is a Nevada limited liability company, duly registered to do business in the State of California, with its California office at 1431 Ocean Avenue, Suite 1210, Santa Monica, California 90401.  Upon information and belief, the principal place of business of Land Base is in California.  Upon further information and belief, Land Base is in the business of private placement projects administered by asset exchanges, which are purportedly used to finance infrastructure projects throughout the world.

4.      Defendant Univest is a corporation organized under the laws of the State of California, having its principal place of business at 1504 Eureka Road, Suite 390, Roseville, California 95661.  Upon information and belief, Univest's primary business objective was to finance Proprietary Media, Inc., which was in the business of providing public relations and marketing advice to aquariums and zoos.

5.      Defendant Lopatin is an adult individual over the age of 18 years and a resident of California.  He is one of two principals of Land Base.  On information and belief, the elaborate scheme described in this Complaint was Lopatin's brainchild.

6.      Defendant Woodhead is an adult individual over the age 18 years and a resident of California.  He is one of two principals of Land Base.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 4 of 71   Page ID
#:6048
Case 2:08-cv-03336-DDP-AGR      Document 1      Filed 05/20/2008      Page 3 of 40

### III.   Jurisdiction and Venue

7.      Jurisdiction is vested in this Court under 28 U.S.C. §1332(a)(2).  The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the action is between citizens of different states and citizens or subjects of a foreign state in that Plaintiff Kevin So is a citizen of China, and, upon information and belief, Defendant Land Base is a citizen of Nevada, and Defendants Univest and Lopatin are citizens of California.

8.      Venue is proper pursuant to 28 U.S.C. §1391, because Defendants Univest and Land Base are registered to do business in California.  Additionally, Land Base maintains its office in the Central District of California.  Upon information and belief, Defendants Lopatin, and Woodhead are residents of California.  Additionally, Defendants Lopatin and Woodhead are officers and principals of Defendant Land Base.

### IV.   Facts Common to All Counts

#### A.   The Fraudulent Scheme

9.      At issue in this case is a sophisticated cabal, by which the Lopatin Defendants stole millions of dollars from Plaintiff.

10.     In or around December 2004, the Lopatin Defendants developed a scheme whereby they, along with non-party Keith Millar ("Millar"),[1] would entice wealthy investors to deposit money into accounts to be managed by supposed bond-trader and non-party co-conspirator, Michael Brown.  Kevin So was one such investor.

---

[1]      Upon information and belief, Mr. Millar is a Canadian citizen.  As of the filing of this Complaint, Plaintiff is unaware of facts that might give this Court jurisdiction over Mr. Millar.  However, should such facts arise during the pendency of this litigation, Plaintiff intends to seek leave to amend the Complaint to include causes of action against Millar.

Case 2:08-cv-03336-DDP-AGR Document 1 Filed 05/20/2008 Page 4 of 40

11.    Brown utilized various business entities he formed to assist with the perpetration of the scheme, including, *inter alia*, 5th Avenue Partners Limited, Devonshire Capital Limited, Lamberhurst Developments Limited, and 5th Avenue Partners GMBH. Specifically, Brown utilized bank accounts opened in the names of these various entities to facilitate financial transactions underlying the fraud. Brown and his various business entities will be referred to collectively hereinafter as "Brown."

12.    Specifically, the Lopatin Defendants and Brown promised investors that the principal they invested would remain safe in bank accounts Brown maintained at HSBC Bank plc in London. Brown and Lopatin represented that these accounts would be segregated in the investors' favor. Brown would utilize the investors' funds to obtain significant profits by leveraging the investors' funds through bond purchases and sales. Brown and Defendant Lopatin promised the investors that they could withdraw their funds at any time.

13.    Lopatin promised the investors that Brown would purchase bonds only after having secured bank-approved institutions to repurchase them. According to Lopatin and Brown, the bonds Brown purchased would, only seconds later, be repurchased by the bank-approved institutions at great profit to the investors. Lopatin and Brown convinced the investors that, as these bonds would only be held for a matter of seconds before being re-sold to institutional buyers, these transactions posed very little risk. This bond purchase and sale scheme shall be referred to hereinafter as the "Private Placement Project."

14.    Defendants' representations regarding the bank accounts into which the investors' funds would be placed were false when made. Defendants neither segregated nor intended to segregate investors' funds in the manner represented, which would have supposedly protected

Case 2:08-cv-03336-DDP-AGR  Document 1  Filed 05/20/2008  Page 5 of 40

the investors' principal investment. Rather, at all times the Lopatin Defendants and Brown were able to and did access and utilize these funds for any purpose, including for their own account.

15.     Brown, a purported international bond trader with a British passport and a permanent resident of the U.S., together with Lopatin, served as the front-men for this endeavor. Millar and Lopatin facilitated the fraudulent scheme by recruiting investors and introducing them to Brown. Lopatin also assisted Brown by convincing investors that the Private Placement Project was a legitimate opportunity for investors to enjoy remarkable profits on their investments. These representations directly and proximately caused investors, including Mr. So, to comfortably part with their money.

16.     In preparation for implementing this scheme, the Lopatin Defendants entered into a business relationship with Univest, the purported goal of which was for Land Base to place $10 million belonging to Univest into high-return investments. In this respect, Land Base acted as an agent for and on behalf of Univest. Moreover, Univest's involvement permitted the Lopatin Defendants and Brown to test HSBC's institutional controls and assess whether HSBC would prevent Defendants from carrying out the Private Placement Project.

17.     In or about December 2004, Univest transferred $10 million from its bank in California to one of Brown's accounts at HSBC London. In fact, the Lopatin Defendants' true purpose behind entering into the Land Base-Univest relationship was not to obtain legitimate, high return investments for Univest, but rather was (i) to add an aura of legitimacy to a fraudulent investment scheme, (ii) to assist with efforts to induce other potential investors into entering into such a relationship, and, most importantly, (iii) to allow the Lopatin Defendants and Brown to learn whether HSBC would take the necessary steps to protect unsuspecting investors.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 7 of 71   Page ID
#:6051
Case 2:08-cv-03336-DDP-AGR    Document 1    Filed 05/20/2008    Page 6 of 40

18.      Shortly after Univest invested its $10 million in one of Brown's accounts, and
throughout January, February and March 2005, it was apparent that Brown was not executing the
number of trades required to generate the profits anticipated by the placement.      Upon
information and belief, during this period Univest's principal, Craig Christensen, voiced
complaints to Lopatin on this very issue.  Still, the Lopatin Defendants continued to participate
in the recruitment of additional investors for Brown, including the recruitment of Kevin So, the
details of which will be discussed in more detail below.

19.      In or around early to mid-April 2005, and at least several days prior to Mr. So
investing his $30 million, Univest's representatives, including Principal Craig Christensen and
its attorney Jeffrey Moritz, demanded that Brown refund Univest's $10 million and remit profits
to Univest.  These demands were transmitted to Lopatin.  In the absence of an investment by
Mr. So, the Lopatin Defendants and Brown were unable to refund Univest's investment.

20.      In fact, on or about April 20, 2005, Kevin So invested in the Private Placement
Project by depositing      $30 million into a Brown HSBC London account on or about April
20, 2005.  See Wire Transfer dated April 20, 2005, attached hereto as **Exhibit A.**  Immediately
thereafter, Brown and Lopatin, now able to meet Univest's demands, refunded Univest's $10
million "investment" -- which amount was drawn directly from the $30 million Kevin So
invested.   Refunding Univest enabled the Lopatin Defendants and Brown to continue their
charade for many months and keep the Ponzi scheme alive.

21.      Throughout the perpetration of the fraud and to further convince the potential
investors of the legitimacy of the purported investment opportunity and advance their fraudulent
scheme, Defendant Lopatin and Brown arranged meetings in the offices of a prestigious London
law firm, Fox Williams, and with representatives of HSBC London.  These meetings served to

assure investors like Mr. So that Messrs Brown and Lopatin were legitimate businessmen who the investors could and should trust to invest their money wisely.

22.     Additionally, the Lopatin Defendants and Brown presented investors, including Univest, with nearly identical letters titled "Irrevocable Bank Instruction," which purport to instruct Defendant Brown's bank (HSBC London) to take various steps to safeguard the investors' funds. This letter was signed on behalf of and stamped as received by an HSBC representative, which added to Defendants' aura of legitimacy. A copy of the Irrevocable Bank Instruction governing Mr. So's investment is attached as **Exhibit B.**

23.     According to the Irrevocable Bank Instruction relating to Mr. So's investment, "[u]nder no circumstances shall **Principal amount of funds** deposited in the amount of **Thirty Million United States Dollars ($30,000,000.00)** be permitted to be withdrawn, unless as stated hereto and for the payment of wire charges (if any)." **Exhibit B at ¶ 5 (emphasis in original).** The Lopatin Defendants and Brown never intended to abide by the terms of this Irrevocable Bank Instruction and, as a result of their knowledge and experience from Univest's earlier-issued HSBC Irrevocable Bank Instruction, were confident that HSBC would fail to abide by the letter's terms.

24.     To participate in the Private Placement Project, the Lopatin Defendants and Brown required investors to execute a document known as the "Land Base Agreement." The Land Base Agreement was florid, wordy, replete with superfluous clauses, and was intended to give investors the impression that it reflected a sophisticated and complex financial and legal arrangement. In fact, it was in large part devoid of any commercial meaning and purpose, by which the Lopatin Defendants and Brown intended to reinforce with investors an aura of legitimacy to the Private Placement Project. See Land Base Agreement, attached as **Exhibit C.**

25.    Given Brown's role in the fraudulent enterprise described herein, the High Court of Justice, Queen's Bench Division, Commercial Court in the United Kingdom entered a judgment against Brown and his companies and in Kevin So and other investors' favor. Additionally, Brown was convicted of perjury relating to false statements he made in efforts to gain access to funds he fraudulently obtained from Kevin So and others, as well as false statements made in connection with his efforts to flee the U.K.

### B.    Defendants Defraud Kevin So

### i.    Preparations for Investing

26.    At all times relevant hereto, Plaintiff Kevin So sought investment opportunities in the financial market for approximately $30 million, which, prior to the investment at issue here, he held in an account at HSBC Hong Kong. Specifically, Mr. So sought to invest in Medium-Term Notes (also known as "MTNs" or "bonds") of governmental, public, and private institutions in various jurisdictions. Kevin So's investment objectives included generating profits by purchasing and subsequently selling bonds issued by financial institutions with a very high credit rating – A+ or better. Notwithstanding this objective, of primary importance to Mr. So, as was well known to each of the Defendants, was security of the principal he invested.

27.    In or around December of 2004, Mr. So entered into a relationship with non-party Lucy Lu ("Lu"), a family friend and business associate, whereby Lu would serve as Kevin So's agent and fiduciary with respect to his investing $30 million. Mr. So and Lu had discussed the possibility of participating in private placements, and particularly private placements akin to that described in Paragraph 13 of this Complaint, with which Lu professed a general familiarity through her husband.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 10 of 71   Page ID
#:6054
Case 2:08-cv-03336-DDP-AGR      Document 1      Filed 05/20/2008      Page 9 of 40

28.     Particularly, Mr. So and Lu discussed private placements consisting of the
purchase and re-sale of highly rated bonds in circumstances where the re-purchaser was already
in place before the commitment to purchase the bond was made. Mr. So understood that, with
respect to these investment vehicles, the return on each individual bond trade would be
conservative, but that a good trader making many trades per week could achieve large overall
investment returns. Mr. So also understood that, typically, the principal invested in such a
private placement is to be safeguarded by a bank.

29.     Ultimately, Lu was introduced to the Lopatin Defendants and Brown by Millar,
who was a friend of Lu's husband. Upon information and belief, Millar learned that Lu
controlled significant funds to invest and that these funds belonged to Kevin So. Lu was
informed that Millar was someone who could introduce her to banks and bank traders involved
in bond trading.

30.     Millar and Lu corresponded from approximately late January 2005 through early
April 2005. At all times relevant hereto, Lu regularly informed Kevin So of the substance of her
conversations with Millar. The purpose of Millar and Lu's communications was to make
arrangements for the investment of Mr. So's $30 million. Specifically, Millar intended to entice
Kevin So and Lu to invest in the bond trading scheme developed and spearheaded by the Lopatin
Defendants and Brown. On information and belief, at some point during this same time period,
Lu made contact with Lopatin. It is unclear at this point as to whether the Lopatin Defendants
and/or Brown enticed Lu to join their scheme once they learned that she could access millions of
dollars.

31.     During the same period, Millar represented to Lu that, upon investing Mr. So's
$30 million, the trader (Brown) would require two to three weeks to partake in any trade.

According to Millar, this delay was due to the large demand for these investment vehicles and because the investment had to be run through some form of a compliance procedure, which required investors to disclose certain personal and financial information. Millar knew that these representations would reinforce with Mr. So and Lu the legitimacy of the Private Placement Project.

32.    On or about February 16, 2005, Millar informed Lu and Kevin So that to proceed with the investment, Lu and Mr. So must travel to London to meet with the trader (Brown), who would be would handling the investment transactions. Millar also informed them that Mr. So would need to transfer the $30 million to HSBC London, where these funds would be placed in a non-depletion account. According to Millar, the HSBC London account that was to house Mr. So's funds was regulated by HSBC such that it would be required to maintain $30 million in cash, A-rated bank securities, and/or a combination thereof.

33.    Millar assured Lu and Kevin So that this form of trading was safe and was highly regulated by the UK's Financial Services Authority, the Bank of England, and the U.S. Securities and Exchange Commission. Throughout February and March 2005, Millar repeatedly represented to Lu and Mr. So that Mr. So's principal investment would be safe and not subject to any risk.

34.    Due to Mr. So's business commitments and personal health issues, he could not travel from Hong Kong to London. Therefore, Mr. So sent his agent and fiduciary Lu in his stead -- not suspecting at the time that her allegiance might lie elsewhere. To ensure that Lu was Mr. So's agent and fiduciary, Millar provided Mr. So with an affidavit, which Mr. So executed. The affidavit confirmed that Lu had Mr. So's the authority to act on his behalf with respect to investing his $30 million. This affidavit was subsequently presented by Millar to Brown and the

Lopatin Defendants. Consequently, at all relevant times, the Defendants understood that Lu was acting as Mr. So's representative and that she would transmit to him any and all representations they made.

35.     Millar informed Lu and Mr. So that Brown, who Millar at all relevant times referred to only as the "trader," required evidence that Mr. So had sufficient funds necessary to participate in the private placement he was pitching to them. Therefore, Mr. So provided Lu with a certificate evidencing the balance of funds maintained in his HSBC Hong Kong account. Ms. Lu, in turn, transmitted this certificate to Millar.

36.     Millar proposed that the London meetings take place in April 2005. According to Millar, present at the meeting would be the trader (Brown), Brown's lawyer, and someone he referred to as the "Fed representative." Prior to Lu traveling to London, Mr. So had not had contact with anyone at HSBC London, any of the Lopatin Defendants, nor Brown or his companies. In fact, at this stage, Mr. So did not know that the Lopatin Defendants, Brown, or his companies were involved.

### ii.     April 2005 London Meetings

37.     Lu arrived in London on or about April 10, 2005. She was accompanied to London by her friend and Chinese-English interpreter, Jane Zhou ("Zhou"). Ms. Zhou is not a party to this action.

38.     On or about April 11, 2005, Lu and Zhou met Brown. Brown immediately began making representations aimed at convincing Lu (and ultimately Kevin So) of the legitimacy of his business and the Private Placement Project.

39.     Specifically, he represented, according to Lu's sworn testimony in London proceedings, that his offices were full of hidden cameras and that every phone call and

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 13 of 71   Page ID
#:6057
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 12 of 40

correspondence in and out was being monitored by the Financial Services Authority. Brown
further represented that, as he was being monitored, he had to make sure his dealings with
investors were completely honest and above board. Brown also showed Lu a computer screen in
his office, which purportedly depicted a trade he was executing.

40.     To further impress Lu regarding his bona fides and character, Brown told her that
his grandfather was wealthy, and that he left significant stock shares to Brown's father. Both
passed away, and Brown managed a fund in his father's memory where he deposited his
investment profits. Brown further explained that he was licensed by the UK government to serve
as a trader.

41.     After Brown explained his background and credentials, Defendant Lopatin arrived
at the meeting. Lopatin explained that he was a principal of Defendant Land Base, which he
claimed was in the business of private enterprise assets exchanges. Lopatin explained the nature
of what he claimed was Land Base's business. Specifically, Land Base would contract with
investors to place money into a private placement where the value of the initial investment would
be protected. According to Lopatin, usually Land Base worked with a single investor and started
with a fund of at least $100 million. Land Base would then place 75% of its share of
participation into mainly infrastructure projects that return long-term profits and benefit society.

42.     Lopatin next explained his and Land Base's role in the private placement
involving Brown to Lu. Lopatin explained that, at this time, he and Land Base were assisting
Brown in securing participants with less than $100 million to invest and locating potential
investment projects. Lopatin explained that Brown would buy and sell high rated bonds, and
that, once the investment value reached $100 million, Brown would drop out and Lopatin would
commence trading. Profits after the goal of $100 million would be split, with half going to Land

Case 2:08-cv-03336-DDP-AGR  Document 344  Filed 05/07/10  Page 14 of 71  Page ID
#:6058
Case 2:08-cv-03336-DDP-AGR  Document 1  Filed 05/20/2008  Page 13 of 40

Base, and half to Mr. So, but 75% of So's profits should be invested into infrastructure projects. In short, Lopatin promised Mr. So high returns coupled with virtually no risk.

43.    Throughout this meeting and thereafter, Brown and Lopatin repeatedly assured Lu and Kevin So that their investment would be safe, and that HSBC London would ensure that the principal investment sums would not be depleted. Brown and Lopatin both knew that HSBC London would, in fact, not take the steps necessary to protect Mr. So. Brown and Lopatin also assured Lu and Mr. So that the funds they deposited would be maintained in an account segregated in their favor.

44.    Lopatin knew these assurances were false when he gave them to Lu, and he specifically intended that Lu and Mr. So would rely on such statements. Brown already demonstrated by his track record with Univest that he actually executed very few trades – many less than were promised to Mr. So. This fact was known to the Lopatin Defendants.

45.    Lu continued her meetings with Boris Lopatin the next day, April 12, 2005. During her second day of meetings, Lu was presented with a copy of the Letter of Instruction, which was stamped by HSBC's Moorgate Branch and signed by HSBC representative, Jackie Arnull. Lu also requested that the Letter of Instruction be revised. The first letter given to Lu only reflected an account in the name of 5th Avenue Partners, one of Brown's companies. Lu requested that the letter indicate that Mr. So and Lu be co-holders of this account. Confident that HSBC would not honor this letter, Lopatin and Brown made the requested changes. Finally, Lu requested that Lopatin and Brown arrange for her to meet with Jackie Arnull.

46.    It was at meetings on April 12 and 13, 2005 that Lopatin discussed with Lu the "Land Base Agreement," which Lopatin explained to be a perfectly legitimate and commercially viable agreement. Lopatin represented that this agreement's purpose was to set out clearly what

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 15 of 71   Page ID
#:6059
Case 2:08-cv-03336-DDP-AGR     Document 1     Filed 05/20/2008     Page 14 of 40

was expected of Land Base and investors, and to confirm the benefit sharing of the parties, and the use to which those benefits would be placed.

47.     In fact, Brown and the Lopatin Defendants intended the Land Base Agreement to give Lu and Mr. So the impression of a sophisticated and complex financial and legal arrangement.  In fact, this Agreement was in large part devoid of any commercial meaning and purpose.  In sum, the Lopatin Defendants intended the Land Base Agreement to reinforce with Mr. So and Lu that the Private Placement Project was both legitimate and humanitarian in nature. See Land Base Agreement, attached as **Exhibit C.**

48.     In the Land Base Agreement, Land Base specifically warranted that Kevin So's account would at all times be holding either cash or highly rated Fixed Income Instruments.  See **Exhibit C** at Article 3.11.  Upon information and belief, Lopatin and Land Base never intended that Kevin So's investment be maintained at all times with cash or highly rated Fixed Income Instruments and, in fact, Mr. So's investment was never so maintained.

49.     Ultimately, Lu executed the Land Base Agreement on Mr. So's behalf on or about April 13, 2005.  The Agreement Lu signed was a bound document on heavy gold-colored paper, and it was signed and sealed on behalf of Land Base by Lopatin.

50.     During her meetings with Lopatin, Lopatin furnished Lu with a recommendation letter from HSBC in which Ms. Arnull, an employee and agent of HSCB working at HSBC's Moorgate branch in London, described Brown as a good customer.  Additionally, Lopatin furnished Lu with an amended Letter of Instruction, which reflected an account not only in the name of 5th Avenue Partners, but also in the name of Kevin So and Lu.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 16 of 71   Page ID
#:6060
Case 2:08-cv-03336-DDP-AGR    Document 1    Filed 05/20/2008    Page 15 of 40

51.    Lu returned to Canada on April 14, 2005.  Although she had requested to meet with Ms. Arnull, no meeting ever occurred.  Lopatin informed Lu that Ms. Arnull would not be available until April 14, 2005 -- the day Lu returned to Canada.

52.    Upon returning to Canada, Lu discussed the details of her meetings, including her discussions with Lopatin, Brown and others, with Mr. So.  Lu provided Mr. So with copies of the Land Base Agreement, the Letter of Instruction, and Ms. Arnull's recommendation letter, as well as, Arnull's, Lopatin's and Brown's business cards.

53    Lu also informed Mr. So that Brown invited them to contact Ms. Arnull directly if they had any concerns.  In fact, Kevin So did transmit an e-mail to Ms. Arnull seeking her assurances that Mr. So's funds would be held in a segregated, non-depletion account.  Ms. Arnull referred Mr. So's inquiries to Brown directly.  Brown, fearing that his and Lopatin's scheme would be discovered, reacted angrily.  Lopatin sought to diffuse the situation by giving Lu assurances regarding their pending transaction.  Lopatin also assured Lu that, had there been any problems with the Letter of Instruction, HSBC's fraud department would have contacted them immediately.

54.    Mr. So was concerned that Ms. Arnull never responded to his inquiry directly, and inquired about this fact with Lopatin.  Lopatin again allayed Mr. So's concerns by telling Lu that, because the inquiry did not contain legal verbiage, HSBC might not reply.  Also, if HSBC thought there were any problems, they would have responded vigorously and immediately.  With that, Lopatin successfully diffused the situation, and was assured that Mr. So still intended to invest into the Private Placement Project.

55.    Mr. So transferred $30 million to HSBC London on or about April 20, 2005.  See **Exhibit A.**  The wire from Kevin So's HSBC Hong Kong account identified the account into

which the $30 million should be transferred as a Euro account, with beneficiaries listed as "5[th]

Avenue Partners Ltd So Kevin Lu Yan Lucy." However, such an account did not actually exist.

By now, Brown, who had transacted in millions of dollars with HSBC London, was confident in

his ability to arrange for HSBC to accept the transfer into an account other than that instructed on

the wire. In fact, Brown was able to convince HSBC to divert Mr. So's money to a U.S. dollar

account in the name of another of Brown's companies, Devonshire Capital Ltd.

56.    As soon as Kevin So's money posted to the Devonshire Capital Ltd. account at

HSBC, Brown arranged to transfer $10 million of Mr. So's $30 million directly to Univest.

57.    On April 22, 2005, HSBC faxed wire details to Brown, who forwarded them to

Lopatin. Either Brown or Lopatin removed or covered up the final entry, which would have

demonstrated that the beneficiary bank account did not match Kevin So's wire instructions. See

HSBC Electronic Payments Details dated April 22, 2005, attached hereto as **Exhibit D.**

58.    Following the transfer of Mr. So's $30 million to the Devonshire account, neither

Mr. So nor Lu received any confirmation or communication from HSBC regarding any trades.

Lu contacted Lopatin on Mr. So's behalf and inquired about receiving statements from HSBC.

Lopatin assured her that Brown was reporting to him and Land Base regarding Brown's trading

activities, and that Land Base would provide reports to her and Kevin So. In total, Mr. So and

Lu only received a handful of trading confirmations from Land Base.

59.    In or around the end of October 2005, Lopatin contacted Lu and informed her that

he no longer wanted Brown to be a trader for Mr. So's funds. He stated that he negotiated a

settlement with Brown to return a sum of $62,428,220 to Kevin So, which included the

$30 million in principal and a $32,428,220 profit derived from trading. Lopatin failed to disclose

that HSBC had already frozen Brown's accounts.

60.    In fact, upon information and belief, as Lopatin had compiled investment statements for Kevin So relating to the $30 million he invested, Lopatin knew that Brown had not achieved any profits on Mr. So's investment.  Moreover, Lopatin knew that Brown had not maintained the $30 million principal that Kevin So invested.   As such, upon information and belief, based upon Lopatin's knowledge of the principal loss by Brown, Lopatin's call to Lu in October 2005 was merely an attempt at damage control.   Knowing the house of cards was collapsing and that Brown faced significant civil and criminal liability, Lopatin sought to mask his true role in the scheme to defraud Mr. So.  He sought to convince Lu and Mr. So that their interests were aligned with Lopatin's (and Land Base's) so as to avoid facing a lawsuit or criminal penalties.

61.    Upon information and belief, Land Base and its two principals, Defendants Lopatin and Woodhead[2], profited by over $4 million for their role in this fraudulent scheme, while Kevin So lost nearly $27 million.

62.    Plaintiff has suffered and continues to suffer monetary damages in excess of $30,000,000 and irreparable harm in the form of, *inter alia*, damage to his reputation.

### IV.    CAUSES OF ACTION

### Count I:  Fraud/Intentional Misrepresentation
### (Against the Lopatin Defendants)

63.    Plaintiff incorporates and re-alleges Paragraphs 1 through 62 as if fully set forth herein.

64.    As alleged above, the Lopatin Defendants made false representations of material fact to Plaintiff and/or his agents, including *inter alia* the following:

---

[2]    The precise nature of Woodhead's involvement is not yet known.  Nevertheless, as a principal of Land Base, he stood to and did profit from the Lopatin Defendants' fraud.

(a) the principal Kevin So invested would remain safe in bank accounts Brown maintained at HSBC Bank plc in London;

(b) Mr. So's investment would be and in fact had been segregated in a bank account held jointly by both Mr. So and Brown;

(c) Mr. So could withdraw his funds at any time;

(d) Brown would execute multiple trades per week, thus generating significant returns for Mr. So;

(e) Mr. So's investment principal would be protected by HSBC consistent with the instructions found in the Letter of Instruction;

(f) Mr. So's principal investment would not be subject to any risk;

(g) Mr. So's principal investment would be maintained in $30 million cash, A-rated bank securities, or a combination of these;

(h) Mr. So's investment would quickly reach $100 million in value; and

(i) Lopatin negotiated a settlement whereby Brown would pay Mr. So $62,428,220, when he knew, but failed to disclose to Mr. So, that HSBC had frozen Brown's accounts.

65.      These Defendants knew their representations to Plaintiff and his agent were false and/or acted with utter disregard and recklessness as to whether they were true or false. Each of these Defendants had unique and superior knowledge and/or specialized expertise with regard to the formation, status, condition, and operations of the Private Placement Project.

66.      Defendants were aware and intended that the false information provided to Lucy Lu would be used by Mr. So, a known party. Thus, Defendants knew, intended, and understood that Mr. So would act in reliance on such representations and/or omissions.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 20 of 71   Page ID
#:6064
Case 2:08-cv-03336-DDP-AGR      Document 1      Filed 05/20/2008      Page 19 of 40

67.    Plaintiff received and relied on the false representations and omissions of material

fact.   Plaintiff reposed trust and confidence in each Defendant, their unique and superior

knowledge and expertise, and the information that was provided to him, with the knowledge,

consent, and authority of each Defendant.

68.    Kevin So's reliance was foreseeable, reasonable and justified.

69.    Kevin So's reliance on the Lopatin Defendants' false representations and

omissions directly and proximately caused injury and pecuniary loss to Mr. So, for which he is

entitled to an award of actual and consequential damages in an amount to be proven at trial, but

believed to be in excess of $30,000,000.

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in

his favor and against Defendants Lopatin and Land Base on Count I of the Complaint, and:

(a)    Award Plaintiff compensatory damages in the amount of at least $30,000,000 or

such other amount as may be proved at trial;

(b)    Award Plaintiff punitive damages in the amount of at least $10,000,000.

(c)    Award Plaintiff pre-judgment interest, post-judgment interest, reasonable

attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

### Count II: Negligent Misrepresentation
### (Against the Lopatin Defendants)

70.    Plaintiff incorporates and re-alleges Paragraphs 1 through 69 as if fully set forth

herein.

71.    The Lopatin Defendants owed a duty to Kevin So to exercise reasonable care to

ensure, at all times, the complete, accurate, and truthful disclosure of all material facts

concerning the Private Placement Project, including *inter alia*:

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 21 of 71   Page ID
#:6065
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 20 of 40

(a) that the principal Kevin So invested would remain safe in bank accounts Brown maintained at HSBC Bank plc in London;

(b) that Mr. So's investment would be and in fact had been segregated in a bank account held jointly by both Mr. So and Brown;

(c) that Mr. So could withdraw his funds at any time;

(d) that Brown would execute multiple trades per week, thus generating significant returns for Mr. So;

(e) that Mr. So's investment principal would be protected by HSBC consistent with the instructions found in the Letter of Instruction;

(f) that Mr. So's principal investment would not be subject to any risk;

(g) that Mr. So's principal investment would be maintained in $30 million cash, A-rated bank securities, or a combination of these;

(h) that Mr. So's investment would quickly reach $100 million in value; and

(i) that Lopatin negotiated a settlement whereby Brown would pay Mr. So $62,428,220, when he in fact knew, but failed to disclose to Mr. So, that HSBC had frozen Brown's accounts.

72.     Each of these Defendants, acting within the course and scope of his or its agency, employee, partner, and/or joint venture relationship, failed to exercise reasonable care to ensure, at all times, the complete, accurate, and truthful disclosure of these material facts to Mr. So.

73.     Each of these Defendants, acting within the course and scope of his or its agency, employee, partner, and/or joint venture relationships, participated in, approved, sanctioned, cooperated in, assisted in, consented to, acquiesced in, benefited from, or otherwise participated

in and/or failed to prevent the generation and dissemination of materially false, incomplete, and inaccurate information described in Paragraphs 64 and 71, above.

74.    The generation and dissemination of materially false, incomplete, and inaccurate information was caused by these Defendants' failure to exercise reasonable care or competence in obtaining or communicating the information, and/or their failure to exercise reasonable care or competence to prevent the communication of false information. Each of these Defendants had unique and superior knowledge and/or specialized expertise with regard to the formation, status, condition, and operations of the Private Placement Project.

75.    These Defendants knew, intended, and understood that such information would be supplied to Mr. So for his benefit and guidance.

76.    These Defendants knew, intended, and understood that the information would be used to influence Mr. So in his determination as to whether or not to invest in the Private Placement Project.

77.    Mr. So was a known, intended, and foreseeable recipient of the false, incomplete, and inaccurate information supplied.  These Defendants knew that the information was desired for a serious purpose, that false or erroneous information would cause significant injury, and that the relationship between the parties was such that Mr. So had the right to rely on the Defendants for accurate information, and Defendants owed a duty to give this information with due care.

78.    Mr. So received and relied upon the false, incomplete, and inaccurate information supplied to him.  Mr. So reposed trust and confidence in each of these Defendants, their unique and superior knowledge and expertise, and the information that was provided to him, with the knowledge and consent of each Defendant.

79.    Mr. So's reliance was foreseeable, reasonable, and justified.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 23 of 71   Page ID
#:6067
Case 2:08-cv-03336-DDP-AGR      Document 1      Filed 05/20/2008      Page 22 of 40

80.     Mr. So's reliance directly and proximately caused him to suffer significant injury and pecuniary loss, for which he is entitled to an award of actual and consequential damages in an amount to be proven at trial, but believed to be in excess of $30,000,000.

81.     These Defendants' conduct, as outlined above, was intentional and/or deliberate, and involved circumstances of malice, fraud, bad motive, circumstances of aggravation or outrage, and was reckless, willful, wanton and consciously disregarded or was indifferent to Plaintiff's rights. As a result, Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendants Lopatin and Land Base on Count II of the Complaint, and:

(a)     Award Plaintiff compensatory damages in the amount of at least $30,000,000 or such other amount as may be proved at trial;

(b)     Award Plaintiff punitive damages in the amount of at least $10,000,000.

(c)     Award Plaintiff pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

### Count III:  Fraud Based on Concealment of Material Facts
### (Against the Lopatin Defendants)

82.     Plaintiff incorporates and re-alleges Paragraphs 1 through 81 as if fully set forth herein.

83.     The Lopatin Defendants, acting within the course and scope of his or its agency, employee, partner, and/or joint venture relationships, knowingly or recklessly concealed and/or failed to disclose material facts that these Defendants had a duty to disclose, including, *inter alia*: (a) the compensation each stood to receive as a result of and from Mr. So's investment; (b) that Brown failed to execute trades with respect to Univest's investment of the frequency promised;

(c) that Brown failed to execute trades with respect to Mr. So's investment of the frequency promised; (d) that the principal Mr. So invested was not and would not be safeguarded by HSBC; (e) that Mr. So's investment was not deposited into any account to which he was a beneficiary; (f) that $10 million of Mr. So's investment was immediately transferred to Univest; (g) that Mr. So could not withdraw his funds at any time; and (h) that, at the time Lopatin purportedly entered into a settlement on Mr. So's behalf, HSBC had frozen Brown's accounts.

84.     Each of these Defendants had unique and superior knowledge and/or specialized expertise with regard to the formation, status, condition, and operations of the Private Placement Project.  Mr. So reposed trust and confidence in each Defendant, their unique and superior knowledge and expertise, and the information that was provided to him, with the knowledge, consent, and authority of each Defendant, in connection with his decision to invest money in such a venture and such projects.

85.     During the April 2005 meetings with Lopatin and Brown, and continuing thereafter, the Lopatin Defendants, acting within the course and scope of their agency, employee, partner, and/or joint venture relationships, knowingly or recklessly concealed material facts that they had a duty to disclose, including, *inter alia*, those material facts described in Paragraph 83, above.  Defendants had unique and superior knowledge and/or specialized expertise with regard to the formation, status, condition, and operations of the Private Placement Project, and its purported assets and management (or lack thereof).  Mr. So reposed trust and confidence in the Defendants, their unique and superior knowledge and/or expertise, and the information they provided to him in connection with his decision to invest money in the Private Placement Project.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 25 of 71   Page ID
#:6069
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 24 of 40

86.   Defendants concealed and/or failed to exercise reasonable care to disclose these material facts with the knowledge, intent, and understanding that the concealment and/or nondisclosure would defraud Mr. So by creating a false impression on the part of Mr. So as to such matters.

87.   These Defendants knowingly or recklessly concealed these material facts, with the knowledge, intent, and understanding that Mr. So, a known party, would take action he would or might not take if he knew the true facts.   In particular, Defendants knew that the information was desired for a serious purpose, that the false or erroneous information would cause injury, and that the relationship between the parties was such that Mr. So had the right to rely on Defendants for such information, and Defendants owed a duty to give such information with due care.

88.   Mr. So was unaware of the true state of the facts, and acted in reliance on the assumption that the concealed and/or nondisclosed facts did not exist or were different from the actual truth.

89.   Mr. So's reliance was foreseeable, reasonable and justified.

90.   Mr. So's reliance directly and proximately caused injury and pecuniary loss to Mr. So, for which he is entitled to an award of actual and consequential damages in an amount to be proven at trial, but believed to be in excess of $30,000,000.

91.   Defendants' conduct, as outlined above, was intentional and/or deliberate, and involved circumstances of malice, fraud, bad motive, circumstances of aggravation or outrage, and was reckless, willful, wanton and consciously disregarded or was indifferent to Plaintiff's rights.   As a result, Plaintiff is entitled to an award of punitive damages.

Case 2:08-cv-03336-DDP-AGR  Document 344  Filed 05/07/10  Page 26 of 71  Page ID
#:6070
Case 2:08-cv-03336-DDP-AGR  Document 1  Filed 05/20/2008  Page 25 of 40

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendants Lopatin and Land Base on Count III of the Complaint, and:

(a)    Award Plaintiff compensatory damages in the amount of at least $30,000,000 or such other amount as may be proved at trial;

(b)    Award Plaintiff punitive damages in the amount of at least $10,000,000.

(c)    Award Plaintiff pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

### Count IV: Conversion
### (Against the Lopatin Defendants)

92.    Plaintiff incorporates and re-alleges Paragraphs 1 through 91 as if fully set forth herein.

93.    These Defendants fraudulently and otherwise wrongfully and without authority assumed and exercised dominion and control over property belonging to Kevin So – namely, $30 million.

94.    These Defendants fraudulently and otherwise wrongfully disposed of Mr. So's property in a manner contrary to Mr. So's directives and understanding with the Defendants by (a) failing to invest Mr. So's $30 million; (b) failing to return the $30 million to Mr. So; (c) transferring $10 million of Mr. So's funds to Univest; (d) retaining at least $4 million of Mr. So's funds for their own uses; and (e) allowing Mr. So's $30 million to be depleted by Lopatin, Brown and perhaps others.

95.    Defendants' conduct, as outlined above, directly and proximately caused injury and pecuniary loss to Mr. So, for which he is entitled to an award of actual and consequential damages in an amount to be proven at trial, but believed to be in excess of $30,000,000.

96.    Moreover, Defendants' conduct, as outlined above, was intentional and/or deliberate, and involved circumstances of malice, fraud, bad motive, circumstances of aggravation or outrage, and was reckless, willful, wanton and consciously disregarded or was indifferent to Plaintiff's rights.   As a result, Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendants Lopatin and Land Base on Count IV of the Complaint, and:

(a)    Award Plaintiff compensatory damages in the amount of at least $30,000,000 or such other amount as may be proved at trial;

(b)    Award Plaintiff punitive damages in the amount of at least $10,000,000.

(c)    Award Plaintiff pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

## Count V:  Unjust Enrichment/Quasi Contract
### (Against Univest)

97.    Plaintiff incorporates and re-alleges Paragraphs 1 through 96 as if fully set forth herein.

98.    As set forth above, Plaintiff conferred a benefit on Defendant Univest in the amount of at least $10 million.

99.    These circumstances described in the preceding paragraphs render it inequitable, unfair and unjust to allow Defendant Univest to retain any of the moneys it obtained from Plaintiff.

100.    As a direct and proximate result of the unjust enrichment of Defendants, Mr. So is entitled to an award of damages in an amount to be proven at trial, but believed to be in excess of $10,000,000.00.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 28 of 71   Page ID
#:6072
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 27 of 40

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendant Univest on Count V of the Complaint, and:

(a)    Award Plaintiff compensatory damages in the amount of at least $10,000,000 or such other amount as may be proved at trial; and

(b)    Award Plaintiff pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

### Count VI: Unjust Enrichment/Quasi Contract
### (Against the Lopatin Defendants)

101.    Plaintiff incorporates and re-alleges Paragraphs 1 through 100 as if fully set forth herein.

102.    As set forth above, Plaintiff conferred a benefit on the Lopatin Defendants in the amount of at least $4,141,078.

103.    These circumstances described in the preceding paragraphs render it inequitable, unfair and unjust to allow the Lopatin Defendants to retain any of the moneys it fraudulently obtained from Plaintiff.

104.    As a direct and proximate result of the unjust enrichment of Defendants, Mr. So is entitled to an award of damages in an amount to be proven at trial, but believed to be in excess of $4,000,000.00.

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendants Land Base, LLC and Boris Lopatin on Count VI of the Complaint, and:

(a)    Award Plaintiff compensatory damages in the amount of at least $4,148,078 or such other amount as may be proved at trial; and

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 29 of 71   Page ID
#:6073
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 28 of 40

(b)     Award Plaintiff pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

**Count VII: Civil Conspiracy**
**(Against the Lopatin Defendants)**

105.    Plaintiff incorporates and re-alleges Paragraphs 1 through 104 as if fully set forth herein.

106.    Defendants, acting as a malicious concern or combination of two or more persons, agreed upon a common objective to be accomplished involving unlawful and tortious acts and unlawful purposes, as described fully herein.  These unlawful acts and purposes included the perpetration of a fraud upon Mr. So, the intentional concealment of material facts, and breach of fiduciary and trust duties.

107.    Each Defendant committed one or more unlawful overt acts in furtherance of the common objective, including committing the fraudulent acts described in Counts I and III, above.

108.    Each Defendant acted with malice toward Plaintiff and intent to cause him monetary and other injury.

109.    As a proximate result of Defendants' conspiracy and illegal acts carried out in furtherance of the conspiracy, Plaintiff incurred injury and pecuniary loss, for which he is entitled to actual and consequential damages in an amount to be proven at trial, but believed to be in excess of $30,000,000.

110.    Defendants' conduct was intentional and deliberate, and involved circumstances of malice, fraud, bad faith, bad motive, circumstances of aggravation or outrage, and was

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 30 of 71   Page ID
#:6074
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 29 of 40

reckless, willful, wanton and in conscious disregard or indifference to Plaintiff's rights. As a result, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendants on Count VII of the Complaint, and:

(a)     Award Plaintiff compensatory damages in the amount of at least $30,000,000 or such other amount as may be proved at trial;

(b)     Award Plaintiff punitive damages in the amount of at least $10,000,000; and

(c)     Award Plaintiff pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

### Count VIII: Respondeat Superior
### (Against the Lopatin Defendants and Woodhead)

111.   Plaintiff incorporates and re-alleges Paragraphs 1 through 110 as if fully set forth herein.

112.   At all relevant time periods stated herein, Lopatin acted as an officer, director, agent, sub-agent, partner, joint venturer, employee, and/or controlling person of Land Base.

113.   At all relevant time periods stated herein, Woodhead acted as an officer, director, agent, sub-agent, partner, joint venturer, employee, and/or controlling person of Land Base.

114.   At all relevant time periods stated herein, Lopatin acted as a partner of and joint venturer with Woodhead.

115.   At all relevant time periods stated herein, Woodhead acted as partner of and joint venturer with Lopatin.

116.   At all relevant time periods stated herein, Land Base held out to the public and to Mr. So that Lopatin and Woodhead were qualified, competent, worthy of trust and confidence, and duly appointed principals of Land Base, and members of Land Base's management team.

Case 2:08-cv-03336-DDP-AGR Document 344 Filed 05/07/10 Page 31 of 71 Page ID
#:6075
Case 2:08-cv-03336-DDP-AGR Document 1 Filed 05/20/2008 Page 30 of 40

117. Thus, at all relevant time periods stated herein, the knowledge and conduct of Lopatin and Woodhead was directly attributable and imputable to each other and to Land Base.

118. In addition, at all relevant time periods stated herein, Lopatin and Woodhead acted as agents, partners, and/or joint venturers of each other and Land Base. Thus, at all relevant time periods stated herein, the knowledge and conduct of Lopatin and Woodhead was directly attributable and imputable to each other and Land Base.

119. At all relevant time periods herein, Defendant Land Base:

  (a) Had actual or imputed knowledge of the acts, conduct, representations, and omissions of their respective agents and representatives;

  (b) Accepted the benefits of the acts, conduct, representations, and omissions of their respective agents and representatives;

  (c) Exercised inadequate supervision over the acts, conduct, representations, and omissions of their respective agents and representatives.

120. At all relevant time periods herein, Defendants Woodhead and Lopatin:

  (a) Had actual or imputed knowledge of the acts, conduct, representations, and omissions of their respective partners and/or joint venturers;

  (b) Accepted the benefits of the acts, conduct, representations, and omissions of their respective partners and/or joint venturers;

  (c) Exercised inadequate supervision over the acts, conduct, representations, and omissions of their respective partners and/or joint venturers.

121. Land Base is jointly and severally liable for all actual, consequential, restitutionary, and/or punitive damages assessed against Lopatin and/or Woodhead on the basis

of *respondeat superior* and/or their status as officers, directors, agents, sub-agents, employees, partners, and/or joint venturers of these Defendants.

122.  Lopatin and Woodhead are jointly and severally liable for all actual, consequential, restitutionary, and/or punitive damages assessed against each of them on the basis of *respondeat superior* and/or their status as partners and/or joint venturers.

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendants Land Base, Lopatin and Woodhead on Count VIII of the Complaint, and:

(a)  Award Plaintiff compensatory damages in the amount of at least $30,000,000 or such other amount as may be proved at trial;

(b)  Award Plaintiff punitive damages in the amount of at least $10,000,000.

(c)  Award Plaintiff pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

### Count IX: Lack of Separate Corporate Existence/Alter Ego
### (Against Lopatin and Woodhead)

123.  Plaintiff incorporates and re-alleges Paragraphs 1 through 122 as if fully set forth herein.

124.  At all times relevant hereto, Lopatin and Woodhead owned 100% of Land Base and exercised complete domination and control of Land Base and its purported assets, such that Land Base is or was a mere instrumentality of Lopatin and Woodhead.

125.  Lopatin and Woodhead have used their domination and control of Land Base and its assets to commit and to cause fraud, public wrong, and similar injustice, as described herein.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 33 of 71   Page ID
#:6077
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 32 of 40

126.     Lopatin and Woodhead have used their domination and control of Land Base to commit and cause violations of legal duties, as described herein.

127.     The domination and control of Land Base by Lopatin and Woodhead has directly and proximately caused the injury and unjust loss sustained by Mr. So, as described herein.

128.     Under agency, alter ego, and piercing the corporate veil principles, Lopatin and Woodhead are liable for the amounts owed by Land Base, including all actual, consequential, restitutionary and punitive damages sustained by Mr. So as a result of Land Base's breach of contract and tortious conduct.

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendants on Count IX of the Complaint, and:

(a)     Award Plaintiff compensatory damages in the amount of at least $30,000,000 or such other amount as may be proved at trial;

(b)     Award Plaintiff punitive damages in the amount of at least $10,000,000.

(c)     Award Plaintiff pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

### Count X: Breach of Contract
### (Lopatin, Woodhead and Land Base)

129.     Plaintiff incorporates and re-alleges Paragraphs 1 through 128 as if fully set forth herein.

130.     The Land Base Agreement constituted a valid and existing contract between Mr. So and Land Base, Lopatin and Woodhead (although some of its provisions may well be unenforceable).

131.     All conditions precedent to the enforcement of the Land Base Agreement and Plaintiff's right to enforce thereunder have been met or otherwise satisfied.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 34 of 71   Page ID
#:6078
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 33 of 40

132.   Kevin So at all times complied with the Agreement and fully performed his obligations.

133.   Defendants breached the Agreement, *inter alia*, by: (1) failing to ensure that Mr. So's principal investment was safe; and (2) allowing Mr. So's principal investment to be depleted.

134.   Defendants' actions constitute breach of contract.  Mr. So suffered irreparable harm as a direct and proximate result of Defendants' breach.  Additionally, Mr. So suffered monetary and other damages to its reputation and good will as a direct and proximate result of Defendants' unlawful actions, omissions and breach of contract.

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendants Lopatin, Woodhead and Land Base on Count X of the Complaint, and:

(a)   Award Plaintiff compensatory damages in the amount of at least $27,000,000 or such other amount as may be proved at trial; and

(b)   Award Plaintiff pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

### Count XI: Breach of Fiduciary Duty
### (Against Lopatin, Woodhead and Land Base)

135.   Plaintiff incorporates and re-alleges Paragraphs 1 through 134 as if fully set forth herein.

136.   Defendants, by the Land Base Agreement, agreed to safeguard Mr. So's investment.  Therefore, Defendants owed Kevin So a fiduciary duty and were required to exercise the utmost good faith and loyalty toward Kevin So.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 35 of 71   Page ID
#:6079
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 34 of 40

137.   As fiduciaries, Defendants owed Mr. So, *inter alia,* the duty to ensure that the principal amount of Mr. So's investment was not depleted. Defendants' duty also encompassed the obligation to act in the best interest of Mr. So, to inform Mr. So of every development affecting that interest, and not to profit to the detriment of Mr. So.

138.   Defendants breached their fiduciary duty to Mr. So, *inter alia,* by (a) failing to safeguard the principal amount of Mr. So's investment; (b) failing to inform Mr. So about Defendants' own involvement and interest in the Private Placement Project; (c) failing to keep Mr. So informed of Brown's failure to execute trades; (d) acting against Mr. So's interests by profiting more than $4 million from the Private Placement Project; and (e) otherwise concealing, failing to disclose and misrepresenting material facts, as fully described above, regarding the Private Placement Project.

139.   As a direct and proximate cause of Defendants' multiple breaches of their fiduciary duty, Mr. So has suffered and continues to suffer significant monetary and other damages.

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendants Lopatin, Woodhead and Land Base on Count XI of the Complaint, and:

(a)   Award Plaintiff compensatory damages in the amount of at least $30,000,000 or such other amount as may be proved at trial;

(b)   Award Plaintiff punitive damages in the amount of at least $10,000,000; and

(c)   Award Plaintiff pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs incurred and such other and further relief as the Court may deem just.

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 36 of 71   Page ID
#:6080
Case 2:08-cv-03336-DDP-AGR   Document 1   Filed 05/20/2008   Page 35 of 40

### Count XII:  Accounting
### (Against All Defendants)

140.    Plaintiff incorporates and re-alleges Paragraphs 1 through 139 as if fully set forth herein.

141.    By virtue of the facts and circumstances described in this Complaint, Kevin So is entitled to a full accounting of all sales, transfers, assignments, liens, encumbrances, or other dispositions of any and all of Defendants' funds and/or assets since January 1, 2005 and until the present, and a full accounting of all ownership interests that have been issued to anyone in any entity or entities that currently own or formerly owned such assets or projects.

WHEREFORE, Plaintiff Kevin So respectfully requests that this Court enter judgment in its favor and against Defendants on Count XII of the Complaint and Order a full accounting as described herein.

### <u>JURY DEMAND</u>

Plaintiff Kevin So demands a trial by jury on all issues raised in the Complaint for which a jury trial is available.


Dated May 16, 2008                          Respectfully submitted,

                                            KALBIAN HAGERTY L.L.P.

                                            D. Michelle Douglas (CA Bar No. 190248)
                                            888 17th Street, N.W., Suite 1000
                                            The Brawner Building
                                            Washington, D.C. 20006
                                            Phone:     (202) 223-5600
                                            Facsimile:  (202) 223-6625

                                            *Counsel for Plaintiff Kevin So*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV08- 3336 MMM (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Kevin So,

PLAINTIFF(S)

v.

Land Base LLC, Univest Financial Services, Inc.,
Boris Lopatin, individually and d/b/a Boris Lopatin
Associates and Charles W. Woodhead

DEFENDANT(S).

CASE NUMBER

CV 08 - 03336 MMM (AGRx)

**SUMMONS**

TO:    DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  D. Michelle Douglas, Esq. _____, whose address is  Kalbian Hagerty LLP, 888 17th Street, N.W., Ste. 1000, Washington, D.C. 20006 _____ .  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

SHERRI R. CARTER

Clerk, U.S. District Court

Dated: __MAY 2 0 2008__

By: _____
                    Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

Kevin So

v.

Land Base LLC, Univest Financial Services, Inc.,
Boris Lopatin, individually and d/b/a Boris Lopatin
Associates and Charles W. Woodhead

PLAINTIFF(S)

DEFENDANT(S).

CASE NUMBER

CV 08 - 03336 MMM (AGRx)

**SUMMONS**

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _D. Michelle Douglas, Esq._____, whose address is _Kalbian Hagerty LLP, 888 17th Street, N.W., Ste. 1000, Washington, D.C. 20006_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

SHERRI R. CARTER
Clerk, U.S. District Court

Dated: __MAY 20 2008__

By: _____L. MURRAY_____

Deputy Clerk

(Seal of the Court)

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                                SUMMONS

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
So Kevin

**DEFENDANTS**
Land Base LLC, Univest Financial Services, Inc., Boris Lopatin, individually and d/b/a Boris Lopatin Associates, and Charles W. Woodhead

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases).
Hong Kong, China

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):
Los Angeles County

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
D. Michelle Douglas, Esq.
Kalbian Hagerty LLP, 888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 223-5600

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☑ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No     ☑ MONEY DEMANDED IN COMPLAINT: $ 40,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 1391 - Fraud, Civil Conspiracy and Breach of Contract

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No  ☐ Yes

If yes, list case number(s).

**FOR OFFICE USE ONLY:**   Case Number: CV 08 - 03336 MMM (AGRx)

MAY 20 2008

Case 2:08-cv-03336-DDP-AGR     Document 1     Filed 05/20/2008     Page 40 of 40

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b).  RELATED CASES:  Have any cases been previously filed that are related to the present case? ☑ No   ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                         ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                         ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                         ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

IX. VENUE: List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

    Kevin So – China

List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.

    Land Base LLC – Los Angeles County
    Univest Financial Services, Inc. – Placer County
    Boris Lopatin individually and d/b/a Boris Lopatin Associates–
    Los Angeles County; Charles W. Woodhead – Los Angeles County

List the California County, or State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

    United Kingdom

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _~~signature~~_     Date 05/16/08

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended  (42 U.S.C. (g)) |

**EXHIBIT A**

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 43 of 71   Page ID
#:6087
Case 2:08-cv-03336-DDP-AGR   Document 1-2   Filed 05/20/2008   Page 2 of 2

The Hongkong and Shanghai Banking Corporation Limited 香港上海滙豐銀行有限公司
Network Services Centre, Payment Services Department 中央滙款中心 · 滙款服務部

DUPLICATE ADVICE

REMITTANCES ADVICE   滙款通知書

| Transaction Reference 交易編號 | |
|---|---|
| TT   GZC183636 | 20 APR 2005 |

HSBC BANK PLC                                    LONDON

TT   GZC183636

TO  HSBC BANK PLC
    INTL DIVISION LONDON
F/O 5TH AVENUE PARTNERS LTD/SO KEVIN/
    LU YAN LUCY
A/C 58047833
O/O MR SO KEVIN + MS LU YAN LUCY
DTL REF SO KEVIN/LU YAN LUCY
    MESSAGE FOR A/C 625-019930 DEP 0001
AID B SW-MIDLGB22
BK TO BK   /ACC/YR OFC AT 1 SOUTH PLACE THE
           //HELICON LONDON EC2M SC 40-05-15

TT AMOUNT        USD 30000,000.00
TOTAL CHARGES    HKD     160.00 DR 625-018437-888
DR AMOUNT        USD 30000,000.00 DR 625-019930-0001

NOTE: Telegraphic transfers are not subject to the bank's usual conditions.
註: 本電滙不受本行的一般規則約束。

Member HSBC Group
滙豐集團成員



Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 44 of 71   Page ID
#:6088
Case 2:08-cv-03336-DDP-AGR   Document 1-3   Filed 05/20/2008   Page 1 of 5

# EXHIBIT B

KS/4

# 5TH AVENUE PARTNERS LTD

26 Upper Brook St, London W1K 7QE
Tel: (020) 729 76464 Fax: (020) 729 76479
https://www.5ave.co.uk

## Exhibit "HSA"
## Irrevocable Bank Instruction

To: Jackie Arnull
HSBC Bank Plc
1 South Place
London
EC2M

We, 5th Avenue Partners Ltd, on behalf of our client, So Kevin and / or  Lu Yan Lucy hereby irrevocably instruct you to proceed with the following:

1. Purchase or cause to be purchased Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's, as directed by undersigned, 5th Avenue Partners Ltd. Execute the re-sale of such herein described Fixed Income Instruments (Assets) as directed by undersigned, 5th Avenue Partners Ltd. Benefits due to the trade shall be disbursed as directed by undersigned, 5th Avenue Partners Ltd, as stated below:

*So Kevin and / or Lu Yan Lucy shall receive an amount of Fifty Percent (50%) of the "Benefits generated due to each trading Cycle Activities up to the trading amount of Four Times of the approximate Principal Amount of Thirty Million dollars ($30,000,000.00)". "Benefits generated due to each trading Cycle Activities up to the trading amount of Four Times of the approximate Principal Amount of Thirty Million dollars ($30,000,000.00)" shall be defined as the differential between Gross Amount of Funds that is utilized to Purchase Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's and the re-sale of hereto-purchased Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's. Benefits to So Kevin and / or Lu Yan Lucy shall be paid without any deductions of Bank fees, other Professional Services fees and Intermediaries (Introducing Parties) fees (if any). Benefits to 5th Avenue Partners Ltd. shall be the rest of the revenue benefits generated and paid with deductions of Bank fees, Professional Services fees and Intermediaries (Introducing Parties) fees (if any). The benefits shall be paid at the 5th Avenue Partners Ltd. Instructions to the accounts as instructed by the 5th Avenue Partners Ltd.*

5

22

# 5TH AVENUE PARTNERS LTD

26 Upper Brook St, London W1K 7QE
Tel: (020) 729 76484 Fax: (020) 729 76479
https://www.5ave.co.uk

2. Upon receipt and clearance of the payments for the Fixed Income Instruments (Assets), into this segregated account please proceed with further Purchase of Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's, as directed by undersigned, 5th Avenue Partners Ltd. Also execute the further re-sale of such hereto described Fixed Income Instruments (Assets) as directed by undersigned, 5th Avenue Partners Ltd. Distribution of revenue benefits shall be as above stated.

3. Please ensure that all transactions with regard to Fixed Income Instruments (Assets) and/or corporate bonds shall be settled and cleared through DTC or Euroclear, or Clearstream.

4. All counterparties to each Transaction shall be solely comprised of major licensed financial institutions, professional broker-dealers, or other recognized and approved institutional entities.

5. Under no circumstances shall Principal amount of funds deposited in the amount of Thirty Million United States Dollars ($30,000,000.00) be permitted to be withdrawn, unless as stated hereto and for the payment of wire charges (if any).

6. All bank fees excluding wire charges shall be paid by undersigned, 5th Avenue Partners Ltd.

7. These Irrevocable Instructions shall be valid until the Instruction of Termination and Closing of said account. At the time of Account closure please remit the Principal amount of funds in the amount of Thirty Million United States Dollars ($30,000,000.00) with deduction of wire charges (if any) to the following Bank account:

| | |
|---|---|
| Bank: | The Hongkong and Shanghai Banking Corporation Limited |
| Address: | Convention Plaza HSBC Premier Centre |
| | Shop No. 103 1/F Shopping Arcade Convention Plaza 1 |
| | Harbour Road, Wan Chai, Hong Kong |
| Fax: | 2824 1380 |
| Telex: | 73205 hsbc hk |
| Account No: | 625-019930 |
| Account Name: | Mr. So Kevin and Ms. Lu Yan Lucy |

6

23

# 5TH AVENUE PARTNERS LTD

26 Upper Brook St, London W1K 7QE
Tel: (020) 729 76464 Fax: (020) 729 76479
https://www.5ave.co.uk

Sincerely,

5th Avenue Partners Ltd

*April 11, 2005*
CC: So Kevin and Lu Yan Lucy

Receipt Acknowledgement:
(Bank)

HSBC Bank plc
THE HELICON
1 SOUTH PLACE
LONDON
EC2M 2UP

MOORGATE

24

# 5TH AVENUE PARTNERS LTD

26 Upper Brook St. London W1K 7QE
Tel: (020) 729 78484 Fax: (020) 729 78470
https://www.5ave.co.uk

| | |
|---|---|
| Name of Bank : | HSBC Bank Plc |
| Address: | 1 South Place, |
| | The Helicon |
| | London |
| | EC2M |
| | |
| SWIFT: | MIDLGB22 |
| Sort Code: | 40-05-15 |
| Account Number: | 58947833 |
| Name of Account: | 5th Avenue Partners Ltd/ So Kevin/Lu Yan Lucy |
| REFERENCE: | So Kevin/Lu Yan Lucy |

Please note that it is imperative to put the reference on the transfer as without this reference the funds shall be returned.

Thank you

5th Avenue Partners Ltd, a company registered in England and Wales, registered office is 10 Dominion Street, London EC2M 2EE.
A wholly owned subsidiary of 5th Avenue Partners GmbH, Alpenstrasse 11, CH 6300 Zug, Switzerland

**EXHIBIT C**

This Confidential Private Enterprise Document in its Entirety, and Total Contents, including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

## PRIVATE ENTERPRISE ASSETS EXCHANGE BENEFITS PARTICIPATION AGREEMENT
### (Hereinafter Referred to as: Transaction Code: 8885276-723)

### Article 1. Parties.

1.1  Land Base, LLC, a management team of individuals and / or corporate entities, and / or foundation represented by Mr. Boris Lopatin, of Land Base, LLC, P.O. Box 586, Beverly Hills, Ca. 90213 USA, United States of America citizen of Legal Age, bearer of United States Passport Number: 038825561 (Telephone: +1 310 917 1218, Facsimile No.: +1 310 393-7216, Mobil: +1 310 901-7474, E-mail: landbasellc@aol.com)(Hereinafter referred to as: "LB")

1.2  So Kevin and / or  Lu Yan Lucy, a management team of individuals and / or corporate entities represented by Mr. So Kevin, Hong Kong Special Administrative Region, Peoples Republic Of China citizen of Legal Age, bearer of Hong Kong Special Administrative Region, Peoples Republic Of China Passport No: HA9022486, FT B 21/F Tower 1Park Towers, 1 King's Road North Point HK, HK SAR, Telephone: +86-20-3873-0888, Facsimile: +86-20-3873-0999, and / or Lu Yan Lucy, Canadian citizen of Legal Age, bearer of Canadian Passport No: VK095744, 51 Kimbark Crescent , Markham, Ontario, L3R 8P5 Canada, Telephone: +1 416 837-7687, Facsimile: +1 905 513-0552, E-mail: yanglucy@rogers.com (hereinafter referred to as: "SKLYL").

1.3  LB and SKLYL shall hereinafter be referred to collectively as the Parties. The Parties have concluded this Private Enterprise Assets Administration Benefit Participation Agreement ,(hereinafter referred to as Transaction Code: 8885276-723) at the Terms and Conditions as set forth hereinafter, and evidenced by this present Transaction Code: 8885276-723.

### Article 2.   Representations

2.1  Whereas,        SKLYL has certain assets in the amount(s) as stated in Schedule(s) "A" ("A1", "A2", "A3", "A4", if any) (hereinafter referred to

Initials:          SKLYL:            LB:

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 51 of 71   Page ID
#:6095
Case 2:08-cv-03336-DDP-AGR   Document 1-4   Filed 05/20/2008   Page 3 of 21

This Confidential Private Enterprise Document in its Entirety, and Total Contents,
Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the
Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the
"Economic Espionage Act"

as the Assets) and has the intent and the capacity to place the Assets, for
the purpose herein set forth into an account in a mutually acceptable
bank, (hereinafter referred to as SKLYL's Account), and

2.2   Whereas,   LB has the capability to administer the exchange of the
assets under the terms hereof to generate income for the benefit of the
Parties.

2.3   Whereas,   The Parties have mutually agreed to enter into
Transaction Code: 8885276-723, for the purpose of facilitating, and jointly
participating in the proceeds of a Private Placement Opportunities
(PPO), and in consideration of the mutual covenants and agreements
hereinafter set forth and other good and valuable consideration, the
receipt and sufficiency of which is hereby acknowledged, Parties hereby
represent and warrant to each other that they have the full legal authority
and power to enter into Transaction Code: 8885276-723, and that no
consent or approval of any third party shall be required as a condition of
the execution of Transaction Code: 8885276-723, or the performance of
either Party hereinafter. Parties hereby agree and acknowledge that the
execution of Transaction Code: 8885276-723, shall immediately establish
any and all relationships between them for the purposes of participating
in Transaction Code: 8885276-723, as set out herein.

Article 3. The Contributions, Warrants and Undertakings of the Parties.

3.1   SKLYL hereby agrees to provide Assets which are good, clean and clear
of non-criminal origin, free from any and all liens, encumbrances, and / or
restrictions of whatsoever nature, readily available, fully transferable, and
by affiliation are legally generated, and are not in breach of any Anti-
Money Laundering regulations as subscribed to member states of the
Financial Actions Task Force, an pan-national entity organized by the
Organization of Economic Cooperation and Development to initiate
Transaction Code: 8885276-723. SKLYL hereby warrants that no person,
entity, organization, group and / or country / state / nation that engages
in, and / or sponsors, and / or directs, and / or funds, and / or gives any
aid, comfort, and / or sanctuary or support, in any form and kind, to any
person, entity, organization, group and / or country / state / nation that
advocates, and / or engages in, and / or perpetrates acts of terrorism as
defined and / or designated, and / or recognized by the Government of

Initials:         SKLYL:              LB:

This Confidential Private Enterprise Document in its Entirety, and Total Contents,
Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the
Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the
"Economic Espionage Act".

the united States of America, are not now, nor will they hereafter be a
party to, share in, or derive any direct or indirect benefit from
Transaction Code: 8885276-723.

3.2    That SKLYL also agrees and undertakes to assist LB in whatever way is
necessary and generally to co-operate with LB and the parties structuring
Transaction Code: 8885276-723, to the fullest, to ensure the successful
completion of Transaction Code: 8885276-723, including but not limited
to the provision of any and all due diligence material required by the
various transacting parties, including regulatory authorities, and to
execute without undue delay any and all documents and agreements
required of SKLYL to facilitate Transaction Code: 8885276-723.

3.3    That SKLYL agrees and acknowledges that SKLYL has been informed
through LB that in certain instances after the amount of benefits received
by SKLYL, due to Transaction Code: 8885276-723, is in excess of One
Hundred Million Dollars ($100MM) and then further to be defined in
herein Schedule(s) "A1", ("A2", "A3", "A⁴," if any) not less than Seventy
Five Percent (75%) of SKLYL portion of the than net proceeds of
Transaction Code: 8885276-723 may be required, upon the agreement of
both parties, whose consent shall not be unreasonably withheld, to be
used for SKLYL's development and related purposes for the betterment
of mankind, including but not limited to: the creation of long term
permanent jobs, education, health and medical facilities, restructuring and
rebuilding of communities and all forms of infrastructures,
communications and related work, and as requested, to provide evidence
of such SKLYL's projects and their approximate value in US Dollars.
SKLYL further confirms that SKLYL was informed by LB, and SKLYL
understands that the regulatory and the appropriate related United States
and/or international authorities shall approve thereto SKLYL's Projects,
and could require an audit of said expenditure.

3.4    That SKLYL agrees and acknowledges that in the event Transaction
Code: 8885276-723 requires that the principal sum (funds) set as the
value of the Assets be reserved in its bank to establish a value in another
mutually acceptable bank, SKLYL will do all within SKLYL's power to
arrange and facilitate such a reservation of value by giving an irrevocable
direction to the bank holding the funds to reserve the value as per

Initials:          SKLYL:              LB:

This Confidential Private Enterprise Document in its Entirety, and Total Contents, Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

SKLYL's direction, including but not limited to the reservation of said value to the other branch of bank currently holding the funds, or to such other bank as may be determined. That SKLYL agrees and acknowledges that in the event of Transaction Code: 8885276-723 requires the principal sum (funds) set as the value of the Assets be moved from its current bank to another mutually acceptable bank, SKLYL will do all within SKLYL's power to arrange and facilitate such a transfer of funds by giving an irrevocable direction to the bank holding the funds to transfer the funds as per SKLYL's direction, including but not limited to the transfer of said funds to the other branch of bank currently holding the funds, or to such other bank as may be determined.

3.5    That SKLYL will sign or if appropriate will procure the execution of any documents subsequently required to give proper and full effect to this document for exclusive administration of hereto exchanges of the Assets as stated in Schedule(s) "A" ("A1", "A2", "A3", "A⁴", if any) by LB. That SKLYL further agrees and undertakes to provide LB with copies of all correspondence in relation to Transaction Code: 8885276-723, and to enter such other agreements or undertakings as may be required, from time to time, in order to complete Transaction Code: 8885276-723, and meet the obligations of the Parties hereunder.

3.6    That SKLYL agrees and acknowledges that Transaction Code: 8885276-723 is being structured specifically to create Benefits to accommodate SKLYL's own major Projects and those of LB's, and that this Transaction Code: 8885276-723 is necessary in order to accommodate SKLYL and LB. SKLYL further agrees and acknowledges that SKLYL can not enter into Transaction Code: 8885276-723, of the type contemplated herein except by way of an invitation to participate.

3.7    That SKLYL acknowledges and agrees that SKLYL is a sophisticated investor, and that SKLYL has sufficient time to consult any and all professional, legal or other advisors it deemed necessary prior to entering into Transaction Code: 8885276-723. SKLYL further agrees and undertakes to hold LB free and clear of any liability, responsibility, expenses or obligation for any losses SKLYL may incur (outside of Transaction Code: 8885276-723) because of entering into Transaction Code: 8885276-723.

Initials:                SKLYL:                LB:

Case 2:08-cv-03336-DDP-AGR   Document 1-4   Filed 05/20/2008   Page 6 of 21



> This Confidential Private Enterprise Document in its Entirety, and Total Contents, including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

3.8   That LB hereby agrees and warrants that through its extensive range of international contacts in the financial service industry, it has been negotiating with experienced professionals in the matter of identifying, structuring, and facilitating Transaction Code: 8885276-723, and that when all the necessary documents have been provided to these professionals by SKLYL and LB, LB will be in a position to introduce SKLYL to the Individual(s), and their respective firms, with whom LB has been successfully dealing in this matter.

3.9   That LB agrees and undertakes to work with SKLYL and assist SKLYL in establishing the necessary structure(s) to participate in Transaction Code: 8885276-723 including, as necessary, all negotiations and provision of documents etc.

3.10   The Parties hereto acknowledge and agree that Transaction Code: 8885276-723 herein, is structured with the services of qualified and experienced professionals who deal with the underlying Investment Managers, Professionals, and Banks and carry out a pivotal role in the identification, negotiation and structuring of Transaction Code: 8885276-723. In certain instances LB is authorized to purchase or to reserve or cause to be purchased *Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's* or herein Assets for hereto Transaction Code: 8885276-723, or causing the purchase of *Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's* Investment Grade **Financial Instruments** through various Joint Venture Agreements, as well as LB has rights to appoint Agents, Representatives, "Traders" for hereto Transaction Code: 8885276-723, or to cause the purchase and re/sell of, *Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's* to generate benefits as stated hereto.

3.11   That LB warrants and undertakes that at all times, SKLYL's Account must be holding either cash, *Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or*

Initials:                    SKLYL:                    LB:

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 55 of 71   Page ID
#:6099
Case 2:08-cv-03336-DDP-AGR   Document.1-4   Filed 05/20/2008   Page 7 of 21



This Confidential Private Enterprise Document in its Entirety, and Total Contents, Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

*better as evidenced by Standard and Poor's, or equivalent such as Moody's (if applicable) or combination thereof, of equal or greater value than the value of Assets on deposit, or may remain in the same form but reserved via Banking means.*

3.12  That due to LB's Assets Exchange Private Enterprise Administration Services and / or upon completion of *each trading Cycle Activities benefits are generated. "Benefits generated due to each trading Cycle Activities" shall be defined as the differential between Gross Amount of Funds that is utilized to Purchase Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's and the re-sale of hereto-purchased Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's,* or any other activities due to Transaction Code: 8885276-723, the benefits are to be generated and therefore shall be paid as hereinafter stated below.

3.13  Parties to this Transaction Code: 8885276-723, hereby warrant that this Transaction Code: 8885276-723, is not solicited and is non-security per the Security & Exchange Acts 1933/1934 and any and all-applicable amendments.

3.14  That Transaction Code: 8885276-723 does not create an employer/employee relationship, a partnership or a joint venture for tax purposes or for any other reason. Specifically, the Parties hereby agree that Transaction Code: 8885276-723 does not in any way constitute the formation of a partnership or a joint venture, and the Parties agree that each and every reasonable construction or interpretation of any of the terms, provisions, or conditions of this Transaction Code: 8885276-723 compels the conclusion that the formation of a partnership or a joint venture was not attempted and that neither a partnership nor a joint venture has been formed hereby. Thus, Transaction Code: 8885276-723 shall not be construed in any way as an agreement to form a partnership or a joint venture. Further, that Transaction Code: 8885276-723 shall not be construed as an Investment Management Agreement or an Agency with any and all Investment Institutions. Furthermore, Transaction Code: 8885276-723 shall not be construed as establishing a Partnership

Initials:          SKLYL:          LB:

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 56 of 71   Page ID
#:6100
Case 2:08-cv-03336-DDP-AGR   Document 1-4   Filed 05/20/2008   Page 8 of 21

This Confidential Private Enterprise Document in its Entirety, and Total Contents,
Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the
Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the
"Economic Espionage Act"

relationship between the Parties, nor an agency of one party to the other, nor any other joint venture business structure other than that intended herein that is being the provision of mutually essential services delivered on an equal basis for the benefit of the proposed business and the sharing and distribution of all revenue, net benefits and other disbursement as set out herein.

3.15   That each party shall be Individually and Separately Liable for any taxes or Government impositions of any sort that may be due on income arising out of Transaction Code: 8885276-723, and also any other individual debts, liabilities, contracts or obligations of such Party to Transaction Code: 8885276-723. That the Parties acknowledge and agree that each of them shall be responsible to make all required filing, including tax returns, with the Federal and/or State and/or Provincial Governments in which they are respectfully domiciled and to pay any and all taxes, imposts, or levies which may be assessed to any of them respectively. That the Parties hereby authorize each other to disclose any information or details relative in such payments, provided such a demand for disclosure is legally made upon them by any Federal, State or Provincial Tax Authority, the local Tax Office or by a valid Court Order and only written notice is received by the Party to be reported upon.

3.16   That any Change or Modification to Transaction Code: 8885276-723 shall only be made in writing and agreed to by both Parties. No verbal Agreement shall have any binding effect whatsoever. No previously negotiated Agreements (if any) shall have any binding effect whatsoever. All amendments must be executed by all of the Parties hereto. Transaction Code: 8885276-723, and amendments thereto, if any, applies to all transactions throughout the full term after termination of Transaction Code: 8885276-723 as well as throughout all extensions thereof, and this includes all transactions being discussed or in progress on the effective date of Transaction Code: 8885276-723, as well as all follow-up, repeat, extended, and renegotiated transactions. In all cases Termination of Transaction Code: 8885276-723, can only occur upon the completion of trading cycles , and satisfactory conclusion of any other contractual obligations that had been entered by LB as a result of Transaction Code: 8885276-723. It shall be expressly stated that the term of Transaction Code: 8885276-723, shall be five years from the date of the

Initials:                    SKLYL:                    LB:

This Confidential Private Enterprise Document in its Entirety, and Total Contents, Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

last contact between the Parties regarding any matter that may relate, either directly or indirectly, to Transaction Code: 8885276-723, including any activity or transaction or other agreement or document that may relate to Transaction Code: 8885276-723, either directly or indirectly. For the purpose of this paragraph, the term "last contact" means any contact that is made directly or through another person or intermediary and is made orally and/or in writing and/or by electronic means. Therefore, the full force and effect of Transaction Code: 8885276-723 with all of its words, sentences, terms, provisions, conditions, and appendices, shall govern any and all plans, actions, inactions, activities, communications, documents, agreements, and any other matter or process that may relate, either directly or indirectly, to the provision of services or the performance of duties in accordance with Transaction Code: 8885276-723. Transaction Code: 8885276-723 is effective immediately upon execution for the full term even when the last contact occurred at the time of execution and even though a Party makes the decision immediately upon or after execution not to proceed with any type of business activity and even though one or all activities and/or transactions fail or are not concluded, regardless of the cause and reason.

3.17  All amendments to Transaction Code: 8885276-723 must be clearly identified at the top of each page as an amendment. For example, "AMENDMENT NUMBER 1 EFFECTIVE -----------, 200-." Each amendment shall clearly state the nature of the change to Transaction Code: 8885276-723, so that the change can be clearly understood by reading the amendment itself. An amendment that simply restates Transaction Code: 8885276-723, without identifying changes is void even if signed and dated by all signatories hereto.

3.18  The Parties hereby agree that all of the Parties are required to cooperate closely with each other in order to achieve implementation of Transaction Code: 8885276-723. The Parties hereby warrant that they will cooperate closely with each other in good faith to implement herein Transaction Code: 8885276-723.

3.19  That Transaction Code: 8885276-723 shall become legally binding and have full effect when all signatories hereto have executed this document. Transaction Code: 8885276-723 and Amendments thereto may be executed in two or more counterparts, each of which shall be construed as

Initials:                    SKLYL:                    LB:

This Confidential Private Enterprise Document in its Entirety, and Total Contents,
Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the
Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the
"Economic Espionage Act"

an original, and all of which shall constitute one and the same
Instrument. One copy of Transaction Code: 8885276-723 shall be lodged
with SKLYL's Financial, Banking, Accounting or Legal Institution. In
the event that any clause hereof shall be held to be invalid under the
proper law hereof the remainder of Transaction Code: 8885276-723 shall
remain valid and binding provided that the result thereof shall be to give
substantial and proper effect to the terms hereof as executed by the
Parties originally. Transaction Code: 8885276-723 shall be binding on the
Parties hereto, their heirs, successors, and assigns by any course of events
or legal action.

3.20    The Parties hereby agree that either Party without written consent of Both
Parties may not assign Transaction Code: 8885276-723.

3.21    The Parties warrant and attest to each other with full responsibility that
they are fully authorized and competent to enter into Transaction Code:
8885276-723 and are bound by its terms.

3.22    With respect to each transaction, SKLYL hereto specifically warrants and
agrees that he will disclose to LB the name, address, telephone number,
and facsimile numbers of all agents, intermediaries, and persons who may
have made referrals (if any). SKLYL shall make all such disclosures
immediately upon execution of Transaction Code: 8885276-723.
Disclosure of the names, addresses, telephone numbers, and facsimile
numbers of persons or firms who are intermediaries or referrals but who
are not executing Transaction Code: 8885276-723 must be disclosed to LB
who shall have knowledge of such persons or firms.

3.23    Neither Party shall be liable for any failure under the "Force Majeure
Clause" as stated in the International Chamber of Commerce (ICC) Paris,
rules and regulations, which are deemed to be incorporated herein.

3.24    The Parties agree that Transaction Code: 8885276-723 is valid for Five (5)
years and is automatically renewable for an additional Five (5) years
unless terminated under the terms hereof. No Party hereto shall, after the
initial or extended term of Transaction Code: 8885276-723, use to his own
advantage, or to the advantage of any other person, corporation, firm,
partnership, trust, or representative of any government agency or

Initials:                SKLYL:                LB:

This Confidential Private Enterprise Document in its Entirety, and Total Contents, Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

ministry, any identifying or other information gained for or from the files or business of the other.

3.25    In the event that SKLYL wishes to terminate Transaction Code: 8885276-723 and to withdraw the Assets due to no return of above market rates as indicated by US Department of Treasury, SKLYL may provide Thirty (30) London, UK business days written notice to LB after initial Thirty (30) London, UK business days but within initial Ninety (90) London, UK business days, during the first year, and within Ninety (90) to Sixty (60) London, UK, business days period, prior to the following yearly anniversaries. LB shall have the same right to termination by similar written notice. In all cases Termination of Transaction Code: 8885276-723, can only occur upon the completion of trading cycles, and satisfactory conclusion of any other contractual obligations that had been entered by LB as a result of Transaction Code: 8885276-723.

3.26    All notices or other communications required or permitted to be given hereunder shall be in writing and shall be delivered personally or mailed, certified mail, return receipt requested, postage prepaid, or in a manner to insure mail delivery and evidence thereof, to the Party's last known valid address.

Article 4. Non-disclosure, Non-circumvention, Good Faith.

The Parties hereto undertake to protect each other regarding standard nondisclosure and non-circumvention practices and to act at all times in good faith towards each other herein and in any subsequent transactions, extensions, additions or otherwise, as well as to maintain a "Total Silence".

4.1    Proprietary Interest.      Each Party to this Transaction Code: 8885276-723 agrees to respect the proprietary interests and rights (hereinafter "the Property") of the other Party. Property shall include locations, communication numbers, documents, contracts, relationships and any and all relevant information relating to the herein Transaction Code: 8885276-723 including but not limited to the Banking relationships. Each and every associated Principal party introduced by one Party to another or by the other shall remain the exclusive Property of the introducing Party. Confidential information is the property and the business secret of a Party, notwithstanding disclosure by a Party or by a non-party source. Each Party

Initials:              SKLYL:              LB:

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 60 of 71   Page ID
#:6104
Case 2:08-cv-03336-DDP-AGR   Document 1-4   Filed 05/20/2008   Page 12 of 21

This Confidential Private Enterprise Document in its Entirety, and Total Contents,
Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the
Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the
"Economic Espionage Act"

hereto specifically warrants that he will keep all confidential information
secret, and that any disclosure of the same shall be subject to written
approval by the affected Party. Each Party hereto specifically warrants and
agrees that he will not solicit or accept, in any manner, any business from
sources or through contacts that are made known to him by another Party
without the express written permission of the Party who made the source
or contact known or available. Unauthorized disclosure of confidential
information that is the property of LB, or other Party hereto, is a breach of
this Transaction Code: 8885276-723 and shall subject the Party in breach to
liquidated damages and to arbitration proceedings, upon proper notice
hereunder, to determine additional damages and remedies.

4.2   The Parties hereto agree that they will protect and not disclose, either
directly or indirectly, any confidential information disclosed by a Party
without the prior express, written consent of the affected Party. For the
purposes of this Transaction Code: 8885276-723, *"confidential
information"* shall include, but is not limited to, any and all disclosures
made by each to the other concerning:

(a) Facts;
(b) Figures;
(c) Contracts;
(d) Contacts;
(e) Names of available or potential buyers and sellers;
(f) Names of agents of available or potential buyers and sellers;
(g) Descriptions;
(h) Address;
(i) Employees name;
(j) Telephone numbers; telex numbers, facsimile numbers, or other
means of access thereto;
(k) Bank information, codes, or references;
(l) Names of ministry or government officials;
(m) Corporations, firms, partnerships, trusts, groups, brokers,
individuals;
(m) Information relating, directly or indirectly, to trade secrets, patents,
or copyrights; and
(n) Any such other information, either directly or indirectly, introduced
or made known by a Party hereto that the disclosing Party asserts is
confidential information.

Initials:          SKLYL:              LB:



This Confidential Private Enterprise Document in its Entirety, and Total Contents, Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

Any confidential information that comes into the possession of a Party from a non-party source which a Party to this Transaction Code: 8885276-723 asserts is confidential information or which falls within the definitions contained in *subparagraphs: 4.2 (a) through 4.2 (n)* is protected by this Transaction Code: 8885276-723 as if disclosed by the affected Party. The Party whose confidential information is disclosed is the "affected Party".

4.3   Each Party hereto agrees that he will not circumvent, either directly or indirectly, commissions, fees, remuneration, considerations, or benefits due to any other Party hereto. Each Party hereto agrees not to circumvent a Party regardless of whether any transaction is completed. For the purposes of this Transaction Code: 8885276-723, "circumvent" is defined as any act, contact, or negotiation with a person or entity that is made possible by the disclosure of confidential information which results in:
a) The damage or loss of "good will";
b) The loss of an opportunity or opportunities for business;
c) The loss of business; or
d) The loss or diminution of commissions, fees, remuneration, considerations, or benefits due to a Party hereto. The Parties shall not plan and act to avoid responsibilities and to circumvent obligations and commitments. This shall include any plan that is conceived, made, developed, formed, and executed and/or initiated and/or any action, inaction, activity, communication, document, agreement, and matter or process or means of interference that may relate, either directly or indirectly, to the provision of services and/or the performance of duties and/or the exercise of responsibilities and/or the full compliance with obligations and commitments in accordance with this Transaction Code: 8885276-723. Any plan, action, inaction, activity, communication, document, agreement, and matter or process or means of interference that may relate, either directly or indirectly, to this Transaction Code: 8885276-723, is prohibited if such is a cause or source of avoidance and/or circumvention, and it makes no difference that a Party or representative person or representative entity is an instrument an/or cause. Thus, included is "anything" by a Party or representative of a Party that may affect, either directly or indirectly, the exercise and/or fulfillment of responsibilities and/or complete compliance with obligations and commitments under this Transaction Code: 8885276-723, and/or any effort and/or action and/or inaction

Initials:                    SKLYL:                    LB:



This Confidential Private Enterprise Document in its Entirety, and Total Contents, including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

and/or activity and/or transaction and/or contract allowed and/or planned and/or pursued and/or made under and/or in relation to or in connection with this Transaction Code: 8885276-723. Also, the foregoing phrase: "Any effort to dislodge LB from his position or relationship is a breach of this Transaction Code: 8885276-723 and shall subject the Party in breach to liquidated damages and to arbitration proceedings, upon notice by LB, to determine additional damages and remedies.

4.4   This Transaction Code: 8885276-723 shall be binding on the Parties hereto and their:
a) Corporations, firms, partnerships, trusts, and groups and their employees, agents, and representatives;
b) Principals;
c) Associates;
d) Employees;
e) Representatives;
f) Agents;
g) Consultants;
h) Subsidiary or associated corporations, firms, partnerships, trusts, and groups and their employees, agents, and representatives; and
i) Heirs, executors, successors, and assigns of the Parties.

4.5   The non-disclosure as set forth herein shall not apply as to information necessary to be disclosed to Accountants, Bankers, Solicitors, Lawyers, Governmental Agencies, Trustees, Directors, Brokers, Shareholders, or those to whom partial or full disclosure has previously been disclosed, as set forth and to be attached hereto and made apart hereof as if done verbatim. If disclosure is made to anyone in this section, they shall be also bound by the terms set forth herein.

4.6   In the event of a violation or breach of this Transaction Code: 8885276-723, each Party may report such violation or breach to the appropriate United States investigative and enforcement agencies for action. In addition, each Party may report such violation or breach to the appropriate investigative, enforcement and other authorities in the country or countries where the alleged offending Party is domiciled,

Initials:          SKLY          LB: 

This Confidential Private Enterprise Document in Its Entirety, and Total Contents, Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

resides, or is conducting business, as well as to the appropriate international investigative and enforcement authorities.

4.7   Any controversy or claim arising out of or relating to this Transaction Code: 8885276-723 regarding herein Article 4 Non-disclosures and / or non-circumvention, Good Faith which is not settled by the Parties, shall be subject to binding arbitration. In the event of a dispute, the following terms shall apply:

a)   Written notice, which shall include an explicit statement of the dispute, shall be given to the other Party by the aggrieved Party Upon breach of this Transaction Code: 8885276-723 by a Party, such Party in breach, may be granted a period of three (3) Washington, DC, U.S.A., business days in which to cure the breach by complying fully with the provision of this Transaction Code: 8885276-723 that has been breached. If the breach is fully cured within the three (3) Washington, DC, U.S.A., business days, an election may be made by LB to continue with performance and to waive liquidated damages. Exercise of the option to permit cure of a breach does not waive the right of LB in the absence of an express written waiver in the event that an election is made not to proceed or in the event of a later breach.

b)   If the dispute is not settled within thirty (30) Washington, DC, U.S.A., business days from service of the notice, then the aggrieved Party shall initiate arbitration of the dispute immediately, in accordance with the terms and procedures for arbitration of international disputes by the American Arbitration Association. The place of arbitration shall be Washington, DC. U.S.A. Failure of a Party to appear, without a showing of good cause, shall entitle for other Party to an award.

c)   The decision and award made by the arbitrators shall include the award of all costs and expenses including attorney's fees and expenses, incurred by a Party as a result of the dispute, which shall be paid to the successful Party by the unsuccessful Party within thirty (30) Washington, DC, U.S.A., business days after the award. In the event of circumvention, either directly or indirectly, or other dispute arising out of or relating to this Transaction Code: 8885276-723, the aggrieved Party shall be entitled to monetary compensation equal to the maximum fee, commission, remuneration, consideration, or benefit he would have received from such

Initials:                    SKLY:                    LB:

This Confidential Private Enterprise Document in its Entirety, and Total Contents, Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

transaction, and such other damages and relief as may be deemed appropriate. The sum allowed and relief granted shall be paid and become effective within the thirty (30) Washington, DC, U.S.A., business days period required for the payment of fees and expenses, unless otherwise specified in the arbitration decision. In addition, the aggrieved Party shall be entitled to damages, plus interest, and to such other relief as may be deemed appropriate. In the event of delay in complying with the order or decision or refusal or failure to comply, the aggrieved Party may file an enforcement action in the Courts of the District of Columbia, USA to compel compliance

## Article 5. Law, Jurisdiction and Arbitration

5.1   The Law of England and Wales shall be the proper Law of Transaction Code: 8885276-723 with exception of Article d that is to be governing by the Laws of District Columbia, USA.

5.2   In the event of the need for the arbitration, the Arbitration under Transaction Code: 8885276-723 shall be as follows with the exception as stated under Article 4 above:

5.2.1 Each Party shall nominate a person and such persons shall in turn nominate a third person, which shall be the Chairman of the arbitration procedure. In the event of a failure to agree on such third person, aforesaid person shall be appointed by the President for the time being of the Law Society of England and Wales.

5.. .  The decision of the said Arbitration shall be final and binding on the Parties hereto.

## Article 6.   Distribution of Benefits

The Parties acknowledge and agree that the intended result of Transaction Code: 8885276-723, activities shall be to generate net benefits for the Parties, which they shall distribute at LB's Instructions between them, in the percentage set out and agreed to herein. The net benefits shall be defined, as Gross revenue to the herein Parties, less Professional Services fees (if any). The net benefits will be divided into two parts and will be paid at LB's Instructions on a per occurrence basis as follows.

Initials;          SKLYL:          LB:

> This Confidential Private Enterprise Document in its Entirety, and Total Contents, including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

6.1   One part in amount of one half of net benefits shall be to the account of, or as directed by SKLYL, unless otherwise is stated in Schedule(s) "A" ("A1", "A2", "A3", "A*", if any).

6.2   One part in amount of one half of Net Benefits shall be to the account of, or as directed by LB, unless otherwise is stated in Schedule(s) "A" ("A1", "A2", "A3", "A*", if any).

6.3   All costs of the Assets Exchange, fees, all and any bank charges related directly to Transaction Code: 8885276-723 will be borne equally by LB and SKLYL, unless otherwise is stated in Schedule(s) "A" ("A1", "A2", "A3", "A*", if any).

In witness whereof, since the Parties and Signatories have a complete and unambiguous understandings of all of the words, terms, provision and conditions Transaction Code: 8885276-723, and since the Parties and Signatories have determined on their own initiative and independent decision to accept and execute Transaction Code: 8885276-723, without any improper and undue influence, either real or perceived, and / or without any kind of improper external pressure or threat or compulsion or duress or coercion, either real or perceived, and in light of their complete and unambiguous understanding of Transaction Code: 8885276-723, EACH SIGNATORY HEREUNTO SETS HIS OR HER HAND IN PLACE, ON THE DATE SET FORTH BELOW.

or and on behalf of LB:

_____                    _____
Boris Lopatin                                        Witness:

For and on behalf of SKLYL:

_____                    _____
So Kevin and / or Lu Yan Lucy               Witness:

Initials:               SKLYL:                    LB:

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 66 of 71   Page ID
#:6110
Case 2:08-cv-03336-DDP-AGR   Document 1-4   Filed 05/20/2008   Page 18 of 21

This Confidential Private Enterprise Document in its Entirety, and Total Contents,
including Transactions, Procedures, with all Facets and Counterparts Thereof, are the
Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the
"Economic Espionage Act"

Schedule "A"
## TO PRIVATE ENTERPRISE ASSETS EXCHANGE BENEFITS
PARTICIPATION AGREEMENT
Between Land Base, LLC And So Kevin and / or Lu Yan Lucy

As of this date of 11th day of April, 2005, the amount of Assets that So Kevin
and / or Lu Yan Lucy, SKLYL, of Private Enterprise Asset Exchange
Management Benefits Participation Agreement, under Transaction Code:
8885276-723, is ready to place for the Administration under Land Base, LLC,
LB, an approximate Principal Amount of Thirty Million dollars
($30,000,000.00), the description, and other pertinent data of the Assets are
attached hereto.

SCA.1 The hereto Placement under Schedule "A" shall be known under
Transaction Code: 8885276-723 (5AP) and shall be administrated under the
auspices of "5th Avenue Partners Ltd.", Ten Dominion Street, London, EC2M
2EE, United Kingdom.

SCA.2 Under Transaction Code: 8885276-723 (5AP), SKLYL shall receive the
benefits in amount of Fifty Percent (50%) of the *"Benefits generated due to
each trading Cycle Activities up to the trading amount of Four Times of the
approximate Principal Amount of Thirty Million dollars ($30,000,000.00)".
"Benefits generated due to each trading Cycle Activities up to the trading
amount of Four Times of the approximate Principal Amount of Thirty Million
dollars ($30,000,000.00)" shall be defined as the differential between Gross Amount
of Funds that is utilized to Purchase Fixed Income Instruments (Assets) in
which the Issuers shall have and maintain a current credit rating of Single "A+" or
better as evidenced by Standard and Poor's, or equivalent such as Moody's and the re-
sale of hereto-purchased Fixed Income Instruments (Assets) in which the Issuers
shall have and maintain a current credit rating of Single "A+" or better as evidenced
by Standard and Poor's, or equivalent such as Moody's. Benefits to SKLYL at the
direction of LB shall be paid without any deductions of Bank fees, other
Professional Services fees and Intermediaries (Introducing Parties) fees (if any).
Benefits to 5th Avenue Partners Ltd. shall be the rest of the revenue benefits
generated and paid with deductions of Bank fees, Professional Services fees and
Intermediaries (Introducing Parties) fees (if any). The benefits shall be paid at the
5th Avenue Partners Ltd. Instructions on a per occurrence basis to the accounts
as instructed by the 5th Avenue Partners Ltd.*

Initials:            SKLYL:                 LB:

"This Confidential Private Enterprise Document in its Entirety, and Total Contents, including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

SCA.3 Under Transaction Code: 8885276-723 (5AP), 5th Avenue Partners Ltd shall issue an Irrevocable Bank Instruction to govern SKLYL's segregated account that is to be lodged with the Bank as stated hereto (Exhibit "HSA").

SCA.4 Under Transaction Code: 8885276-723 (5AP), LB shall report to SKLYL once a month, all monthly *Trading Cycle Activities* of 5th Avenue Partners Ltd, regarding *Purchase of Fixed Income Instruments (Assets)* in which the *Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's and the re-sale of hereto-purchased Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's. Trading Cycle Activities* shall be within lodged Irrevocable Bank Instruction that is governing SKLYL's account. Such report shall be delivered by LB to SKLYL via Secured electronic means, and shall include the pertinent data, not limited to the Name of the Issuer, ISN of each Instrument, e.t.c.

In witness whereof, since the Parties and Signatories have a complete and unambiguous understandings of all of the words, terms, provision and conditions Transaction Code: 8885276-723 (5AP), and since the Parties and Signatories have determined on their own initiative and independent decision to accept and execute Transaction Code: 8885276-723 (5AP), without any improper and undue influence, either real or perceived, and / or without any kind of improper external pressure or threat or compulsion or duress or coercion, either real or perceived, and in light of their complete and unambiguous understanding of Transaction Code: 8885276-723 (5AP), EACH SIGNATORY HEREUNTO SETS HIS OR HER HAND IN PLACE, ON THE DATE SET FORTH BELOW:

For and on behalf of LB:

_____          _____
Boris Lopatin                       Witness:

For and on behalf of SKLYL:

_____          _____
So Kevin and / or Lu Yan Lucy       Witness:

Initials:            SKLYL:            LB:

This Confidential Private Enterprise Document in its Entirety, and Total Contents, including Transactions, Procedures, with all Facets and Counterparts Thereof, are the Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the "Economic Espionage Act"

# Exhibit "HSA"
## Irrevocable Bank Instruction

To: Bank Officer

We, 5th Avenue Partners Ltd, on behalf of our client, So Kevin and / or Lu Yan Lucy hereby irrevocably instruct you to proceed with the following:

1. Purchase or cause to be purchased Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's, as directed by undersigned, 5th Avenue Partners Ltd.  Execute the re-sale of such herein described Fixed Income Instruments (Assets) as directed by undersigned, 5th Avenue Partners Ltd.  Benefits due to the trade shall be disbursed as directed by undersigned, 5th Avenue Partners Ltd, as stated below:

So Kevin and / or Lu Yan Lucy shall receive an amount of Fifty Percent (50%) of the "Benefits generated due to each trading Cycle Activities up to the trading amount of Four Times of the approximate Principal Amount of Thirty Million dollars ($30,000,000.00)".  "Benefits generated due to each trading Cycle Activities up to the trading amount of Four Times of the approximate Principal Amount of Thirty Million dollars ($30,000,000.00)" shall be defined as the differential between Gross Amount of Funds that is utilized to Purchase Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's and the re-sale of hereto-purchased Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's.  Benefits to So Kevin and / or Lu Yan Lucy shall be paid without any deductions of Bank fees, other Professional Services fees and Intermediaries (Introducing Parties) fees (if any). Benefits to 5th Avenue Partners Ltd. shall be the rest of the revenue benefits generated and paid with deductions of Bank fees, Professional Services fees and Intermediaries (Introducing Parties) fees (if any). The benefits shall be paid at the 5th Avenue Partners Ltd. Instructions to the accounts as instructed by the 5th Avenue Partners Ltd.

2. Upon receipt and clearance of the payments for the Fixed Income Instruments (Assets), into this segregated account please proceed with further Purchase of Fixed Income Instruments (Assets) in which the Issuers shall have and maintain a current credit rating of Single "A+" or better as evidenced by Standard and Poor's, or equivalent such as Moody's, as directed by undersigned, 5th Avenue Partners Ltd. Also execute the further re-sale of such hereto described Fixed Income Instruments (Assets) as directed by undersigned, 5th Avenue Partners Ltd. Distribution of revenue benefits shall be as above stated.

Initials:                    SKLYL:                    LB:

Case 2:08-cv-03336-DDP-AGR   Document 344   Filed 05/07/10   Page 69 of 71   Page ID
#:6113
Case 2:08-cv-03336-DDP-AGR   Document 1-4   Filed 05/20/2008   Page 21 of 21

"This Confidential Private Enterprise Document in its Entirety, and Total Contents,
Including Transactions, Procedures, with all Facets and Counterparts Thereof, are the
Exclusive Properties of Land Base, LLC, and are "Trade Secrets", Protected Under the
"Economic Espionage Act"

3. Please ensure that all transactions with regard to Fixed Income Instruments (Assets) and/or corporate bonds shall be settled and cleared through DTC or Euroclear, or Clearstream.

4. All counterparties to each Transaction shall be solely comprised of major licensed financial institutions, professional broker-dealers, or other recognized and approved institutional entities.

5. Under no circumstances shall Principal amount of funds deposited in the amount of Thirty Million United States Dollars ($30,000,000.00) be permitted to be withdrawn, unless as stated hereto and for the payment of wire charges (if any).

6. All bank fees excluding wire charges shall be paid by undersigned, 5th Avenue Partners Ltd.

7. These Irrevocable Instructions shall be valid until the Instruction of Termination and Closing of said account. At the time of Account closure please remit the Principal amount of funds in the amount of Thirty Million United States Dollars ($30,000,000.00) with deduction of wire charges (if any) to the following Bank account:

Bank:            The Hongkong and Shanghai Banking Corporation Limited

Address:         Convention Plaza HSBC Premier Centre
                 Shop No. 103 1/F Shopping Arcade Convention Plaza 1 Harbour Road,
                 Wan Chai, Hong Kong
Fax:             2824 1380
Telex:           73205 hsbc hk
Account No:      625-019930
Account Name:    Mr. So Kevin and Ms. Lu Yan Lucy

Sincerely,


5th Avenue Partners Ltd


CC: So Kevin and Lu Yan Lucy

                                    Receipt Acknowledgement:


                                    (Bank)


Initials:              SKLYL              LB:

**EXHIBIT D**

22/04 2005 12:48 FAX 0207 765 5699   HSBC MIDMARKET

Fax - 00349712270I;

# HSBC

Date 22Apr2005 Time 12:58
Page 1

**ELECTRONIC PAYMENTS DETAILS**

Product          58947825 FEN DEPOSIT 5TH AVENUE PARTNERS LTD

Process date 20Apr2005
Payment reference number 7C2004MO2007383

Payment type          Inward payment
Value date            20Apr2005
Amount                USD 30,000,000.00Cr

Senders reference     S103

Beneficiary customer  5TH AVENUE PARTNERS LTD SO KEVIN LU
                      YAN LUCY

Ordering customer     MR SO KEVIN AND MS LU YAN LUCY

Statement details     ADVICE CONFIRMS
                      7C2004MO2007383
                      MR SO KEVIN AND MS

Payment details       REF SO KEVIN LU YAN LUCY MESSAGE
                      FOR AC 625 019930 DEP 0001

4/54