# EXHIBIT 4

1  Haig Kalbian (Admitted *pro hac vice*)
   Mary M. Baker (Admitted *pro hac vice*)
2  D. Michelle Douglas (CA Bar No. 190248)
   Aaron Knights (Admitted *pro hac vice*)
3  KALBIAN HAGERTY L.L.P.
   The Brawner Building
4  888 17th Street, N.W., Suite 1000
   Washington, D.C. 20006
5  Phone:    (202) 223-5600
   Facsimile: (202) 223-6625
6  E-mail:    hkalbian@kalbianhagerty.com
              mmb@kalbianhagerty.com
7              mdouglas@kalbianhagerty.com
              aknights@ kalbianhagerty.com
8
   Louis R. Miller, Esq. (CA Bar No. 54141)
9  Alexander Frid, Esq. (CA Bar No. 216800)
   Miller Barondess, LLP
10 1999 Avenue of the Stars, Suite 1000
   Los Angeles, California 90067
11 Phone:    (310) 552-4400
   Facsimile: (310) 552-8400
12 E-mail:    smiller@millerbarondess.com
              sfrid@millerbarondess.com
13
   *Counsel for Plaintiff Kevin So*
14
          UNITED STATES DISTRICT COURT FOR THE
15           CENTRAL DISTRICT OF CALIFORNIA
              (Western Division-Los Angeles)
16

17 KEVIN SO,                    )   CASE NO. CV 08-3336 DDP (AGRx)
                                )
18              Plaintiff,      )   **DECLARATION OF DANIEL RAY**
                                )
19                              )
                                )
20 v.                           )
                                )
21 LAND BASE, LLC, et al.       )
                                )
22              Defendants.     )
                                )
23 ──────────────────────────   )

24

25      Daniel W. Ray, pursuant to 28 U.S.C. § 1746, being duly sworn, deposes and says

26 as follows:

27

28
                                  1
                      Declaration of Gordon L. Klein

1.     My name is Daniel W. Ray.  I am over twenty-one (21) years of age.  I have personal knowledge of and am competent to testify as to the facts stated herein, which are true and accurate.

2.     Attached as Exhibit 4 to the Plaintiff Kevin So's Opposition to Defendants Mira Meltzer, Kevin Kondas, KM & Associates International, LLC, KB&M Projects International, LLC and CTL Projects International, LLC's Motion for Summary Judgment is a true and accurate copy of the April 6, 2010 expert report I prepared for Plaintiff in this case, which supplemented an April 5, 2010 expert report I prepared by updating my billing rates.

3.     I understand that my role as an expert in preparing this report is to assist the court with both understanding the evidence and determining the facts in issue.  Based upon my knowledge and experience, and the analysis I performed as of the date of the Report, which included my review of materials provided to me in this case, the opinions expressed in this Report are accurate reflections of my own professional opinions, which are true and correct.

4.     I have endeavored in my report to be accurate and complete, and have addressed matters that I regard as being material to the opinions expressed, including assumptions that I have made, the bases for my opinions, and the methods that I have employed in reaching those opinions.

5.     I will immediately notify, in writing, the attorney for the Plaintiff if, for any reason, I consider that my existing report requires any correction or qualification; and, if the correction or qualification is significant, will prepare a supplementary report to the extent permitted by the applicable rules of the court.

6.     I have used my best efforts in preparing my report.

7.     I have made the inquiries that I believe are appropriate, and, to the best of my knowledge and belief, no matters of significance that I would regard as relevant have been withheld from the court.

Declaration of Daniel W. Ray

8.     I declare, under penalty of perjury, that the foregoing is true and correct.

**FURTHER AFFIANT SAYETH NOT.**

Executed on this ___27___ day of May, 2010, in ~~San Francisco~~, CA

Daniel W. Ray

Declaration of Daniel W. Ray



HEMMING
MORSE, INC.
CERTIFIED PUBLIC ACCOUNTANTS
LITIGATION & FORENSIC CONSULTANTS

160 Spear Street
Suite 1900
San Francisco, CA  94105

Tel: 415.836.4000
Fax: 415.777.2062
www.hemming.com

# Kevin So

# v.

# Land Base, LLC
# Et al

# Expert Report of Daniel W. Ray
# April 5, 2010

## I.      Introduction

The purpose of this report, and accompanying exhibits, is to offer opinions regarding the purported "investment" made by Plaintiff Kevin So, and the subsequent losses he thereafter sustained.

It is my understanding that discovery in this matter is ongoing, with deposition testimony still being taken and documents being produced. Therefore, it is anticipated that amendments or additions to this report and the accompanying exhibits may be required as a result of additional discovery.

I anticipate using at trial selected exhibits attached to this report, documents reviewed in connection with their preparation, enhanced graphic versions of selected exhibits included in this report (i.e., redrafted to improve their presentation quality) and additional graphics illustrating concepts described in this report. I also anticipate using exhibits that are not yet created due to the fact that discovery is still ongoing.

## II.     Summary of Expert Qualifications

I am a Certified Public Accountant ("CPA"), licensed in the State of California and a Director of Hemming Morse, Inc, CPA's, Litigation and Forensic Consultants ("HMI"). I am also a Certified Fraud Examiner ("CFE"), a Certified Insolvency and Restructuring Advisor ("CIRA") and I am Certified in Financial Forensics ("CFF"). I have provided forensic accounting and litigation services since 1990. Prior to that time, I served as a Special Agent with the FBI from 1982 – 1990. My expert qualifications, including my testimony in the last four years and the publications I have authored in the last ten years, are described in **Exhibit A** hereto.

I am a member of the California Society of Certified Public Accountants ("CalCPA"). I currently serve as the in-coming Chair of its statewide Litigation Services Steering Committee. This Steering Committee provides guidance to more than 800 members of its Operating Sections: (1) Fraud, (2) Economic Damages, (3) Business Valuation and (4) Family Law. I previously served as the Chair of the CalCPA's statewide Fraud Section. I am also an adjunct professor at Golden Gate University, and teach a graduate level course on fraud investigations.

I am also a member of the Association of Certified Fraud Examiners ("ACFE"), the Northern California Fraud Investigators Association ("NCFIA"), and American Institute of Certified Public Accountants ("AICPA"). I lecture frequently for these and other organizations on a variety of topics including fraud and forensic accounting.

## III.    Assignment

I have been retained by the law firms of Kalbian Hagerty LLP and Miller Barondess LLP on behalf of Kevin So.

---

In connection with this engagement, I was asked to review and analyze a large volume of material including pleadings, deposition transcripts, banking records, securities statements, agreements, various expert reports, court transcripts, correspondence, and other related items. The purpose was to render an opinion about, among other things, whether the investment opportunity touted by the defendants were consistent with the characteristics of a fraud scheme. Additional opinions pertain to the flow of funds between the various parties and whether the promised returns were ever achieved; the apparent roles played and benefits received by the various defendants; and whether funds distributed back to Mr. So represented gains achieved from trading activities, as claimed, or were simply a return of a portion of his own investment.

## IV.    Evidence Considered

In undertaking my assignment, I have considered information from a variety of sources, each of which is of a type that is reasonably relied upon by experts in my field. Those sources are identified in **Exhibit B** to this report. I have also relied upon my own professional judgment and expertise gathered during the approximate 28 years in which I have conducted financial investigations.

## V.    Background / Overview

According to the Second Amended Complaint, as well as a variety of other documents, the plaintiff in this matter, Mr. Kevin So, is a wealthy businessman who is a citizen of the People's Republic of China and resident of Hong Kong. He is the Chief Executive Officer of Guangdong Arche Cosmetics Co., Ltd. ("Archie"). Some of the defendants, and other non-defendant parties, purported to be in the financial investment business and claimed to possess extraordinary investment skills. Other defendants, and non-defendant parties, facilitated the investment scheme by serving to introduce Mr. So to other defendants. The parties that helped facilitate the introduction, and ultimately the investment by Mr. So, received significant compensation for their efforts. The investment scheme promoted by the defendants, and into which Mr. So invested and lost the majority of his $30 million investment, was referred to as the Private Placement Project.

Defendant Land Base is a Nevada limited liability company that claims to be in the business of private placement projects administered by asset exchanges. The principals of Land Base include defendants Boris Lopatin and Charles Woodhead. Mr. Lopatin is also the owner or principal in an entity called Boris Lopatin & Associates.

Defendant KM & Associates International ("KM&A") is an entity that was used to promote and solicit the investment from Mr. So, and possibly others. The owners, principals, or agents of this entity include Kevin Kondas, Mira Meltzer, Keith Millar, and Boris Lopatin (through his dba Boris Lopatin & Associates).

Defendant KB& M Projects International ("KB&M") is another entity that was used to recruit investors to participate in private placement projects administrated by asset exchanges. The owners or principals of this entity are purported to be Boris Lopatin

(through his dba Boris Lopatin & Associates) and KM&A. Other entities or individuals that helped recruit Mr. So, and possibly other investors, include CTL Projects International ("CTL"), Lucy Lu, and Henry Yang.

Defendant Univest Financial Services ("Univest") is a California company that purportedly invested $10 million in the same investment promotion, the "Private Placement Project", as Mr. So. The purported owners, principals or agents of Univest include Craig Christensen, Jeffrey Moritz, and Laurence Gerschel. The financial records reviewed to date reveal that $10 million was transferred into an account at HSBC London, account #58947825 on or about December 21, 2004. This $10 million was returned to Univest on April 21, 2005, which is one day following the $30 million investment by Mr. So. According to the Complaint, and supported by new releases by the Securities and Exchange Commission ("SEC), some of the current principals in Univest (specifically Jeffrey Moritz and Laurence Gerschel) were previously involved with a "Prime Bank" fraud scheme utilizing an entity called The Trust Group. On January 8, 1998, the SEC announced that the U.S. District Court in the Eastern District of Kentucky entered final judgments of permanent injunction against The Trust Group, Ltd., Mr. Moritz, Mr. Gerschel, and others.

The last remaining defendant is an individual named Suilkee Kim, aka Cameron Kim. According to the Complaint, Mr. Kim has business relationships with both Mr. Lopatin and non-defendant Michael Brown. He purportedly maintained financial records and bank accounts for both Mr. Lopatin and Mr. Brown.

A critical player in this apparent investment scheme is non-defendant Michael Brown. Mr. Brown is a British citizen and supposed bond trader. As will be discussed further in this report, Mr. Brown was cryptically referred to as "The Trader" in various communications and meeting leading up to the ultimate "investment" of $30 million by Mr. So. Mr. Brown is the owner or principal in a number of entities including, but not limited to, 5th Avenue Partners Limited ("5AP"); 5th Avenue Partners GmbH; Devonshire Capital Limited; and Lamberhurst Developments Ltd. Based on the analysis performed and documents reviewed to date, Mr. Brown was touted by the scheme participants, and later claimed, as having extraordinary skills at obtaining enormously large profits on bond trades. He and the other promoters claimed that the investments would be completely risk free. The various accounts into which investment funds were received were apparently opened and controlled by Mr. Brown at HSBC London. In addition, various trading accounts were opened at several brokerage houses by Mr. Brown under the names of his various entities. As will be discussed later in this report, a preliminary analysis of these various HSBC accounts and brokerage accounts reveals the movement of millions of investor dollars, with very little trading activity. The analysis performed to date actually reveals trading losses. The analysis also reflects millions of dollars paid to various payees for the benefit of Mr. Brown, and approximately $4.2 million disbursed to defendant Land Base. Funds were thereafter disbursed by Land Base to many of the other defendants.

Included in the documents reviewed to date are various expert reports and court transcripts relating to lawsuit filed in the High Court of Justice, Queens Bench Division

in London by HSBC Bank PLC. The defendants in this matter included Michael Brown,
his various entities and other parties. As will be discussed later, there were several expert
reports submitted in connection with the prior matter in London. These expert reports
were considered in connection with this report. In the London litigation, The British
court entered a judgment against Mr. Brown and his companies. Additionally, Mr.
Brown was convicted of perjury relating to false statement made by him to gain access to
funds fraudulently obtained by him from Mr. So and others. According to an analysis of
the court transcripts, the trial was held at the Crown Court at Southwark in London, and
was titled Regina v. Michael Brown (No. 2007 7282). In November 2008, the jury found
Michael Brown guilty of two counts of theft; furnishing false information; and perverting
the course of public justice. He was formally arrested in this case in April 2007 while he
was serving a two year prison sentence for perjury and passport offenses related to a
private prosecution against him by HSBC bank (discussed later in this report). After the
expiration of his sentence, he was granted bail of £250,000. However, in July 2008, it
was discovered that Mr. Brown had fled the country.

### The Solicitation of, and investment by, Mr. So

According to the Complaint, Mr. So was first introduced to Henry Yang (who is the
husband of Lucy Lu) in or around April 2004. Shortly thereafter, Mr. Yang began to
recruit Mr. So as an investor in a Prime Bank Fraud scheme similar to the Private
Placement Project scheme in which he ultimately became a victim.[1] In order to entice
Mr. So to consider this "investment" opportunity, Mr. Yang made a number of
representations about the nature of the program, the anticipated returns, and the safety of
the investment. The representations made by Mr. Yang cited in the Complaint include[2]:

- These were high level investment opportunities of which very few people were aware;

- These involved the purchase and resale of highly rated financial instruments;

- Only seven traders in the world were qualified to execute such transactions and that
  Mr. Yang knew six of them;

- The investment would yield very high returns;

- Investors would face absolutely no risk; and

- A portion of the substantial profits would be directed to various humanitarian and
  charitable projects.

---

[1]  The Complaint directed the reader to the website of the SEC that describes the characteristics of Prime Bank
Frauds. The web address is www.sec.gov/divisions/enforce/primebank/howtheywork.shtml. The description of
these types of fraud schemes is consistent with my personal experience investigating frauds. It is also consistent with
the characteristics of the investment scheme promoted by the defendants.

[2]  Similar types of extraordinary representations were made to Mr. So by other parties.

In their continued efforts to entice Mr. So to invest funds, Mr. Yang arranged for his wife,
Lucy Lu to travel to China to meet with Mr. So to continue the discussion of an
investment opportunity. According to the complaint, in mid November 2004, Mr. Yang
informed Mr. So that he located a suitable investment opportunity, and that it would be
necessary for Mr. So to transfer his investment ($30 million) to an account at HSBC
Hong Kong. Mr. So was then informed that the "Investment Program Manager" required
that Ms. Lu's name be added as a signer on the HSBC Hong Kong account. The
Complaint indicates that this representation is incorrect. These funds were transferred on
or about December 4, 2004.

According to the Complaint, in January 2005 Mr. Yang introduced Ms. Lu to Keith
Millar, who in turn, introduced her to many of the other defendants. Included in the
documents reviewed to date are a series of e-mail correspondence between Mr. Millar and
Ms. Lu. These e-mails and correspondence are from January 27, 2005 through April 6,
2005. In these communications, Mr. Millar make a wide variety of representations about
this purported investment program. These representations include, but are not limited to,
the following:

- "...there are delays at present due to a large number of clients, with the bigger
  amounts getting priority." (email 1/28/05)

- "This program will compound your profits week after week in order to get you up to
  $100M quickly." (email 2/16/05)

- "...you will enter into a "narrow margin" trade which is trading A+ up to AAA grade
  bank paper – your funds will be leveraged x 4 so you will make typically 4 pts per
  trade. You will start a two trade per week and accelerate rapidly towards a larger
  number." (email 2/18/05)

- "This is a golden opportunity to place your funds with people who are at the highest
  level of the bank trading business..." (email 2/18/05)

- "Remember this is a non-depletion account so at any point in time there will either be
  your $30M (plus accumulated profits) or bank securities of a higher face value (all A+
  or better rated up to AAA) in the account." (email 2/17/05)

- "Your money will be 100% safe in this environment." (email 2/17/05)

- "Your funds will not be at any risk, and HSBC are fully aware of, and stand behind,
  this arrangement." (email 3/17/05)

It should be noted that in these various communications, Ms. Lu refers to the funds being
provided by Mr. So as a joint investment. She consistently uses phrases such as "our $30
million." She also represented that Mr. So was unavailable to travel to London to
participate in a meeting with the other defendants. It is unclear whether this
representation is correct. It is also noted that it does not appear that Mr. So was copied on
any of these email communications between Mr. Millar and Ms. Lu.

Following a meeting in London with Ms. Lu (acting purportedly on behalf of Mr. So) and a number of the other defendants, a series of documents purporting to memorialize the investment were executed by Ms. So and other defendants. These agreements, which are included as exhibits to the Complaint, are as follows:

| Name | Parties | Miscellaneous |
|------|---------|---------------|
| Irrevocable Bank Instruction | 5th Avenue Partners Ltd and Jackie Arnul with HSBC | The letter, executed April 11, 2005, was supposedly sent to HSBC by 5AP on behalf of their client Kevin So and Lucy Lu.<br><br>The letter states that the "benefits" to Mr. So were to be paid without any deductions of bank fees, professional service fees, and intermediary (introducing party) fees.[3]<br><br>The letter states that the funds are to be placed into a segregated account.<br><br>It states "Under no circumstances shall Principal amount of funds deposited in the amount of thirty million United States Dollars ($30,000,000.00) be permitted to be withdrawn…"<br><br>It further states that the funds were to be sent to account #58947833 at HSBC.[4] |
| Private Assets Exchange Benefits Participation Agreement | Land Base, LLC (represented by Boris Lopatin) and Kevin So and Lucy Lu. | This document assigns this investment as Transaction Code 8885276-723<br><br>The document references another agreement called, "Private Enterprise Assets Administration |

---

[3]  It should be noted that it appears that approximately $700,000 was paid by Mr. So to KM& Associates for what appears to be finder's fees.

[4]  It should be noted that the funds were not deposited into this designated account, but rather into account #58947825. It appears that this particular account was previously established by Mr. Brown to receive the funds from Univest.

| | | |
|---|---|---|
| | | Benefit Participation Agreement." |
| | | It also references a "Private Placement Opportunities" |
| | | The agreement states that the parties are to maintain *"Total Silence."* (emphasis added) |
| | | This agreement states that the "net benefits" (defined as gross revenue less professional service fees) shall be divided into two parts. One half will be sent to Mr. So / Ms. Lu and the other half to Land Base. It states that all costs of Asset Exchange will be borne equally. |
| | | This agreement was executed by Ms. Lu and Mr. Lopatin. It was not executed by Mr. So. |
| Irrevocable Project Funding Agreement | Kevin So and Lucy Lu and KM & Associates International LLC | This agreement is dated March 24, 2005 |
| | | This agreement states that Mr. So / Ms. Lu are to receive 80% of the "Project Funds" and that KM&A is to receive 20%. |
| | | The agreement states that information in the agreement "…is never to be revealed to any third party whatsoever…" |
| | | It further states that the parties to the agreement undertake a promise and commitment to maintain _**"Total Silence" regarding the aforementioned, in all regards, and without compromise.**_ (emphasis not added) |
| | | This was executed by Ms. Lu and not by Mr. So. |

Following the execution of these agreements, funds totaling $30 million were transferred by Mr. So to an account at HSBC London. However, the funds were diverted and thereafter deposited into an incorrect account. The funds were deposited, apparently at the direction of Mr. Brown, into an account that had previously been established for Univest (acct. #58947825) rather than the account that was to be set up for Mr. So's investment (acct. #58947833). Almost immediately after Mr. So transferred his $30 million, there was a payment of $10 million to Univest. This represented a return of funds previously provided by them.

Following the transfer of $30 million by Mr. So to HSBC London, $10 million was almost immediately used to repay Univest as described above. Thereafter, an analysis of the various accounts controlled by Mr. Brown at HSBC London reveals that investor funds were moved between accounts and the funds were not segregated as promised. Furthermore, they were not "non-depleting" as described by the defendants.[5] On or about October 14, 2005, Mr. Brown and 5AP were served with a Freezing Injunction and Tracing Order, and Search and Seizure Order that was obtained by HSBC.[6]

Attached as **Exhibit 1** is a schedule prepared by HMI that reflects the funds paid out and received by Mr. So. This summary schedule begins with his $30 million "investment" on April 20, 2005, and concludes with a wire transfer made by Mr. So to KM&A on September 12, 2005 for supposed "finder's fees". This schedule reflects a net loss to Mr. So of $27,495,171. Attached as **Exhibit 2** is a schedule containing the same information as exhibit 1, but sorted by payee / payor details. This schedule reveals that Mr. So made four payments to KM&A from his personal account at HSBC Hong Kong. These payments purported to represent a 20% share of the "profits" earned by Mr. So. The total amount of these wire transfers is $631,028. At the bottom of this schedule is a summary of payments made to KM&A from Land Base. These four payments total $694,099. It appears that these payments also purport to represent fees "earned" by KM&A for the "profits" generated by trading activity on the funds provided by Mr. So. It therefore appears that KM&A was paid twice (by Mr. So and Land Base) for their 20% share of purported "profits" which appear to be illusory.

## VIII.   Summary of Opinions

As indicated earlier in this report, discovery in this matter is still ongoing. Deposition testimony is in the process of being obtained and additional documents are being produced. The opinions expressed herein are based upon my review and analysis of the documents and testimony available to date. The opinions are as follows:

---

[5] A more detailed discussion of the movement of funds in the various HSBC accounts will be discussed later in this report.

[6] The source of this information is a report filed in the High Court by David Stern with the firm Vantis Numerica LLP. This report is dated November 4, 2005.

Expert Report of Daniel W. Ray, CPA, CFE, CIRA, CFE                                                Page 8

1.  The so-called "Private Placement Project" is consistent with, and has the characteristics of, an investor fraud scheme and does not appear to be a legitimate investment program;

2.  Each of the defendants played a critical role in the carrying out of this apparent fraud scheme, and all benefitted from their involvement at the expense of Mr. So;

3.  There appears to be little or no trading activity taking place, with no significant profits being achieved; and

4.  The limited amount of funds that were returned to Mr. So appears to simply be a return of money previously provided by Mr. So.

## VII.  Detailed Discussion of Opinions

*1.  The so-called "Private Placement Project" is consistent with, and has the characteristics of, an investor fraud scheme and does not appear to be a legitimate investment program*

The critical elements to a finding or determination of fraud include: (1) material misrepresentation; (2) knowingly made; (3) relied upon by someone; (4) to their detriment or economic harm. It is clearly understood that the determination as to whether someone did or did not commit fraud rests with the trier of fact, be it judge or jury. Based upon my skill, training, and experience, and based upon the analysis performed to date, it appears that the so-called "Private Placement Project" has the indicia or characteristics of an investor fraud scheme.

The previously identified SEC website identified the characteristics of a particular type of fraud scheme, that being Prime Bank frauds. Included as **Exhibit 3** are pages downloaded from this SEC website. The warning signs that a particular investment being promoted may be a fraud scheme include:

1.  **The promise of excessive guaranteed returns.** In this particular case, the promoters of the Private Placement Project claimed to Mr. So that his $30 million would very quickly grow to $100 million, and that he would then be moved to a different program that would generate even greater returns. The communication from Mr. Millar to Ms. Lu dated February 15, 2005 promised a return of 8% per week;

2.  **The use of fictitious financial instruments.** In this particular case, the defendants touted an investment program that defied economic realities. They promoted a completely risk free investment yielding enormous returns on the purchase and immediate resale of bonds. They further claim that HSBC would stand behind this program, and that the investments were regulated by "...the Financial Services Authority (FSA) which is the regulatory body authorised by the British Government and the Bank of England to oversee and control this business." (Miller communication to Lu dated 2/17/05);

3. **The requirement of extreme secrecy.** In this particular case, two of the agreements executed by Ms. Lu (on behalf of Mr. So) had this express requirement. The document called the Private Assets Exchange Benefits Participation Agreement contained a clause that required the parties to maintain *"Total Silence."* This document also contains a header at the top of each page stating that the contents of the agreement are "Trade Secrets protected under the Economic Espionage Act."

   Another agreement called the Irrevocable Project Funding Agreement states that the parties to the agreement undertake a promise and commitment to maintain *"Total Silence" regarding the aforementioned, in all regards, and without compromise."* (emphasis not added).

   On one occasion Mr. So sent an email communication to a bank officer at HSBC London in an effort to verify and confirm representations being made by the defendants (email dated on or about April 19, 2005). This communication by Mr. So drew quick and condemning responses from both Mr. Brown and Mr. Lopatin. On April 19, 2005, Mr. Brown sent an email to Ms. Lu stating, "Regretably, your banks communication to mine was unacceptable. I, therefore, have asked HSBC London to cease communication."[7] On April 19, 2005, Mr. Lopatin sent an email to Ms. Lu stating, "...any communication has to be cleared with us ahead of time in order to proceed successfully and to avoid unnecessary delays and possible problems with the bank due to unauthorized communications." In an email from Mr. Millar to Ms. So dated February 20, 2005, he states, "Unfortunately, it will not be possible to send you an advance copy of the contract. Due to the confidential nature of this business, the completed contract is held by the trader's lawyer, with a copy lodged at the securities house."

4. **The claim of exclusive opportunity.** In this particular case there are numerous representations about the exclusive nature of the very special opportunity. Mr. Yang represented to Mr. So that these were high level investment opportunities of which very few people were aware. He also represented that there were only seven traders in the world qualified to execute such transactions and that Mr. Yang knew six of them. The various communications from Mr. Millar to Ms. Lu claimed that this was a very unique opportunity made available only to very wealthy individuals. He stated that he would make his best effort to get Mr. So into the program.

5. **Claims of inordinate complexity.** In this particular case, the top secret agreements put forth by the defendants made reference to secret Transaction Code numbers, and the agreements made little or no sense. The purported trading program supposedly involved the purchase and immediate reselling of highly rated bonds generating enormous profits with no risk involved.

---

[7]  It should be noted that Mr. So addressed the email to the purported bank officer at HSBC London that supposedly had knowledge of the investment program. Mr. So was seeking confirmation that his funds were placed in a segregated and non-depleting account. He was asking HSBC London to confirm the account details to another bank officer as HSBC Hong Kong.

The "red flags' or indicia of fraud identified by the SEC in its website is consistent with my very extensive experience in the investigation of fraud. My experience includes both criminal and civil fraud investigations as both a Special Agent with the FBI and as a forensic accountant in private practice.

The documents reviewed and analysis performed to date clearly reflects conduct consistent with a fraud scheme. There appears to be numerous material misrepresentations that were knowingly being made to Mr. So to induce him to "invest" $30 million. He relied upon those representations and has suffered a significant economic loss.

This opinion is also consistent with the findings by the High Court against Mr. Brown. It is also consistent with expert reports filed with the High Court in London in connection with the HSBC litigation. Most notably is an expert report prepared by Dr. M. Desmond Fitzgerald dated September 7, 2006. At the time of his report, he was the Chairman and Chief Executive of Equitable House Investments Limited. He also holds a PhD in Finance, and a B.A. in Economics. Mr. Fitzgerald is very critical of the claimed investment strategy and promises made by Mr. Brown and the other defendants. He states in paragraph 2.17.4, "The concept that there is a unique and secret and highly profitable low risk trading strategy in bank issues rated A+ or better, and with full issue details available on Bloomberg and Reuters, is simply, in my view, a fantasy." He further concludes in paragraph 7.1, "In my view, the type of trading strategy put forward by 5th Avenue and Mr. Brown, with its forecast enormous almost riskless profits, was completely fantastical and unrealistic." In his report he calculated that the returns touted by the defendants would equate to an annual return of 416% (simple interest) and annual compounded return of 5908%. Included as **Exhibit 4** is a recalculation by HMI of these rates of return based on the representations made by the defendants.

2. *Each of the defendants played a critical role in the carrying out of this apparent fraud scheme, and all benefitted from their involvement at the expense of Mr. So.*

As with many fraud schemes having multiple participants, each has an important role to play. As stated in opinion number one, this Private Placement Project has the characteristics of a fraud scheme (with the ultimate determination to be made by the trier of fact.) In this particular litigation, there are a significant number of defendants both individuals and entities. Based on the analysis conducted to date, the roles played by the defendants are as follows:

| Defendant(s) | Role |
|---|---|
| Henry Yang and Lucy Lu | They appear to be the individuals that first identified Mr. So as a possible investor in this fraud scheme. It is unclear at the present time whether Mr. Yang and Ms. Lu had this particular apparent fraud scheme in mind (Private Placement Project) when they commence their discussions with Mr. So. It is also unclear at this time how much compensation was paid to these defendants. The Complaint indicates that they received approximately $800,000. |

| | |
|---|---|
| | Ms. Lu was the person that executed the contracts with both Land Base and KM&A supposedly on behalf of Mr. So. She also had numerous communications, and participated in face to face meetings, with the other defendants. It does not appear, based on the review of the documents, that many of these communications were shared with Mr. So. |
| Keith Millar, Kevin Kondas, Mira Meltzer, KM&A, KB&M, CTL Projects | These defendants appear to also play the role of introducing Mr. So (exclusively or almost exclusively through Ms. Lu) to this particular Private Placement Project. There were numerous communications between Mr. Millar and Ms. Lu in which the representations about the program, the outrageous returns, the guaranteed safety, and required secrecy were touted.   For their roles as the finder, they appear to have received at least $1.2 million. These funds appear to have been paid to them by both Land Base (from Mr. So's funds) and separately by wire transfers from Mr. So. |
| Boris Lopatin, Land Base, Boris Lopatin & Associates, Charles Woodhead, Suilkee Kim | Boris Lopatin, and non-defendant Michael Brown and his various entites, are the architects and main drivers in this apparent fraud scheme. Numerous apparent misrepresentations were made by Mr. Lopatin and Mr. Brown. Mr. Lopatin was a party to the agreements that purported to summarize the investments and the flow of "profits" to be generated. His company Land Base received approximately $4.2 million of investor funds from the various accounts maintained by Mr. Brown at HSBC London. Mr. Woodhead is purportedly a principal in Land Base.

The role of Mr. Kim was to serve as a business partner or agent to both Mr. Lopatin and non-defendant Michael Brown. He purportedly maintained financial records and bank accounts for both Mr. Lopatin and Mr. Brown. |
| Univest, Jeffrey Moritz, Laurence Gerschel | These defendants have the appearance of simply being another investor in the apparent fraud scheme. They provided $10 million in connection with the Private Placement Project in December 2004. What distinguishes Univest from the other investors in this apparent scheme (namely Mr. So, Mr. Charles Edwards, and Mr. Robert Mann) is that Univest appears to be the only "investor" that received all of their money back plus more than $500,000 o additional funds. It appears that at least $10 million of the funds disbursed to Univest came from funds provided by Mr. So.

As previously discussed in this report, it appears that two of the principals of Univest (Mr. Moritz and Mr. Gerschel) were the subject of an SEC action and judgment in connection with a previous entity called The Trust Group Limited. A news release by |

> the SEC announced that final judgments of permanent injunction were entered against The Trust Group, Mr. Moritz and Mr. Gerschel. It is my understanding that additional discovery relating to this prior matter is ongoing. It certainly raises a "red flag" when the same individuals that were previously found to be operating a Prime Bank fraud scheme later become an unwitting victim in what appears to be another Prime Bank fraud scheme.

3. ***There appears to be little or no trading activity taking place, with no significant profits being achieved.***

Included in the documents produced to date is information relating to the funds received into and out of various accounts maintained at HSBC London. It appears that these accounts were opened and controlled by Mr. Brown through his various entities. In addition to wire transfer documents detailing incoming and outgoing wire transfers involving these HSBC London accounts, there were also brokerage statements from Refco Securities and Archer Daniels Midland ("ADM"). These records were found as exhibits to expert reports submitted to the High Court in London.

An analysis of the HSBC London wire transfer records, along with the review and analysis of expert report submitted in the London litigation, it appears that at least seven different accounts were established and were operating in connection with this investment scheme. The account information is as follows:

| Acct. # | Name or Beneficiary | Currency | Miscellaneous |
|---------|---------------------|----------|---------------|
| 58947825 | Univest | USD | The $10 million paid by Univest was received into this account. The funds paid by Mr. So were also deposited here, and the repayment to Univest was made from this account.<br><br>Approximately $1.6 million was paid to Land Base from funds deposited into this account. |
| 59099344 | Edwards | USD | The $10 million paid by Charles Edwards was received into this account. Subsequent cash transfers by Mr. Edwards were also received into this account.<br><br>Approximately $2 million was paid to Land Base from funds deposited into this account. |

| 59102753 | Mann | USD | The $5 million paid by Robert Mann was received into this account.<br><br>Approximately $600,000 was paid to Land Base from funds deposited into this account.<br><br>Other disbursements from this account include approximately $1.2 million to the Liberal Democrat Campaign Fund, and $4.1 million to Aircraft Title Services. |
|---|---|---|---|
| 58947833 | Mr. So / Ms. Lu | Pounds | The $30 million payment by Mr. So was not deposited into this account as anticipated.<br><br>Numerous transfers were thereafter made from this account to an account under the name Devonshire at HSBC. |
| 51499734 | Devonshire | Euro | This account received funds from money provided by Mr. So. |
| 41357875 | Lamberhurst | Euro | This account received funds from money provided by Mr. So. |

Included as **Exhibit 5** is a spreadsheet prepared by HMI summarizing, in date order and in native currency, the deposits and disbursements involving the above-identified accounts. The source information for this spreadsheet was primarily wire transfer records (Bates SO-0025482 – 25547). Included as **Exhibit 6** is a spreadsheet with the same information as exhibit 5, only the amounts have been converted from native currency to USD. Included as **Exhibit 7** is a spreadsheet with the same information as exhibit 6 (amounts converted to USD), but sorted by Payor / Payee.

As indicated above, there was a transfer of approximately $10 million into to an account under the name of 5th Avenue Partners Limited at Refco Securities (acct. #11022787). Included as **Exhibit 8** is a spreadsheet prepared by HMI summarizing the Refco Securities brokerage statements. (Bates SO-0002367-2643) This schedule reveals that after the deposit of the $10 million in February 2005, the funds remained in the account, with no trading activity taking place, until approximately $7.2 million was transferred out of the account in May 2005. The remaining approximate $2.8 million was transferred out of the Refco account in October 2005 into an account maintained by Mr. Brown in Spain.

As reflected in exhibit 5, there was a transfer of $10 million into an account opened under the name of 5th Avenue Partners Limited at ADM (acct. #770365). The $10 million

transfer of funds into this account occurred in April 2005. Included as **Exhibit 9** is a spreadsheet prepared by HMI summarizing the ADM securities statements. (Bates SO-0002578 – 2582) An expert report prepared by David Stern with Vantis Numerica LLP and filed with the High Court, included a summary of the activities as ADM. (Bates SO-0002549 – 0002558) The schedule prepared by Mr. Stern was relied upon in the preparation of exhibit 9. Exhibit 8 is a summary schedule, in date order and in native currency, of the activity and ending monthly balances for the period April 2005 – October 2005. Included as **Exhibit 10** is a schedule with the same information as exhibit 9, only the currency has been converted to USD. Included as **Exhibit 11** is a schedule with the same information as exhibit 10 (all currency amounts in USD) only sorted by and subtotaled by source / recipient.

An analysis of the above-described exhibits reveals that while there appeared to have been some trading activity taking place, a net loss was sustained. The summary chart found in exhibit 11 reveals that there was a "Net Profit from Trades" of $8,979,205, and there was a "Net Loss from Trades" of $14,133,459. It appears then that the overall result after netting out these two amounts is a "Net Loss from Trades" of $5,154,254.

The referenced report prepared by Mr. Stern for the High Court included various summary schedules apparently prepared by Mr. Brown and documents apparently produced by Mr. Brown. These schedules and documents purportedly demonstrate that actual bond trading activity was undertaken by Mr. Brown, and that significant profits were being realized. The schedule and documents focus on 10 supposed trades that yielded profits of approximately $13.4 million. (Bates SO-0002559) A subsequent schedule purports to show how these trading "profits" were then distributed to the various investors. (Bates SO-0002560). These summary schedules were supposedly supported by transaction documents that include internally prepared "Completed Trade Tickets" and screen prints from a Bloomberg trading system[8]. (Bates SO-0002590 – 2618). These schedules and purported supporting documents appear to be complete fiction and illusory.

The expert report prepared and submitted by Mr. Fitzgerald specifically analyzes these purported securities trades in Section 3 to his report. He states that these rates of return could not possibly be achieved, and he believes that the documents contain irreconcilable discrepancies. He points out that three of the identified purported trades (trades 1, 3 and 4) could not possible be correct because the announcement date of the bond issue occurred after the supposed trade date. He concludes, "Thus the trade tickets could not possibly be correct…" (paragraph 3.6)

The subject of the integrity of the trade slips presented by Mr. Brown as evidence of actual trades was subject of a ruling by the High Court in London. According to the court transcripts, the trade tickets are a collection of screen prints from the Bloomberg site that appear to show back to back sales. It was agreed between the Crown, (the prosecution),

---

[8]   It should be noted that the internally prepared documents of 5th Avenue Partners Limited titled "Completed Trade Ticket" are remarkably similar to a criminal fraud matter which I investigated. In that earlier matter, an individual named Steve Wymer was supposedly buying and selling Treasury Notes on behalf of his municipal clients. His supposed supporting documents were trade slips with the handwritten notation ("C/T"). He represented that the "C/T" stood for confirmed trade. It was later revealed that "C/T" stood for contrived trade.

Expert Report of Daniel W. Ray, CPA, CFE, CIRA, CFE                                    Page 15

and the defense that these documents "do not represent real trades." Presented as evidence of this, Mr. Connolly from Bloomberg testified and explained that the Bloomberg website has two areas. In one location you actually enter transactions, and another where you can do "what if calculations." According to Mr. Connolly, "when you use the site on a "what if" basis, you calculate what the result would be if the theoretical trade was actually entered into. It does not in any way represent that in fact the trade actually has been done. The prosecution stated "things that looked like trades were being created so that they could be passed off if necessary to show genuine trading."

In the High Court proceedings, Mr. Brown submitted a sworn affidavit claiming that the trade tickets and Bloomberg screen prints that he submitted represented real trades. As a result of that false representation, HSBC London pursued a private prosecution against Mr. Brown for perjury. Mr. Brown pleaded guilty at a hearing held July 2006 in relation to those documents. He also pleaded guilty to having told lies in order to obtain a passport which allowed him to flee. In September 2006, he was sentenced to two years imprisonment for perjury and passport offenses.

**4.** ***The limited amount of funds that were returned to Mr. So appears to simply be a return of money previously provided by Mr. So.***

An analysis of the schedules included with this report clearly demonstrate that funds distributed back to Mr. So from his $30 million investment did not come from proceeds generated from securities trading activities. The schedule included as exhibit 1 identifies the amounts and dates on which funds were disbursed back to Mr. So. There were four such payments. It is very clear that any payments of funds back to Mr. So (represented to be profits) did not come from trading profits.

## VIII.   Compensation

My hourly rate for this assignment is $430.

Dated: April 6, 2010            By: _____
                                    Daniel W. Ray, CPA, CFF, CIRA, CFE

# Table of Contents

Curriculum Vitae of Daniel W. Ray                                                                    Exh A

List of Documents Considered                                                                          Exh B

Analysis of Funds Paid and Received by Mr. So, sorted by Date                                         Exh 1

Analysis of Funds Paid and Received by Mr. So, sorted by Payee/Payor                                  Exh 2

SEC: How Prime Bank Frauds Work, and Warnings to All Investors About Bogus                            Exh 3
 "Prime Bank" and Other Banking-Related Investment Schemes

Calculation of Promised Returns                                                                       Exh 4

Analysis of Account Activity at HSCB London, sorted by Date in Native Currency                        Exh 5

Analysis of Account Activity at HSCB London, sorted by Date in USD                                    Exh 6

Analysis of Account Activity at HSCB London, sorted by Payee/Payor in USD                             Exh 7

Analysis of Refco Acct #11022787                                                                      Exh 8

Analysis of ADM Acct #770365, sorted by Date in Native Currency                                       Exh 9

Analysis of ADM Acct #770365, sorted by Date, converted to USD                                       Exh 10

Analysis of ADM Acct #770365, sorted by Source/Recipient                                            Exh 11

# Exhibit A



# HEMMING MORSE, INC.

CERTIFIED PUBLIC ACCOUNTANTS
LITIGATION & FORENSIC CONSULTANTS

CURRICULUM VITAE

www.hemming.com

# Daniel W. Ray, CPA, CFE, CFF

## Employment & Education

| | |
|---|---|
| 1995 – Present | **Hemming Morse, Inc.** *Certified Public Accountants* *Litigation and Forensic Consultants* Director, Litigation and Forensic Consulting Services Group, 1997-present Manager, Litigation Services Group, 1995-1996 |
| 1990 – 1995 | **Neilson Elggren Durkin & Co.** Manager, 1992-1995 Supervisor, 1990-1992 |
| 1982 – 1990 | **Federal Bureau of Investigation** Special Agent |
| 1978 – 1982 | **Maryland Center for Public Broadcasting** Senior Accountant |
| 1978 | **Towson State University, Baltimore, Maryland** B.S. Business Administration |

## Professional & Service Affiliations

- Certified Public Accountant, State of California
- Certified Fraud Examiner
- Certified in Financial Forensics
- Certified Insolvency and Restructuring Advisor
- California Society of Certified Public Accountants
  - Vice-Chair of Litigation Steering Committee
  - Past Chair of Fraud Operating Committee
- American Institute of Certified Public Accountants
  - Member of Fraud Task Force of the BVFLS Committee

- Association of Certified Fraud Examiners
  - Former Faculty Member
- Society of Former Special Agents of the FBI
- Northern California Fraud Investigators Association
- JHI International
  - Region of the America's Executive Committee Member
  - Chair of Litigation Special Interest Group

**San Francisco Office**
160 Spear Street
Suite 1900
San Francisco, CA 94105
Tel: 415.836.4000
Fax: 415.777.2062



CURRICULUM VITAE

www.hemming.com

# HEMMING MORSE, INC.

CERTIFIED PUBLIC ACCOUNTANTS
LITIGATION & FORENSIC CONSULTANTS

## Daniel W. Ray, CPA, CFE, CFF

### Seminar Instruction

- *"The Foreign Corrupt Practices Act: An Independent Monitor's Perspective"*
  The PIPEs Conference 2009, Las Vegas, NV
  November 2009

- *"Foreign Corrupt Practices Act and Other Ethical Considerations"*
  The China Deal 2010 Conference, San Francisco, CA
  October 2009

- *"The Role of the Monitor in Federal Cases"*
  CalCPA Litigation Steering Committee, Los Angeles, CA
  August 2009

- *"Introduction to Financial Forensic Accounting"*
  Golden Gate University, San Francisco, CA,
  April 2009, August 2009

- *"Crisis Management - What to do when Fraud is Detected"*
  Governance Conference, Bellevue, WA, October 2008

- *"An Independent Monitor's Perspective on Compliance with the Foreign Corrupt Practices Act"*
  California Society of CPAs and Bar Association of San Francisco, San Francisco, CA, January 2008

- *"Fraud Prevention Techniques for Treasurers"*
  Government Finance Officers Association Annual Conference, Anaheim, CA, June 2007

- *"Large International Frauds - Landmines and Opportunities"*
  JHI International Conference, Auckland, New Zealand, November 2006

- *"Litigation and Forensic Accounting"*
  California Attorney General's Office, False Claims Section, Sonoma, CA, October 2006

- *"Finding Fraud On and Off the Books"*
  Jones Day, San Francisco, CA, March 2006

- *"Analysis of Fraud Schemes and Investigative Techniques"*
  Silicon Valley Forum Workshop, California Society of CPAs, Sunnyvale, CA, February 2006

- *"Finding Fraud On and Off the Books"*
  The Barristers Club, San Francisco, CA, January 2006

- *"The Role of the Accountant in Litigation"*
  JHI International Conference, Buenos Aires, Argentina, November 2005

- *"Tips and Tools For Analyzing Damage Claims"*
  CSAA Insurance Training Conference, San Ramon, CA, October 2005

- *"Forensic Accounting and Litigation Support Overview"*
  JHI Region of the America's Conference, Mexico City, Mexico, June 2005

- *"Practical Applications for Identifying and Investigating Financial Fraud"*
  California Education Foundation, Long Beach and San Francisco, CA, June 2005

- *"Analysis of Fraud Schemes and Investigative Techniques"*
  CPE Extravaganza, California Society of CPAs San Francisco, CA, June 2005

**San Francisco Office**
160 Spear Street
Suite 1900
San Francisco, CA 94105
Tel: 415.836.4000
Fax: 415.777.2062



# HEMMING MORSE, INC.
CERTIFIED PUBLIC ACCOUNTANTS
LITIGATION & FORENSIC CONSULTANTS

CURRICULUM VITAE

www.hemming.com

# Daniel W. Ray, CPA, CFE, CFF

## Seminar Instruction continued

- *"Fraud Basics: Follow the Money"*
  Northern California Fraud Investigators Association,
  16th Annual Training Seminar, Monterey, CA,
  March 2005

- *"Nah, That Couldn't Happen to Us! Rooting
  Out Fraud"*
  California Society of Municipal Finance Officers
  Burlingame, CA, February 2005

- *"The Role of the Accountant in Litigation"*
  Tennessee Society of CPAs Conference on Business
  Valuation, Fraud and Litigation, Nashville, TN,
  December 2004

- *"Following the Cash"*
  Institute of Management Accountants
  Walnut Creek, CA, November 2004

- *"Following the Cash"*
  Association of Certified Fraud Examiners
  Bodega Bay, CA, October 2004

- *"Advanced Analysis of Fraud Schemes and
  Investigative Techniques"*
  AICPA Conference on Fraud and Litigation Services
  Phoenix, AZ, September 2004

- *"Following the Cash"*
  Northern California East Bay Chapter of Institute of
  Internal Auditors, Walnut Creek, CA, September 2004

- *"Following the Cash"*
  15th Annual Fraud Conference, Association of
  Certified Fraud Examiners, Las Vegas, NV, July 2004

- *"Investigative Techniques and Fraud Schemes"*
  California Society of CPAs, San Francisco, CA,
  May 2004

- *"Fraud Basics - Follow the Money"*
  Environmental Crime Scene Investigation: Tools and
  Techniques, California Environmental Protection
  Agency, Sacramento, CA, April 2003

- *"Follow the Money"*
  AICPA National Conference on Advanced Litigation
  Services and Fraud, Las Vegas, NV, November 2002

- *"Reality Checks aka - Don't Let Them Spin Straw
  into Gold"*
  California Society of CPAs, San Francisco, CA,
  October 2002

- *"Fraud Basics: Follow the Money"*
  Environmental Crime Scene Investigation: Tools and
  Techniques, California Environmental Protection
  Agency, Riverside, CA, September 2002

- *"Financial Investigations - Tips and Suggestions"*
  California Attorney General's Office, Sacramento, CA,
  September 2002

- *"Follow the Money"*
  CPA Criminal Investigations In-Service, Federal
  Bureau
  of Investigation, Las Vegas, NV, 2002

- *"Chasing Assets"*
  Advanced Business Litigation Institute, California CPA
  Education Foundation, Monterey, CA, May 2002

**San Francisco Office**
160 Spear Street
Suite 1900
San Francisco, CA 94105
Tel: 415.836.4000
Fax: 415.777.2062





HEMMING
MORSE, INC.

CERTIFIED PUBLIC ACCOUNTANTS
LITIGATION & FORENSIC CONSULTANTS

CURRICULUM VITAE

www.hemming.com

# Daniel W. Ray, CPA, CFE, CFF



## Seminar Instruction continued

- *"For-Profit Fraud in a Not-For-Profit Environment"*
  Not-For-Profit Organizations Conference, California
  CPA Education Foundation, San Francisco and
  Los Angeles, CA, May 2002

- *"Investigative Techniques and Fraud Schemes"*
  AICPA National Conference on Fraud and Advanced
  Litigation Services, Dallas, TX, October 2001

- *"Forensic Accounting and Fraud Investigations"*
  American Women's Society of Certified Public
  Accountants, San Francisco, CA, June 2000

- *"Case Study - Orinda Moraga Disposal Company's
  Smelly Financials"*
  Institute of Internal Auditors, Oakland, CA,
  February 2000

- *"Case Study - Orinda Moraga Disposal Company's
  Smelly Financials"*
  California Society of Municipal Finance Officers
  Berkeley, CA, January 2000

- *"Case Study - Orinda Moraga Disposal Company's
  Smelly Financials"*
  Association of Certified Fraud Examiners - Bay Area
  Chapter, Walnut Creek, CA, December 1999

- *"Cooking the Books: A Major Fraud in the East Bay"*
  Institute of Management Accountants, Walnut Creek,
  CA, September 1999

- *"Case Study - Orinda Moraga Disposal Company's
  Smelly Financials"*
  East Bay Chapter of the Litigation Consulting Services
  Committee for the California Society of CPAs
  Walnut Creek, CA, February 1999

- *"Health Care Fraud - Nose Job or Con Job?"*
  Litigation Consulting Services Committee for the
  California Society of CPAs, San Francisco, CA,
  July 1998

- *"Litigation Consulting and Forensic Accounting"*
  Jeffreys Henry International Region of the Americas
  Conference, Phoenix, AZ, June 1998

- *"Fraud Schemes and Other Current Issues"*
  California Education Foundation 1998 Fraud
  Conference, Los Angeles and San Francisco, CA,
  June 1998

- *"Finding the Hidden Truth in Financial Records"*
  Northern California Fraud Investigators Association
  Monterey, CA, April 1998

- *"Litigation Services and Forensic Accounting"*
  Jeffreys Henry International, Barcelona, Spain,
  November 1997

- *"Investigative Techniques for the Investigative
  Accountant"*
  Advanced Litigation Forum, San Diego, CA,
  April 1997

- *"Forensic Accounting/Fraud Investigation Techniques"*
  San Francisco District Attorney's Office
  San Francisco, CA, October 1996

- *"Forensic Accounting/Fraud Investigation Techniques"*
  CPA-Law Forum, San Francisco, CA, June 1996

- *"Forensic Accounting Techniques"*
  California Society of CPAs, San Francisco, CA,
  May 1996

page 4 of 10

**San Francisco Office**
160 Spear Street
Suite 1900
San Francisco, CA 94105
Tel: 415.836.4000
Fax: 415.777.2062



# HEMMING MORSE, INC.

CERTIFIED PUBLIC ACCOUNTANTS
LITIGATION & FORENSIC CONSULTANTS



# Daniel W. Ray, CPA, CFE, CFF

## Seminar Instruction continued

- *"The Case of the Creative Developer"*
  Association of Certified Fraud Examiners, Central
  Regional Fraud Conference, Chicago, IL, May 1996

- *"Nose Job or Con Job?" and "Forensic Accounting/
  Fraud Investigation Techniques"*
  Association of Certified Fraud Examiners, Investigators
  Fraud Conference, Las Vegas, NV, March 1996

- *"Putting the Case Together-Documentation and
  Court Exhibits"*
  San Francisco Bay Area Chapter Association of
  Certified Fraud Examiners, Bodega Bay, CA,
  November 1995

- *"Forensic Accounting Techniques"*
  CAMICO and the Association of Certified Fraud
  Examiners, CPA Fraud Symposium, Sacramento, CA,
  October 1995

- *"Forensic Investigative Techniques"*
  Housing and Urban Development Office of Inspector
  General for Audit, Carmel, CA, September 1995

- *"Forensic Accounting Techniques"*
  Institute of Internal Auditors, Mt. Diablo Chapter
  Concord, CA, May 1995

- *"Shady Real Estate Nets Fraudsters a Conviction"*
  and *"Current Issues in Banking Fraud"*
  Panel Discussion
  Association of Certified Fraud Examiners, Advanced
  Financial Institution Fraud Conference, New York, NY,
  April 1995

- *"Accounting Record Review"*
  Northern California Fraud Investigators Association
  Monterey, CA, April 1994

- *"Bankruptcy Fraud"*
  Bay Area Chapter of Certified Fraud Examiners
  Walnut Creek, CA, 1994

- *"White Collar Crimes and Accountants' Liability"*
  Southern California College, Costa Mesa, CA, 1993

- *"Investigating and Prosecuting Savings and
  Loan Failures"*
  Federal Bureau of Investigation, FBI Academy
  Quantico, VA, 1990

**San Francisco Office**
160 Spear Street
Suite 1900
San Francisco, CA 94105
Tel: 415.836.4000
Fax: 415.777.2062



HEMMING
MORSE, INC.

CERTIFIED PUBLIC ACCOUNTANTS
LITIGATION & FORENSIC CONSULTANTS

CURRICULUM VITAE

www.hemming.com

# Daniel W. Ray, CPA, CFE, CFF

## Publications

- *"Corporate Investigations: It Was the Best of Times, It Was the Worst of Times"*
  The Witness Chair, published by the California Society of CPAs, Spring 2004, Issue 34

- *"Fraud: Incorporating Forensic Procedures in an Audit Environment"*
  The Witness Chair, published by the California Society of CPAs, Summer 2003, Issue 31 (Co-authored)

- *"Fraud: New Goodwill and Intangible Assets Standard"*
  The Witness Chair, published by the California Society of CPAs, Spring 2002, Issue 26

- *"Fraud: Breach of Fiduciary Duty"*
  The Witness Chair, published by the California Society of CPAs, Fall 2001, Issue 24

- *"Fraud: Alter Ego Analysis"*
  The Witness Chair, published by the California Society of CPAs, Summer 2001, Issue 23

- *"Fraud: Stock Market Manipulation"*
  The Witness Chair, published by the California Society of CPAs, Fall 2000, Issue 20

- *"Fraud"*
  The Witness Chair, published by the California Society of CPAs, Summer 2000, Issue 19

- *The CPA's Handbook of Fraud and Commercial Crime Prevention,* published by the AICPA, 2000 (Contributing author)

- *"Forensic Accounting - What Is It?"*
  Jeffreys Henry International Asia Pacific Newsletter, August 1998

## News Media Contacts

- KPIX Channel 5 News, San Francisco, California
  Investigative report by Anna Werner on Fremont Football League; interviewed regarding forensic accounting procedures, February 2006

- KRON Channel 4 News, San Francisco, California
  Interviewed regarding forensic accounting; aired May 30, 2002

- ABC News Productions
  Interviewed for Court TV production; October 19, 2001

- NBC Nightly News
  Special report by Jim Avila – *"Following the Terrorists' Money Trail,"* September 24, 2001

- The Los Angeles Times
  *"Tracing the Money Trail of Terrorism,"* September 24, 2001

- The New York Times
  *"And Now, a Case for the Forensic Accountant,"* May 27, 2001

**San Francisco Office**
160 Spear Street
Suite 1900
San Francisco, CA 94105
Tel: 415.836.4000
Fax: 415.777.2062



# HEMMING MORSE, INC.

CERTIFIED PUBLIC ACCOUNTANTS
LITIGATION & FORENSIC CONSULTANTS

## Daniel W. Ray, CPA, CFE, CFF

### Testimony

*Trial*

- **People v. Howard Douglas Porter (July 2008)**
  Stanislaus County Superior Court
  Case No. 1219173

- **BHE Group, Inc., et al. v. MTS Products and Ben Hsia (February 2008)**
  Los Angeles County Superior Court
  Case No. EC 041097

- **People of the State of California v. Roland Clark Colton, and Paul McNeece Roesser (October 2007)**
  San Diego County Superior Court, Central Division
  Case No. CD204432

- **Chevron U.S.A., Inc. v. SSD & Associates (August 2006)**
  U.S. District Court, Northern District of California
  Case No. C05-3276 WHA

- **United States Ex. Rel DRC, Inc., et al. v. Custer Battles, LLC, et al. (March 2006)**
  U.S. District Court, Eastern District of Virginia
  Case No. CV-04-199-A

- **People v. David Mark Levey (July 2005)**
  Contra Costa County Superior Court
  Case No. 1123341-0 F

- **The People of the State of California v. Hanson Building Materials America, Inc., et al. (June 2005)**
  Contra Costa County Superior Court
  Case No. MSC04-00524

- **Tanaka v. Doyle (September 2004)**
  San Francisco Superior Court, Case No. 319315

- **Beal Bank v. Ng Financial Corporation, et al. (November 2003)**
  Los Angeles County Superior Court

- **Everest Capital Limited v. Everest Investment Management, LLC, et al. (September 2003)**
  U.S. District Court, Omaha, NE

- **Far East National Bank v. United Commercial Bank, et al. (July 2002)**
  San Francisco Superior Court

- **Ronald F. Richardson, Administrator of the Estate of Ronald J. Richardson v. James L. Barton, individually and as Executor of the Estate of Florence Richardson Barton (June 2001)**
  Alameda County Superior Court

- **ConAgra, Inc., et al. v. Gapsu Kim, et al. (June 2001)**
  U.S. District Court, Central District of California

- **People v. Karen Logwood Young (November 1999)**
  San Francisco Municipal Court

- **People v. Tommy S. McCall (July 1998)**
  San Francisco Municipal Court

- **Quentin L. Bammer v. Bette Jo Lothrop, et al. (April 1998)**
  Hayward Superior Court

- **Inacom v. USIT, et al. (March 1998)**
  U.S. District Court, San Francisco, CA

- **Central Contra Costa Sanitary District v. Orinda Moraga Disposal Service, Inc. (September 1997)**
  Contra Costa County Superior Court

- **Aurelio Pedone v. State Farm Insurance (January 1995)**
  U.S. District Court, Los Angeles, CA

- **United States v. Jason Wallace Smith (December 1992)**
  U.S. District Court, Los Angeles, CA

**San Francisco Office**
160 Spear Street
Suite 1900
San Francisco, CA 94105
Tel: 415.836.4000
Fax: 415.777.2062



# H E M M I N G
# M O R S E, I N C.

CERTIFIED PUBLIC ACCOUNTANTS
LITIGATION & FORENSIC CONSULTANTS



# Daniel W. Ray, CPA, CFE, CFF

**Testimony** continued

### *Deposition*

- **CNA Insurance, et al. v. Lloyds London, Ace American Insurance Company, Travelers Indemnity Company (December 2009)**
  Circuit Court of Cook County, Illinois
  Case No. 2005 L 011044

- **Shinazy Enterprises, Inc.; Botta's Auto Body v. Truck Insurance Exchange; Farmers Insurance Group (September 2009)**
  San Francisco Superior Court
  Case No. CGC-07-461955

- **Banco De Mexico v. Orient Fisheries, Inc., et al. (August 2009)**
  U.S. District Court, Central District of California
  Case No. 2:07-CV-07043 GAF

- **Carolyn Vertuca, Trustee of The Louis R. Laeremans Trust dated December 12, 1997, et al. v. Citigroup Global Markets, Inc. dba Citi Smith Barney, et al. (July 2009)**
  Alameda County Superior Court
  Case No. RG07335879

- **Community Memorial Health System, et al. v. Bartlett, Pringle & Wolf LLP, et al. (2008)**
  Ventura County Superior Court
  Case No. 56-2008-00318564-CU-FR-VTA

- **BHE Group, Inc., et al. v. MTS Products and Ben Hsia (November 2007)**
  Los Angeles County Superior Court
  Case No. EC 041097

- **Norris Houk v. CSAA (August 2007)**
  Arbitration, San Francisco, CA

- **Gerald Laframboise, dba Laframboise Construction v. Alan Van Vliet, et al. (February 2007)**
  Mono County Superior Court, Case No. 15092

- **New World TMT Limited v. PrediWave Corporation, et al. (September 2006)**
  Santa Clara County Superior Court
  Case No. 104 CV020369

- **Patricia Davis Raynes, et al. v. Marvin Davis, Kenneth Kilroy, et al. (September 2006)**
  JAMS Arbitration, Los Angeles, CA
  Case No. 1220034665

- **Chevron U.S.A., Inc. v. SSD & Associates (July 2006)**
  U.S. District Court, Northern District of California
  Case No. C05-3276 WHA

- **Insurance Ventures, Inc. v. Vesta Fire Insurance Corporation (November 2005)**
  Sacramento County Superior Court
  Case No. 04AS00268

- **United States Ex. Rel DRC, Inc., et al. v. Custer Battles, LLC, et al. (October 2005)**
  U.S. District Court, Eastern District of Virginia
  Case No. CV-04-199-A

- **Daniel Garcia v. Thomas White (November 2005)**
  San Francisco Superior Court
  Case No. CGC 02-414569

- **Martha Wood, et al. v. John M. O'Quinn, et al. (September 2005)**
  American Arbitration Association, Houston, TX

**San Francisco Office**
160 Spear Street
Suite 1900
San Francisco, CA 94105
Tel: 415.836.4000
Fax: 415.777.2062



# HEMMING
# MORSE, INC.

CERTIFIED PUBLIC ACCOUNTANTS
LITIGATION & FORENSIC CONSULTANTS

## Daniel W. Ray, CPA, CFE, CFF

### Testimony continued

**Deposition** continued

- The People of the State of California v. Hanson Building Materials America, Inc., et al. (May 2005)
  Contra Costa County Superior Court
  Case No. MSC04-00524

- McKee Electric Company, et al. v. Chevron Texaco, et al. (January 2005)
  American Arbitration Association

- Tanaka v. Doyle (August 2004)
  San Francisco Superior Court, Case No. 319315

- Beal Bank v. Ng Financial Corporation, et al. (November 2003)
  Los Angeles County Superior Court

- Underwriters Insurance Company, et al. v. Pro-Guard International, Inc., et al. (March 2003)
  Los Angeles County Superior Court

- Clayton Industries, Inc. v. SPX Corporation dba After Market Tool & Equipment Group (June 2001)
  American Arbitration Association, Los Angeles, CA

- Ronald F. Richardson, Administrator of the Estate of Ronald J. Richardson v. James L. Barton, individually and as Executor of the Estate of Florence Richardson Barton (December 2000)
  Alameda County Superior Court

- ConAgra, Inc., et al. v. Gap Kim, et al. (November 2000)
  U.S. District Court, Los Angeles, CA

- Cochran v. Flores (November 1998)
  Hawaii Family Court, Honolulu, HI

- Inacom v. USIT, et al. (March 1998)
  U.S. District Court, San Francisco, CA

- Quentin L. Bammer v. Bette Jo Lothrop, et al. (June 1997)
  U.S. District Court, Alameda, CA

- Hochman v. Prudential Insurance (1997)
  U.S. District Court, Los Angeles, CA

- Central Contra Costa Sanitary District v. Orinda Moraga Disposal Service, Inc. (1997)
  Contra Costa County Superior Court

- Jason Cohn v. San Ramon Rubber Stamp (1994)
  Contra Costa County Superior Court

- Spanish Speaking Unity Counsel v. Tony Enriques (1993)
  Alameda County Superior Court

- FDIC v. Bill L. Walters (1992)
  Orange County Bankruptcy Court

**San Francisco Office**
160 Spear Street
Suite 1900
San Francisco, CA 94105
Tel: 415.836.4000
Fax: 415.777.2062



# Daniel W. Ray, CPA, CFE, CFF

**Testimony** continued

### Arbitration

- **Europlay Capital Advisors, LLC v. Pamela S. Colburn (December 2007)**
  American Arbitration Association
  Case No. 72 180 Y 00337 07 WYGI

- **Tigran Z. Marcarian v. Tony Lee, et al. (October 2007)**
  Santa Clara County, CA

- **Norris Houk v. CSAA (August 2007)**
  San Francisco, CA

- **George Goff, et al. v. The Thomas Kinkade Company, et al. (April 2006)**
  Los Angeles, CA

- **Daniel Garcia v. Thomas White (November 2005)**
  Superior Court, San Francisco, CA
  Case No. CGC 02-414569

- **Martha Wood, et al. v. John M. O'Quinn, et al. (October 2005)**
  Class Certification Hearing, Houston, TX

- **French Camp Vineyards v. Guenoc Winery (May 2004)**
  San Francisco, CA

- **Far Eastern Group I v. Hayes Valley Development Partners (February 2002)**
  San Mateo, CA

### NASD Arbitration

- **A. G. Edwards & Sons, Inc. v. Wendy Feldman Purner (September 2005)**
  Arbitration Case No. 02-04317, San Diego, CA

- **A. G. Edwards & Sons, Inc. v. Wendy Feldman Purner (September 2004)**
  Arbitration Case No. 02-04275, Seattle, WA

**San Francisco Office**
160 Spear Street
Suite 1900
San Francisco, CA 94105
Tel: 415.836.4000
Fax: 415.777.2062

# Exhibit B

**Documents Considered**

| Description | Date | Beg Bates | End Bates |
|---|---|---|---|
| **From Counsel:** | | | |
| Brown Proceedings | 11/25/08 | | |
| Brown Proceedings | 11/26/08 | | |
| Brown Proceedings | 11/28/08 | | |
| Brown's Expert Report (Interlocutory Expert's Reports) | | SO-0002517 | SO-0002561 |
| Exh to Brown's Expert Report (Exhibits 1-21 to Interlocutory Expert's Report) | | SO-0002562 | SO-0002658 |
| Exh to Fitzgerald Report (Appendices 1 - 4 to Experts' Reports on "closed end investments") | | SO-0001806 | SO-0001840 |
| Exhibit A (Remittance advice from the Hong Kong and Shanghai Banking Corporation Limited) | 04/30/05 | | |
| Fitzgerald Report (Experts' reports on "Close End Investments") | | SO-0001776 | SO-0001805 |
| Hiscock Rpt Banking Practice (Experts' Reports on "Banking Procedure") | 09/01/06 | SO-0001841 | SO-0001864 |
| Kevin So v. Land Base Exh B to Complaint (Irrevocable Bank Instruction) | 04/11/05 | | |
| Kevin So v. Land Base Exh C to Complaint (Benefits Participation Agreement) | | | |
| Kevin So v. Land Base Exh D to Complaint (HSBC electronic payment details) | 04/22/05 | | |
| Land Base Agreement (Private Enterprise Assets Exchange Benefits Participation Agreement) | | | |
| Lopatin Deposition Vol. I | 03/08/10 | | |
| Lopatin Deposition Vol. II | 03/09/10 | | |
| Lopatin Deposition Vol. III | 03/25/10 | | |
| Protective Order | | | |
| Second Amended Complaint | | | |
| Boris email to Lu | 04/19/05 | | |
| Boris email to Lu | 04/19/05 | | |
| Brown email to Arnull | 04/19/05 | | |
| Brown email to Lu | 04/19/05 | | |
| Exh D to SAC (Irrevocable Project Funding Agreement) (Exh 1) | 03/24/05 | | |
| Lu communications with Millar pre-investment (Exh 2-31) | various | various | |
| Trade Settlements (1st - 4th) | various | | |
| Trade Slip - security description | 09/13/04 | EMUP00001303 | |
| Trade Slip - corporate bond price/yield calculator | 12/10/03 | KF00001575 | |
| Trade Slip - corporate bond price/yield calculator | 10/11/03 | KF00008080 | |
| Trade Slip - corporate bond price/yield calculator | 10/11/03 | KF00008085 | |
| Trade Slip - security description | 10/20/03 | KF00008085 | |
| Trade Slip - security description | 10/27/03 | KF00008095 | |
| Trade Slip - corporate bond price/yield calculator | 10/29/03 | KF00008099 | |
| Trade Slip - corporate bond price/yield calculator | 12/10/03 | KF00008116 | |
| Trade Slip - security description | 12/10/03 | KF00008118 | |
| Trade Slip - security description | 12/10/03 | SO-0042123 | |
| Emails related to "solicitation of sale of securities in the US to US citizen | 05/28/06 | SO-0042124 | SO-0042133 |
| Trade Slip - security description | 10/20/03 | SO-0042143 | |
| Trade Slip - corporate bond price/yield calculator | 10/11/03 | SO-0042151 | |
| Trade Slip - corporate bond price/yield calculator | 10/29/03 | SO-0042244 | |
| Trade Slip - security description | 10/27/03 | SO-0042282 | |
| Trade Slip - corporate bond price/yield calculator | 12/10/03 | SO-0042304 | |
| Trade Slip - corporate bond price/yield calculator | 10/11/03 | SO-0042305 | |
| Disbursement instruction on trade settlement dated 5/25/05 | 06/14/05 | SO-0042762 | |
| Disbursement instruction on trade settlement dated 6/1/05 | 06/14/05 | SO-0042763 | |
| Disbursement instruction on trade settlement dated 6/17/05 | 06/22/05 | SO-0042765 | |
| Disbursement instruction on trade settlement dated 7/7/05 | 07/19/05 | SO-0042766 | |
| Disbursement instruction on trade settlement dated 8/1/05 | 08/06/05 | SO-0042767 | |
| Disbursement instruction on trade settlement dated 9/21/05 and 9/30/05 | 10/10/05 | SO-0042768 | |
| Kevin Kondas and related entities/persons (banking documents from Union Ba | various | various | |
| Land Base LLC (banking documents from Union Bank) | various | various | |

**Documents Considered**

| Description | Date | Beg Bates | End Bates |
|---|---|---|---|
| Receipt for $30M So Transfer 1 (remittance advice from the Hong Kong and Shanghai Banking Corporation Limited) | 04/30/05 | | |
| Receipt for $30M So Transfer 2 (electronic payment details from HSBC) | 04/22/05 | | |
| HSBC Electronic Transfer Details (5th Avenue Partners Limited) | various | SO-0025482 | SO-0025547 |
| Univest (banking documents from Union Bank) | various | various | |
| Document production | | Wells Fargo 0443 | 579 |
| Wells Fargo bank statements production | | Wells Fargo 0580 | 760 |
| Wells Fargo bank statements production | | Wells Fargo 0707 | 808 |
| Wells Fargo bank statements production | | Wells Fargo 0809 | 946 |
| Wells Fargo bank statements production | | Wells Fargo 0947 | 1037 |
| Checks from KM&A to KB&M | | | |
| Checks from KM&A to Millar | | | |
| KB&M signature cards | | Suntrust 00003 | |
| KM&A payment to Sandpiper | | | |
| KM&A payments & transfers | | | |
| KM&A signature cards | | | |
| KM&A to BLA | | | |
| KM&A to KM&A checks | | | |
| KM&A to K-TEC Corp | | | |
| KM&A to Mercian Associates Ltd. | | | |
| KM&A to Minton | | | |
| KM&A to Sandpiper | | | |
| KM&A to Timberlake | | | |
| KM&A to Union Bank | | various | |
| Meltzer - invoices | | | |
| Miscellaneous checks from KM&A less than 5,000 | | | |
| Wires from LB & KM&A | | | |
| Payment from KM&A to LB | | Suntrust 00357 | |
| Payment from KM&A to Kim | | Suntrust 00360 | |
| So payment to KM&A | | Suntrust 00356 | |
| Union Bank checks from Land Base to KM&A | | | Union Bank-000485 |
| Wire from LB to KM&A | | Suntrust 00354 | |
| Wires from So | | various | |
| 07/15/2004 Anstalt wire | | Union Bank-001485 | |
| 07/30/2005 Barber wire | | Union Bank-001588 | |
| 07/2005 IPSA check | | Union Bank-001592 | |
| 08/15/2008 Incoming wire from WF investments | | Union Bank-001601 | |
| 40K transfer - Andre Harpes | | Union Bank-001477 | |
| $15,0000 to Morrison and Foerster | | Union Bank-001504 | |
| Checks to Linda Victor | | Union Bank-001459 | |
| Check from Univest to Christensen Law Group | | various | |
| Gerschel - transfers to/from Univest | | Union Bank-001543 | Union Bank-001602 |
| June 7, 2005 $8.6M transfer to Univest WF | | Union Bank-001571 | Union Bank-001573 |
| Lancorp $25,000 check - 25 TR returned | | various | |
| Transfer $10,300,028 to Univest MMA | | various | |
| Transfer to Univest #0868from Universal Genesis | | Union Bank-001472 | Union Bank-001473 |
| Transfers to Moritz Attorney Trust | | various | |
| Transfers to/from 5th Avenue Partners Limited | | various | |
| Union Bank Statement of Accounts #3390019695 | | various | |
| Union Bank Statement of Accounts July 2004 #3390010868 | | Union Bank-001482 | Union Bank-001483 |
| Union Bank Statement of Accounts June 2004 #3390010868 | | Union Bank-001471 | Union Bank-001472 |

**Documents Considered**

| Description | Date | Beg Bates | End Bates |
|---|---|---|---|

**From Internet:**

| Description | Date | Beg Bates | End Bates |
|---|---|---|---|
| SEC News Digest (Issue 95-10) | 01/17/95 | | |
| SEC News Digest (Issue 98-5) | 01/08/98 | | |
| SEC: How Prime Bank Frauds Work | 06/12/09 | | |
| SEC: Warning to All Investors About Bogus "Prime Bank" and Other Banking-Related Investment Schemes | 06/12/09 | | |

# Exhibit 1

| Kevin So v. Land Base | | | |
|---|---|---|---|
| Analysis of Funds Paid and Received by Mr. So | | | |
| | | | |
| Date | Amount | Payee / Payor | Summary |
| 04/20/05 | ($30,000,000.00) | 5th Avenue Partners | This was the principal investment by Mr. So. This payment was intended to be received into account #58947833 at HSBC, but was instead deposited into account #58947825. The following day, Univest was repaid the $10,000,000 they invested on 12/21/04. |
| 05/12/05 | 726,450.00 | 5th Avenue Partners | This wire transfer purported to represent the "Participation" fee earned by Mr. So as a result of securities trades on his invested funds. A "fee" of $145,290 was to be paid by Land Base to KM&A representing 20% of this "Participation" amount. This payment was made from HSBC acct. #58947825. |
| 05/25/05 | (145,270) | KM & Assoc. | Wire transfer from Mr. So's account in Hong Kong. Possible payment of "Finders Fee." This payment is approximately 20% of the "Participation" fee paid to Mr. So by 5th Avenue Partners. |
| 06/27/05 | 1,214,056.47 | 5th Avenue Partners | This wire transfer purported to represent the "Participation" fee earned by Mr. So as a result of securities trades on his invested funds. A "fee" of $242,721 was to be paid by Land Base to KM&A representing 20% of this "Participation" amount. This payment was made from HSBC acct. #58947833. |
| 07/11/05 | (242,770) | KM & Assoc. | Wire transfer from Mr. So's account in Hong Kong. Possible payment of "Finders Fee." This payment is approximately 20% of the "Participation" fee paid to Mr. So by 5th Avenue Partners. |
| 08/04/05 | 637,520.00 | 5th Avenue Partners | This wire transfer purported to represent the "Participation" fee earned by Mr. So as a result of securities trades on his invested funds. This fee amount was disclosed in a letter from Land Base dated 7/19/05. This payment was made from HSBC acct. #59099344. |
| 08/08/05 | (127,463) | KM & Assoc. | Wire transfer from Mr. So's account in Hong Kong. Possible payment of "Finders Fee." This payment is approximately 20% of the "Participation" fee paid to Mr. So by 5th Avenue Partners. |

| | | | |
|---|---|---|---|
| **Kevin So v. Land Base** | | | |
| **Analysis of Funds Paid and Received by Mr. So** | | | |
| | | | |
| **Date** | **Amount** | **Payee / Payor** | **Summary** |
| | | | |
| 09/06/05 | 557,830.00 | 5th Avenue Partners | This wire transfer purported to represent the "Participation" fee earned by Mr. So as a result of securities trades on his invested funds. This fee amount was disclosed in a letter from Land Base dated 8/6/05. This payment was made from HSBC acct. #58947833. |
| | | | |
| 09/12/05 | (115,525) | KM & Assoc. | Wire transfer from Mr. So's account in Hong Kong. Possible payment of "Finders Fee." This payment is approximately 20% of the "Participation" fee paid to Mr. So by 5th Avenue Partners. |
| | ($27,495,171.53) | | |
| | | | |
| Other disbursements that may be of interest are as follows: | | | |
| | | | |
| 05/16/05 | $162,602.00 | KM & Associates | Paid by Land Base (W/T) |
| 06/29/05 | 268,077.00 | KM & Associates | Paid by Land Base (W/T) |
| 08/08/05 | 140,491.00 | KM & Associates | Paid by Land Base (Check #1199) "5AP Trade 7" |
| 09/07/05 | 122,929.00 | KM & Associates | Paid by Land Base (Check #1202) "Trade 8 plus exp." |
| | $694,099.00 | | |
| | | | |

# Exhibit 2

| Kevin So v. Land Base | | | |
|---|---|---|---|
| Analysis of Funds Paid and Received by Mr. So | | | |
| (Sorted by Payee / Payor) | | | |
| Date | Amount | Payee / Payor | Summary |
| 04/20/05 | ($30,000,000.00) | 5th Avenue Partners | This was the principal investment by Mr. So. This payment was intended to be received into account #58947833 at HSBC, but was instead deposited into account #58947825. The following day, Univest was repaid the $10,000,000 they invested on 12/21/04. |
| 05/12/05 | 726,450.00 | 5th Avenue Partners | This wire transfer purported to represent the "Participation" fee earned by Mr. So as a result of securities trades on his invested funds. A "fee" of $145,290 was to be paid by Land Base to KM&A representing 20% of this "Participation" amount. This payment was made from HSBC acct. #58947825. |
| 06/27/05 | 1,214,056.47 | 5th Avenue Partners | This wire transfer purported to represent the "Participation" fee earned by Mr. So as a result of securities trades on his invested funds. A "fee" of $242,721 was to be paid by Land Base to KM&A representing 20% of this "Participation" amount. This payment was made from HSBC acct. #58947833. |
| 08/04/05 | 637,520.00 | 5th Avenue Partners | This wire transfer purported to represent the "Participation" fee earned by Mr. So as a result of securities trades on his invested funds. This fee amount was disclosed in a letter from Land Base dated 7/19/05. This payment was made from HSBC acct. #59099344. |
| 09/06/05 | 557,830.00 | 5th Avenue Partners | This wire transfer purported to represent the "Participation" fee earned by Mr. So as a result of securities trades on his invested funds. This fee amount was disclosed in a letter from Land Base dated 8/6/05. |
| | (26,864,143.53) | | |
| 05/25/05 | (145,270) | KM & Assoc. | Wire transfer from Mr. So's account in Hong Kong. Possible payment of "Finders Fee." This payment is approximately 20% of the "Participation" fee paid to Mr. So by 5th Avenue Partners. |
| 07/11/05 | (242,770) | KM & Assoc. | Wire transfer from Mr. So's account in Hong Kong. Possible payment of "Finders Fee." This payment is approximately 20% of the "Participation" fee paid to Mr. So by 5th Avenue Partners. |

| Kevin So v. Land Base | | | |
|---|---|---|---|
| Analysis of Funds Paid and Received by Mr. So | | | |
| (Sorted by Payee / Payor) | | | |
| Date | Amount | Payee / Payor | Summary |
| 08/08/05 | (127,463) | KM & Assoc. | Wire transfer from Mr. So's account in Hong Kong. Possible payment of "Finders Fee."  This payment is approximately 20% of the "Participation" fee paid to Mr. So by 5th Avenue Partners. |
| 09/12/05 | (115,525) | KM & Assoc. | Wire transfer from Mr. So's account in Hong Kong. Possible payment of "Finders Fee."  This payment is approximately 20% of the "Participation" fee paid to Mr. So by 5th Avenue Partners. |
| | (631,028) | | |
| | ($27,495,171.53) | | |
| Other disbursements that may be of interest are as follows: | | | |
| 05/16/05 | $162,602.00 | KM & Associates | Paid by Land Base (W/T) |
| 06/29/05 | 268,077.00 | KM & Associates | Paid by Land Base (W/T) |
| 08/08/05 | 140,491.00 | KM & Associates | Paid by Land Base (Check #1199) "5AP Trade 7" |
| 09/07/05 | 122,929.00 | KM & Associates | Paid by Land Base (Check #1202) "Trade 8 plus exp." |
| | $694,099.00 | | |

# Exhibit 3

Prime Bank Fraud Information Center

http://sec.gov/divisions/enforce/primebank.shtm

U.S. Securities and Exchange Commission

About the SEC
Filings & Forms
Regulatory Actions
Staff Interps
Investor Info
News & Statements
Litigation
ALJ
Information for...
**Divisions**
  Corporation Finance
  Enforcement
  Investment Mgmt.
  Trading and Markets

## Warning to All Investors About Bogus "Prime Bank" and Other Banking-Related Investment Schemes

Lured by the promise of astronomical profits and the chance to be part of an exclusive, international investing program, investors are once again falling prey to bogus "prime bank" scams. These fraudulent schemes involve the purported issuance, trading, or use of so-called "prime" bank, "prime" European bank or "prime" world bank financial instruments, or other "high yield investment programs" ("HYIP"s). The fraud artists who promote these schemes often use the word "prime" – or a synonymous phrase, such as "top fifty world banks" – to cloak their programs with an air of legitimacy. They seek to mislead investors by suggesting that well regarded and financially sound institutions participate in these bogus programs. But prime bank and other related schemes have no connection whatsoever to the world's leading financial institutions or to banks with the word "prime" in their names. The Securities and Exchange Commission and other federal and state agencies are continuing to warn investors about these scams.

How Prime Bank Frauds Work

| Search words | Section of website | Sort by |
|---|---|---|
| | All of Enforcement | Search |

(e.g., "*example*") See Search Help

*http://www.sec.gov/divisions/enforce/primebank.shtml*

Contact | Employment | Links | FOIA | Forms | Privacy Policy

Modified: 06/12/2009

3/30/2010 3:02 PM



Home | Jobs | Fast Answers | Site Map | **Search**

U.S. Securities and Exchange Commission

About the SEC

Filings & Forms

Regulatory Actions

Staff Interps

Investor Info

News & Statements

Litigation

ALJ

Information for...

**Divisions**

  Corporation Finance

      Enforcement

  Investment Mgmt.

  Trading and Markets

## How Prime Bank Frauds Work

Prime bank programs often claim investors' funds will be used to purchase and trade "prime bank" financial instruments on clandestine overseas markets in order to generate huge returns in which the investor will share. However, neither these instruments, nor the markets on which they allegedly trade, exist. To give the scheme an air of legitimacy, the promoters distribute documents that appear complex, sophisticated and official. The sellers frequently tell potential investors that they have special access to programs that otherwise would be reserved for top financiers on Wall Street, or in London, Geneva or other world financial centers. Investors are also told that profits of 100% or more are possible with little risk.

Individuals and entities are targeted, including municipalities, charitable associations and other nonprofit organizations. The promoters of these schemes have demonstrated remarkable audacity, advertising in national newspapers, such as *USA Today* and the *Wall Street Journal*. Some promoters of these schemes avoid using the term "Prime Bank note," and tell prospective investors that their programs do not involve prime bank instruments in an effort to demonstrate that their programs are not fraudulent. Regardless of the terminology, the basic pitch – that the program involves trading in international financial instruments – remains the same, and investors should continue to be vigilant against such fraud.

### Signs of Banking-Related Investment Fraud

Below are warning signs of prime bank or other fraudulent bank-related investment schemes.

## Excessive Guaranteed Returns

These fraudulent investment pitches typically offer or guarantee spectacular returns of 20 to 200 percent monthly, absolutely risk free. Promises of unrealistic returns at no risk are hallmarks of prime bank fraud.

## Fictitious Financial Instrument

3/30/2010 3:02 PM

Despite having credible-sounding names, the supposed "financial instruments" at the heart of any prime bank scheme simply do not exist. Exercise caution if you've been asked to invest in a debt obligation of the top 100 world banks, Medium Term Bank Notes or Debentures, Standby Letters of Credit, Bank Guarantees, an offshore trading program, a roll program, bank-issued debentures, a high yield investment program, or some variation on these descriptions. Promoters frequently claim that the offered financial instrument is issued, traded, guaranteed, or endorsed by the World Bank (Department of Institutional Integrity (INT) or Operations Evaluation Department) , International Monetary Fund (IMF), Federal Reserve, Department of Treasury, International Chamber of Commerce (ICC), or an international central bank.

**Extreme Secrecy**

Promoters claim that transactions must be kept strictly confidential by all parties, making client references unavailable. They may characterize the transactions as the best-kept secret in the banking industry, and assert that, if asked, bank and regulatory officials would deny knowledge of such instruments. Investors may be asked to sign nondisclosure agreements.

**Exclusive Opportunity**

Promoters frequently claim that investment opportunities of this type are by invitation only, available to only a handful of special customers, and historically reserved for the wealthy elite.

**Claims of Inordinate Complexity**

Investment pitches frequently are vague about who is involved in the transaction or where the money is going. Promoters may try to explain away this lack of specificity by stating that the financial instruments are too technical or complex for nonexperts to understand.

You should be especially watchful for prime-bank related schemes promoted over the Internet. Despite numerous SEC actions charging prime bank promoters with multiple violations of the federal securities laws, prime bank offerings continue to proliferate in cyberspace.

If you have any information regarding the offer or sale of "prime bank" or similar financial instruments, or programs employing these instruments, please provide that information

to the SEC's Division of Enforcement immediately by using the
Enforcement Complaint Center. You also may want to visit
other helpful websites to learn more about prime bank-related
fraud.

Prime Bank Home

*http://www.sec.gov/divisions/enforce/primebank
/howtheywork.shtml*

Contact | Employment | Links | FOIA | Forms | Privacy Policy    Modified: 06/12/2009

# Exhibit 4

**Kevin So v. Land Base**
**Calculation of Promised Returns**

| | Compound Interest | | | | | Simple Interest | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Trade | Beg Balance | Period Return | End Balance | Cumulative Return | Trade | Capital | Period Return | Beg Balance | End Balance | Cumulative Return |
| | A | B | C | D | | E | F | G | H | I |
| | Cn-1 | | A*B | C/30m | | | | Hn-1 | G+(E*F) | (H/30m)-1 |
| 1 | $ 30,000,000.00 | 4% | $ 31,200,000.00 | 104% | 1 | $ 30,000,000.00 | 4% | $ 30,000,000.00 | $ 31,200,000.00 | 4% |
| 2 | $ 31,200,000.00 | 4% | $ 32,448,000.00 | 108% | 2 | $ 30,000,000.00 | 4% | $ 31,200,000.00 | $ 32,400,000.00 | 8% |
| 3 | $ 32,448,000.00 | 4% | $ 33,745,920.00 | 112% | 3 | $ 30,000,000.00 | 4% | $ 32,400,000.00 | $ 33,600,000.00 | 12% |
| 4 | $ 33,745,920.00 | 4% | $ 35,095,756.80 | 117% | 4 | $ 30,000,000.00 | 4% | $ 33,600,000.00 | $ 34,800,000.00 | 16% |
| 5 | $ 35,095,756.80 | 4% | $ 36,499,587.07 | 122% | 5 | $ 30,000,000.00 | 4% | $ 34,800,000.00 | $ 36,000,000.00 | 20% |
| 6 | $ 36,499,587.07 | 4% | $ 37,959,570.55 | 127% | 6 | $ 30,000,000.00 | 4% | $ 36,000,000.00 | $ 37,200,000.00 | 24% |
| 7 | $ 37,959,570.55 | 4% | $ 39,477,953.38 | 132% | 7 | $ 30,000,000.00 | 4% | $ 37,200,000.00 | $ 38,400,000.00 | 28% |
| 8 | $ 39,477,953.38 | 4% | $ 41,057,071.51 | 137% | 8 | $ 30,000,000.00 | 4% | $ 38,400,000.00 | $ 39,600,000.00 | 32% |
| 9 | $ 41,057,071.51 | 4% | $ 42,699,354.37 | 142% | 9 | $ 30,000,000.00 | 4% | $ 39,600,000.00 | $ 40,800,000.00 | 36% |
| 10 | $ 42,699,354.37 | 4% | $ 44,407,328.55 | 148% | 10 | $ 30,000,000.00 | 4% | $ 40,800,000.00 | $ 42,000,000.00 | 40% |
| 11 | $ 44,407,328.55 | 4% | $ 46,183,621.69 | 154% | 11 | $ 30,000,000.00 | 4% | $ 42,000,000.00 | $ 43,200,000.00 | 44% |
| 12 | $ 46,183,621.69 | 4% | $ 48,030,966.56 | 160% | 12 | $ 30,000,000.00 | 4% | $ 43,200,000.00 | $ 44,400,000.00 | 48% |
| 13 | $ 48,030,966.56 | 4% | $ 49,952,205.22 | 167% | 13 | $ 30,000,000.00 | 4% | $ 44,400,000.00 | $ 45,600,000.00 | 52% |
| 14 | $ 49,952,205.22 | 4% | $ 51,950,293.43 | 173% | 14 | $ 30,000,000.00 | 4% | $ 45,600,000.00 | $ 46,800,000.00 | 56% |
| 15 | $ 51,950,293.43 | 4% | $ 54,028,305.17 | 180% | 15 | $ 30,000,000.00 | 4% | $ 46,800,000.00 | $ 48,000,000.00 | 60% |
| 16 | $ 54,028,305.17 | 4% | $ 56,189,437.37 | 187% | 16 | $ 30,000,000.00 | 4% | $ 48,000,000.00 | $ 49,200,000.00 | 64% |
| 17 | $ 56,189,437.37 | 4% | $ 58,437,014.87 | 195% | 17 | $ 30,000,000.00 | 4% | $ 49,200,000.00 | $ 50,400,000.00 | 68% |
| 18 | $ 58,437,014.87 | 4% | $ 60,774,495.46 | 203% | 18 | $ 30,000,000.00 | 4% | $ 50,400,000.00 | $ 51,600,000.00 | 72% |
| 19 | $ 60,774,495.46 | 4% | $ 63,205,475.28 | 211% | 19 | $ 30,000,000.00 | 4% | $ 51,600,000.00 | $ 52,800,000.00 | 76% |
| 20 | $ 63,205,475.28 | 4% | $ 65,733,694.29 | 219% | 20 | $ 30,000,000.00 | 4% | $ 52,800,000.00 | $ 54,000,000.00 | 80% |
| 21 | $ 65,733,694.29 | 4% | $ 68,363,042.06 | 228% | 21 | $ 30,000,000.00 | 4% | $ 54,000,000.00 | $ 55,200,000.00 | 84% |
| 22 | $ 68,363,042.06 | 4% | $ 71,097,563.75 | 237% | 22 | $ 30,000,000.00 | 4% | $ 55,200,000.00 | $ 56,400,000.00 | 88% |
| 23 | $ 71,097,563.75 | 4% | $ 73,941,466.29 | 246% | 23 | $ 30,000,000.00 | 4% | $ 56,400,000.00 | $ 57,600,000.00 | 92% |
| 24 | $ 73,941,466.29 | 4% | $ 76,899,124.95 | 256% | 24 | $ 30,000,000.00 | 4% | $ 57,600,000.00 | $ 58,800,000.00 | 96% |
| 25 | $ 76,899,124.95 | 4% | $ 79,975,089.94 | 267% | 25 | $ 30,000,000.00 | 4% | $ 58,800,000.00 | $ 60,000,000.00 | 100% |
| 26 | $ 79,975,089.94 | 4% | $ 83,174,093.54 | 277% | 26 | $ 30,000,000.00 | 4% | $ 60,000,000.00 | $ 61,200,000.00 | 104% |
| 27 | $ 83,174,093.54 | 4% | $ 86,501,057.28 | 288% | 27 | $ 30,000,000.00 | 4% | $ 61,200,000.00 | $ 62,400,000.00 | 108% |
| 28 | $ 86,501,057.28 | 4% | $ 89,961,099.58 | 300% | 28 | $ 30,000,000.00 | 4% | $ 62,400,000.00 | $ 63,600,000.00 | 112% |
| 29 | $ 89,961,099.58 | 4% | $ 93,559,543.56 | 312% | 29 | $ 30,000,000.00 | 4% | $ 63,600,000.00 | $ 64,800,000.00 | 116% |
| 30 | $ 93,559,543.56 | 4% | $ 97,301,925.30 | 324% | 30 | $ 30,000,000.00 | 4% | $ 64,800,000.00 | $ 66,000,000.00 | 120% |
| 31 | $ 97,301,925.30 | 4% | $ 101,194,002.31 | 337% | 31 | $ 30,000,000.00 | 4% | $ 66,000,000.00 | $ 67,200,000.00 | 124% |
| 32 | $ 101,194,002.31 | 4% | $ 105,241,762.41 | 351% | 32 | $ 30,000,000.00 | 4% | $ 67,200,000.00 | $ 68,400,000.00 | 128% |
| 33 | $ 105,241,762.41 | 4% | $ 109,451,432.90 | 365% | 33 | $ 30,000,000.00 | 4% | $ 68,400,000.00 | $ 69,600,000.00 | 132% |
| 34 | $ 109,451,432.90 | 4% | $ 113,829,490.22 | 379% | 34 | $ 30,000,000.00 | 4% | $ 69,600,000.00 | $ 70,800,000.00 | 136% |
| 35 | $ 113,829,490.22 | 4% | $ 118,382,669.83 | 395% | 35 | $ 30,000,000.00 | 4% | $ 70,800,000.00 | $ 72,000,000.00 | 140% |
| 36 | $ 118,382,669.83 | 4% | $ 123,117,976.62 | 410% | 36 | $ 30,000,000.00 | 4% | $ 72,000,000.00 | $ 73,200,000.00 | 144% |
| 37 | $ 123,117,976.62 | 4% | $ 128,042,695.68 | 427% | 37 | $ 30,000,000.00 | 4% | $ 73,200,000.00 | $ 74,400,000.00 | 148% |
| 38 | $ 128,042,695.68 | 4% | $ 133,164,403.51 | 444% | 38 | $ 30,000,000.00 | 4% | $ 74,400,000.00 | $ 75,600,000.00 | 152% |
| 39 | $ 133,164,403.51 | 4% | $ 138,490,979.65 | 462% | 39 | $ 30,000,000.00 | 4% | $ 75,600,000.00 | $ 76,800,000.00 | 156% |
| 40 | $ 138,490,979.65 | 4% | $ 144,030,618.84 | 480% | 40 | $ 30,000,000.00 | 4% | $ 76,800,000.00 | $ 78,000,000.00 | 160% |
| 41 | $ 144,030,618.84 | 4% | $ 149,791,843.59 | 499% | 41 | $ 30,000,000.00 | 4% | $ 78,000,000.00 | $ 79,200,000.00 | 164% |
| 42 | $ 149,791,843.59 | 4% | $ 155,783,517.34 | 519% | 42 | $ 30,000,000.00 | 4% | $ 79,200,000.00 | $ 80,400,000.00 | 168% |
| 43 | $ 155,783,517.34 | 4% | $ 162,014,858.03 | 540% | 43 | $ 30,000,000.00 | 4% | $ 80,400,000.00 | $ 81,600,000.00 | 172% |
| 44 | $ 162,014,858.03 | 4% | $ 168,495,452.35 | 562% | 44 | $ 30,000,000.00 | 4% | $ 81,600,000.00 | $ 82,800,000.00 | 176% |
| 45 | $ 168,495,452.35 | 4% | $ 175,235,270.44 | 584% | 45 | $ 30,000,000.00 | 4% | $ 82,800,000.00 | $ 84,000,000.00 | 180% |
| 46 | $ 175,235,270.44 | 4% | $ 182,244,681.26 | 607% | 46 | $ 30,000,000.00 | 4% | $ 84,000,000.00 | $ 85,200,000.00 | 184% |
| 47 | $ 182,244,681.26 | 4% | $ 189,534,468.51 | 632% | 47 | $ 30,000,000.00 | 4% | $ 85,200,000.00 | $ 86,400,000.00 | 188% |
| 48 | $ 189,534,468.51 | 4% | $ 197,115,847.25 | 657% | 48 | $ 30,000,000.00 | 4% | $ 86,400,000.00 | $ 87,600,000.00 | 192% |
| 49 | $ 197,115,847.25 | 4% | $ 205,000,481.14 | 683% | 49 | $ 30,000,000.00 | 4% | $ 87,600,000.00 | $ 88,800,000.00 | 196% |
| 50 | $ 205,000,481.14 | 4% | $ 213,200,500.39 | 711% | 50 | $ 30,000,000.00 | 4% | $ 88,800,000.00 | $ 90,000,000.00 | 200% |
| 51 | $ 213,200,500.39 | 4% | $ 221,728,520.40 | 739% | 51 | $ 30,000,000.00 | 4% | $ 90,000,000.00 | $ 91,200,000.00 | 204% |
| 52 | $ 221,728,520.40 | 4% | $ 230,597,661.22 | 769% | 52 | $ 30,000,000.00 | 4% | $ 91,200,000.00 | $ 92,400,000.00 | 208% |
| 53 | $ 230,597,661.22 | 4% | $ 239,821,567.67 | 799% | 53 | $ 30,000,000.00 | 4% | $ 92,400,000.00 | $ 93,600,000.00 | 212% |
| 54 | $ 239,821,567.67 | 4% | $ 249,414,430.38 | 831% | 54 | $ 30,000,000.00 | 4% | $ 93,600,000.00 | $ 94,800,000.00 | 216% |
| 55 | $ 249,414,430.38 | 4% | $ 259,391,007.59 | 865% | 55 | $ 30,000,000.00 | 4% | $ 94,800,000.00 | $ 96,000,000.00 | 220% |
| 56 | $ 259,391,007.59 | 4% | $ 269,766,647.89 | 899% | 56 | $ 30,000,000.00 | 4% | $ 96,000,000.00 | $ 97,200,000.00 | 224% |
| 57 | $ 269,766,647.89 | 4% | $ 280,557,313.81 | 935% | 57 | $ 30,000,000.00 | 4% | $ 97,200,000.00 | $ 98,400,000.00 | 228% |
| 58 | $ 280,557,313.81 | 4% | $ 291,779,606.36 | 973% | 58 | $ 30,000,000.00 | 4% | $ 98,400,000.00 | $ 99,600,000.00 | 232% |
| 59 | $ 291,779,606.36 | 4% | $ 303,450,790.62 | 1012% | 59 | $ 30,000,000.00 | 4% | $ 99,600,000.00 | $ 100,800,000.00 | 236% |
| 60 | $ 303,450,790.62 | 4% | $ 315,588,822.24 | 1052% | 60 | $ 30,000,000.00 | 4% | $ 100,800,000.00 | $ 102,000,000.00 | 240% |
| 61 | $ 315,588,822.24 | 4% | $ 328,212,375.13 | 1094% | 61 | $ 30,000,000.00 | 4% | $ 102,000,000.00 | $ 103,200,000.00 | 244% |
| 62 | $ 328,212,375.13 | 4% | $ 341,340,870.14 | 1138% | 62 | $ 30,000,000.00 | 4% | $ 103,200,000.00 | $ 104,400,000.00 | 248% |
| 63 | $ 341,340,870.14 | 4% | $ 354,994,504.94 | 1183% | 63 | $ 30,000,000.00 | 4% | $ 104,400,000.00 | $ 105,600,000.00 | 252% |
| 64 | $ 354,994,504.94 | 4% | $ 369,194,285.14 | 1231% | 64 | $ 30,000,000.00 | 4% | $ 105,600,000.00 | $ 106,800,000.00 | 256% |
| 65 | $ 369,194,285.14 | 4% | $ 383,962,056.55 | 1280% | 65 | $ 30,000,000.00 | 4% | $ 106,800,000.00 | $ 108,000,000.00 | 260% |
| 66 | $ 383,962,056.55 | 4% | $ 399,320,538.81 | 1331% | 66 | $ 30,000,000.00 | 4% | $ 108,000,000.00 | $ 109,200,000.00 | 264% |
| 67 | $ 399,320,538.81 | 4% | $ 415,293,360.36 | 1384% | 67 | $ 30,000,000.00 | 4% | $ 109,200,000.00 | $ 110,400,000.00 | 268% |
| 68 | $ 415,293,360.36 | 4% | $ 431,905,094.77 | 1440% | 68 | $ 30,000,000.00 | 4% | $ 110,400,000.00 | $ 111,600,000.00 | 272% |
| 69 | $ 431,905,094.77 | 4% | $ 449,181,298.56 | 1497% | 69 | $ 30,000,000.00 | 4% | $ 111,600,000.00 | $ 112,800,000.00 | 276% |
| 70 | $ 449,181,298.56 | 4% | $ 467,148,550.51 | 1557% | 70 | $ 30,000,000.00 | 4% | $ 112,800,000.00 | $ 114,000,000.00 | 280% |
| 71 | $ 467,148,550.51 | 4% | $ 485,834,492.53 | 1619% | 71 | $ 30,000,000.00 | 4% | $ 114,000,000.00 | $ 115,200,000.00 | 284% |
| 72 | $ 485,834,492.53 | 4% | $ 505,267,872.23 | 1684% | 72 | $ 30,000,000.00 | 4% | $ 115,200,000.00 | $ 116,400,000.00 | 288% |
| 73 | $ 505,267,872.23 | 4% | $ 525,478,587.12 | 1752% | 73 | $ 30,000,000.00 | 4% | $ 116,400,000.00 | $ 117,600,000.00 | 292% |
| 74 | $ 525,478,587.12 | 4% | $ 546,497,730.60 | 1822% | 74 | $ 30,000,000.00 | 4% | $ 117,600,000.00 | $ 118,800,000.00 | 296% |
| 75 | $ 546,497,730.60 | 4% | $ 568,357,639.83 | 1895% | 75 | $ 30,000,000.00 | 4% | $ 118,800,000.00 | $ 120,000,000.00 | 300% |
| 76 | $ 568,357,639.83 | 4% | $ 591,091,945.42 | 1970% | 76 | $ 30,000,000.00 | 4% | $ 120,000,000.00 | $ 121,200,000.00 | 304% |
| 77 | $ 591,091,945.42 | 4% | $ 614,735,623.24 | 2049% | 77 | $ 30,000,000.00 | 4% | $ 121,200,000.00 | $ 122,400,000.00 | 308% |
| 78 | $ 614,735,623.24 | 4% | $ 639,325,048.17 | 2131% | 78 | $ 30,000,000.00 | 4% | $ 122,400,000.00 | $ 123,600,000.00 | 312% |
| 79 | $ 639,325,048.17 | 4% | $ 664,898,050.09 | 2216% | 79 | $ 30,000,000.00 | 4% | $ 123,600,000.00 | $ 124,800,000.00 | 316% |

Kevin So v. Land Base
Calculation of Promised Returns

| | Compound Interest | | | | | Simple Interest | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Trade | Beg Balance | Period Return | End Balance | Cumulative Return | Trade | Capital | Period Return | Beg Balance | End Balance | Cumulative Return |
| | A | B | C | D | | E | F | G | H | I |
| | $C_{n-1}$ | | A*B | C/30m | | | | $H_{n-1}$ | G+(E*F) | (H/30m)-1 |
| 80 | $ 664,898,050.09 | 4% | $ 691,493,972.10 | 2305% | 80 | $ 30,000,000.00 | 4% | $ 124,800,000.00 | $ 126,000,000.00 | 320% |
| 81 | $ 691,493,972.10 | 4% | $ 719,153,730.98 | 2397% | 81 | $ 30,000,000.00 | 4% | $ 126,000,000.00 | $ 127,200,000.00 | 324% |
| 82 | $ 719,153,730.98 | 4% | $ 747,919,880.22 | 2493% | 82 | $ 30,000,000.00 | 4% | $ 127,200,000.00 | $ 128,400,000.00 | 328% |
| 83 | $ 747,919,880.22 | 4% | $ 777,836,675.43 | 2593% | 83 | $ 30,000,000.00 | 4% | $ 128,400,000.00 | $ 129,600,000.00 | 332% |
| 84 | $ 777,836,675.43 | 4% | $ 808,950,142.45 | 2697% | 84 | $ 30,000,000.00 | 4% | $ 129,600,000.00 | $ 130,800,000.00 | 336% |
| 85 | $ 808,950,142.45 | 4% | $ 841,308,148.14 | 2804% | 85 | $ 30,000,000.00 | 4% | $ 130,800,000.00 | $ 132,000,000.00 | 340% |
| 86 | $ 841,308,148.14 | 4% | $ 874,960,474.07 | 2917% | 86 | $ 30,000,000.00 | 4% | $ 132,000,000.00 | $ 133,200,000.00 | 344% |
| 87 | $ 874,960,474.07 | 4% | $ 909,958,893.03 | 3033% | 87 | $ 30,000,000.00 | 4% | $ 133,200,000.00 | $ 134,400,000.00 | 348% |
| 88 | $ 909,958,893.03 | 4% | $ 946,357,248.75 | 3155% | 88 | $ 30,000,000.00 | 4% | $ 134,400,000.00 | $ 135,600,000.00 | 352% |
| 89 | $ 946,357,248.75 | 4% | $ 984,211,538.70 | 3281% | 89 | $ 30,000,000.00 | 4% | $ 135,600,000.00 | $ 136,800,000.00 | 356% |
| 90 | $ 984,211,538.70 | 4% | $ 1,023,580,000.25 | 3412% | 90 | $ 30,000,000.00 | 4% | $ 136,800,000.00 | $ 138,000,000.00 | 360% |
| 91 | $ 1,023,580,000.25 | 4% | $ 1,064,523,200.26 | 3548% | 91 | $ 30,000,000.00 | 4% | $ 138,000,000.00 | $ 139,200,000.00 | 364% |
| 92 | $ 1,064,523,200.26 | 4% | $ 1,107,104,128.27 | 3690% | 92 | $ 30,000,000.00 | 4% | $ 139,200,000.00 | $ 140,400,000.00 | 368% |
| 93 | $ 1,107,104,128.27 | 4% | $ 1,151,388,293.40 | 3838% | 93 | $ 30,000,000.00 | 4% | $ 140,400,000.00 | $ 141,600,000.00 | 372% |
| 94 | $ 1,151,388,293.40 | 4% | $ 1,197,443,825.14 | 3991% | 94 | $ 30,000,000.00 | 4% | $ 141,600,000.00 | $ 142,800,000.00 | 376% |
| 95 | $ 1,197,443,825.14 | 4% | $ 1,245,341,578.14 | 4151% | 95 | $ 30,000,000.00 | 4% | $ 142,800,000.00 | $ 144,000,000.00 | 380% |
| 96 | $ 1,245,341,578.14 | 4% | $ 1,295,155,241.27 | 4317% | 96 | $ 30,000,000.00 | 4% | $ 144,000,000.00 | $ 145,200,000.00 | 384% |
| 97 | $ 1,295,155,241.27 | 4% | $ 1,346,961,450.92 | 4490% | 97 | $ 30,000,000.00 | 4% | $ 145,200,000.00 | $ 146,400,000.00 | 388% |
| 98 | $ 1,346,961,450.92 | 4% | $ 1,400,839,908.96 | 4669% | 98 | $ 30,000,000.00 | 4% | $ 146,400,000.00 | $ 147,600,000.00 | 392% |
| 99 | $ 1,400,839,908.96 | 4% | $ 1,456,873,505.32 | 4856% | 99 | $ 30,000,000.00 | 4% | $ 147,600,000.00 | $ 148,800,000.00 | 396% |
| 100 | $ 1,456,873,505.32 | 4% | $ 1,515,148,445.53 | 5050% | 100 | $ 30,000,000.00 | 4% | $ 148,800,000.00 | $ 150,000,000.00 | 400% |
| 101 | $ 1,515,148,445.53 | 4% | $ 1,575,754,383.35 | 5253% | 101 | $ 30,000,000.00 | 4% | $ 150,000,000.00 | $ 151,200,000.00 | 404% |
| 102 | $ 1,575,754,383.35 | 4% | $ 1,638,784,558.68 | 5463% | 102 | $ 30,000,000.00 | 4% | $ 151,200,000.00 | $ 152,400,000.00 | 408% |
| 103 | $ 1,638,784,558.68 | 4% | $ 1,704,335,941.03 | 5681% | 103 | $ 30,000,000.00 | 4% | $ 152,400,000.00 | $ 153,600,000.00 | 412% |
| 104 | $ 1,704,335,941.03 | 4% | $ 1,772,509,378.67 | 5908% | 104 | $ 30,000,000.00 | 4% | $ 153,600,000.00 | $ 154,800,000.00 | 416% |

Assumptions:

1. The principal to be invested is $30 million
2. There will be 2 trades per week for one year
3. The return will be 4% for each trade

# Exhibit 5

Kevin So v. Land Base
Analysis of Account Activity at HSCB London
[Sorted by Date in Native Currency]
[Red type signifies non-USD currency]

| Date | Payor / Payee | "Univest" 58947825 USD | "Edwards" 59099344 USD | "Mann" 59102753 USD | (POUNDS) | "Devonshire" 51499734 EURO | "Lamberhurst" 41357875 EURO | "5th Ave. Part." 81489747 EURO | Miscellaneous | Conv Pounds to Euro |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/21/04 | Univest Financial | 10,000,000.00 | | | | | | | | |
| 12/31/04 | Hamilton Aviation SL | (44,296.26) | | | | | | | Banco De Credito Balear, Palma De Mallorca, Spain | |
| 01/13/05 | Christian G. Carlsen | (300,000.00) | | | | | | | Nordea Bank, Denmark | |
| 01/14/05 | Heusser European SL | (290,090.98) | | | | | | | Banco De Credito Balear, Palma De Mallorca, Spain | |
| 02/02/05 | Land Base | (88,135.43) | | | | | | | "Commission on Trade" Union Bank, LA | |
| 02/02/05 | Univest Financial | (50,847.28) | | | | | | | | |
| 02/09/05 | Charles Martin Edwards | | 10,000,000.00 | | | | | | "Charles Martin Edwards" | |
| 02/18/05 | Refco Securities LLC | | (10,000,000.00) | | | | | | "FIC to 5th Avenue Partners Ltd Customer Acct 11022787" | |
| 02/18/05 | Refco Securities LLC | (9,990,000.00) | | | | | | | "FIC to 5th Avenue Partners Ltd Customer Acct 11022787" | |
| 02/28/05 | Robert W Mann | | | 5,000,030.00 | | | | | Robert William Mann/Retirement | |
| 03/15/05 | Hamilton Aviation SL | (50,000.00) | | | | | | | "Deposit on aircraft" | |
| 03/18/05 | Univest Financial | (6,250.00) | | | | | | | | |
| 03/18/05 | 5th Avenue Partners GmbH | | | | 2,250,000.00 (In Euros) | | | | Royal Bank of Scotland | |
| 03/22/05 | Liberal Democrat Campaign Fund | | | | (2,225,000.00) (In Euros) | | | | | |
| 03/29/05 | Univest Financial | (256,000.00) | | | | | | | | |
| 03/30/05 | Land Base | (402,240.00) | | | | | | | Royal Bank of Scotland, GBP 632,000 (conversion 1.8763) | |
| 03/30/05 | Liberal Democrat Campaign Fund | | | (1,385,821.60) | | | | | | |
| 03/30/05 | Robert W Mann Retirement | | | (128,000.00) | | | | | | |
| 03/31/05 | Premier Equity | | | (472,925.00) | | | | | "Equity investment" GBP 250,000 | |
| 04/20/05 | Aircraft Title Services | | | | | | | | Investment, Devonshire Capital Ltd as beneficiary | |
| 04/20/05 | [illegible] | | | (6,873.75) | | | | | "Payment of invoice 02885868" | |
| 04/20/05 | Bloomberg LP | | | | | | | | | |
| 04/21/05 | Univest Financial | (10,000,000.00) | | | | | | | "To Close" | |
| 04/26/05 | Univest Financial | (250,000.00) | | | | | | | Went to a different account than the $10M | |
| 04/26/05 | Land Base | (392,812.50) | | | | | | | "Commission" | |
| 04/26/05 | ADM Investor Services | | | | | | | | | |
| 04/29/05 | Hamilton Aviation SL | (10,000,000.00) | | | | | | | | |
| 05/05/05 | Robert W Mann Retirement | (245,459.23) | | | | | | | | |
| 05/12/05 | [illegible] | | | | (125,000.00) | | | | | |
| 05/12/05 | Land Base | (782,499.00) | | | | | | | "Trade Profit" | |
| 05/17/05 | Charles Martin Edwards, 'Forex' | | 1,155,000.00 | | | | | | "Profit" | |
| 05/19/05 | Charles Martin Edwards, 'Forex' | | 4,764.15 | | | | | | "Profit" | |
| 05/19/05 | Aircraft Title Services | | | (4,100,000.00) | | | | | "Remaining balance, Approx. 1000 dollars will follow..." | |
| 05/31/05 | "MR" | | 97,000.00 | | | | | | "Final Closing Balance" | |
| 05/31/05 | Charles Martin Edwards | | 741,218.38 | | | | | | "Premier 1 S/N RB 18 Registration N711AJ..." | |
| 06/01/05 | L.A. Pritchard Stockbrokers | | | (201,874.49) | | | | | From Credit Suisse, Zurich | |
| 06/01/05 | Refco Securities LLC | | (1,291,809.41) | | | | | | "Client Settlement" | |
| 06/10/05 | Robert W Mann Retirement | | | | 7,199,987.00 | | | | Amount in Euros is 5,808,782.91 | |
| 06/24/05 | Transfer | | | | (167,000.00) | | | | "Commission" Amount is Euros is 138,474.31 | |
| 06/27/05 | S Devonshire Capital Ltd | | | | (50,000.00) (In Pounds) | 76,410.00 | | | "Trade Profit" | 1.5282 |
| 06/27/05 | Land Base | | | | (50,000.00) (In Pounds) | 76,410.00 | | | "Trade Profit" | 1.5282 |
| 06/27/05 | Robert W Mann Retirement | | | | | | | | | |
| 06/27/05 | [illegible] | | | | | | | | | |
| 07/07/05 | ADM Investor Services | | | | (4,100,000.00) (In Euros) | | | | "Trade Profit" Amount in Euros is 1,009,190.92 | |
| 07/12/05 | Land Base | | | | 4,100,000.00 (In Euros) | | | | Beneficiary acct. #770365 | |
| 07/15/05 | Charles Martin Edwards | | 712,500.00 | | | | | | "Trade Profits" | |
| 07/18/05 | ADM Investor Services | | (678,249.00) (In Euros) | | (80,000.00) (In Pounds) | | | | | |
| 08/04/05 | Transfer | | | | (30,000.00) (In Pounds) | 44,175.00 | | | "Profit Trade 7" | 1.4725 |
| 08/04/05 | Robert W Mann Retirement | | (106,080.00) (In Pounds) | | | | | | "Profit Trade 7 BC 004" | |
| 08/04/05 | [illegible] | | | | | | | | | |

Kevin So v. Land Base
Analysis of Account Activity at HSCB London
(Sorted by Date in Native Currency)
(Red type signifies non-USD currency)

| Date | Payor / Payee | "Univest" 58947825 USD | "Edwards" 59099344 USD | "Mann" 59102753 POUNDS | [shaded] 589… POUNDS | "Devonshire" 53499734 EURO | "Lamberhurst" 41357875 EURO | "5th Ave. Part." 81489747 EURO | Miscellaneous | Conv. Pounds to Euro |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/04/05 | Devonshire Capital Ltd | | (In Pounds) | (30,000.00) | | 44,175.00 | | | | 1.4725 |
| 08/04/05 | Lamberhurst Developments Ltd | | (In Pounds) | (30,000.00) | | | 44,175.00 | | | 1.4725 |
| 08/04/05 | Lamberhurst Developments Ltd | | (In Pounds) | (30,000.00) | | | 44,175.00 | | | 1.4725 |
| 08/16/05 | Land Base | | (In Pounds) | (593,469.00) | | | | | | |
| 08/17/05 | 5th Avenue Partners Ltd | | (In Pounds) | (40,000.00) | | | | 59,516.00 | "Trade Profits 8*" | 1.4879 |
| 08/18/05 | Robert W Mann Retirement | (106,080.00) | | | | | | | "Profit Trade 7*" | |
| 08/22/05 | MIDLGB22 | 106,080.00 | | | | | | | "Rtn of yr P/D DD 04Aug05 Under Ref 7004085M00402398 …" | |
| 09/06/05 | Robert W Mann | | (93,820.00) | | | | | | "Profit Trade 8* in Euros it is 75,777.62" | |
| 09/06/05 | Kevin So | | | | (shaded) | | | | "Profit Trade 8* in Euros it is 455,408.64" | |
| 09/06/05 | Gco-Logo | | (In Euros) (1,298.78) | | | | | | "La Caixa, Barcelona" | |
| 09/20/05 | 5th Avenue Partners Ltd | | (In Pounds) | (80,000.00) | | | | 119,912.00 | | 1.4989 |
| 09/28/05 | 5th Avenue Partners Ltd | | (In Pounds) | (79,000.00) | | | | 117,386.10 | | 1.4859 |
| 10/04/05 | 5th Avenue Partners Ltd | | (In Pounds) | (25,000.00) | | | | 37,340.00 | | 1.4936 |
| | Subtotals | 9,080,870.46 | (3,175.88) | (1,813,933.84) | 4,747,981.75 | 241,170.00 | 88,350.00 | 334,154.10 | | |

# Exhibit 6

| Kevin So v. Land Base |
| Analysis of Account Activity at HSCB London |
| Date Order - Converted to USD |
| [Source: Wire Transfer Records] |
| (Red type signifies currency that was converted to USD currency) |

| Date | Payor / Payee | "Univest" 58947825 USD | "Edwards" 59099344 USD | "Mann" 59102753 USD | Converted to USD POUNDS | Converted to USD "Devonshire" 51499734 EURO | Converted to USD "Lamberhurst" 41357875 EURO | Converted to USD "5th Ave. Part." 81489747 EURO | Original Amount in Euro | Original Amount in Pounds |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/21/04 | Univest Financial | 10,000,000.00 | | | | | | | | |
| 12/31/04 | Hamilton Aviation SL | (44,296.26) | | | | | | | | |
| 01/13/05 | Christian G. Carlsen | (300,000.00) | | | | | | | | |
| 01/14/05 | Heusel European SL | (290,090.98) | | | | | | | | |
| 02/02/05 | Land Base | (38,135.43) | | | | | | | | |
| 02/02/05 | Univest Financial | (50,847.28) | | | | | | | | |
| 02/09/05 | Charles Martin Edwards | | 10,000,000.00 | | | | | | | |
| 02/18/05 | Refco Securities LLC | | (10,000.00) | | | | | | | |
| 02/18/05 | Refco Securities LLC | | (9,990,000.00) | | | | | | | |
| 02/28/05 | Robert W Mann | | | 5,000,030.00 | | | | | | |
| 03/15/05 | Hamilton Aviation SL | (50,000.00) | | | | | | | | |
| 03/18/05 | 5th Avenue Partners Gmbh | | | | 3,009,375.00 | | | | 2,250,000.00 | |
| 03/18/05 | Univest Financial | (6,250.00) | | | | | | | | |
| 03/22/05 | Liberal Democrat Campaign Fund | | | | (2,930,770.00) | | | | (2,225,000.00) | |
| 03/30/05 | Land Base | (402,240.00) | | | | | | | | |
| 03/30/05 | Liberal Democrat Campaign Fund | | | (1,185,821.60) | | | | | | |
| 03/30/05 | Robert W Mann Retirement | | | (128,000.00) | | | | | | |
| 03/30/05 | Univest Financial | (256,000.00) | | | | | | | | |
| 03/31/05 | Premier Equity | | | (472,925.00) | | | | | | |
| 04/20/05 | Bloomberg LP | | | (6,873.75) | | | | | | |
| 04/20/05 | [redacted] | | | | | | | | | |
| 04/21/05 | Univest Financial | (10,000,000.00) | | | | | | | | |
| 04/26/05 | ADM Investor Services | (10,000,000.00) | | | | | | | | |
| 04/26/05 | Land Base | (392,812.50) | | | | | | | | |
| 04/26/05 | Univest Financial | (250,000.00) | | | | | | | | |
| 04/29/05 | Hamilton Aviation SL | (245,459.23) | | | | | | | | |
| 05/05/05 | Robert W Mann Retirement | | | (125,000.00) | | | | | | |
| 05/12/05 | [redacted] | | | | | | | | | |
| 05/12/05 | Land Base | (782,499.00) | | | | | | | | |
| 05/17/05 | Charles Martin Edwards | | 1,155,000.00 | | | | | | | |
| 05/19/05 | Aircraft Title Services | | | (4,100,000.00) | | | | | | |
| 05/19/05 | Charles Martin Edwards | | 4,764.15 | | | | | | | |
| 05/31/05 | "MR" | | 97,000.00 | | | | | | | |
| 05/31/05 | Charles Martin Edwards | | 741,218.38 | | | | | | | |
| 06/01/05 | I.A. Pritchard Stockbrokers | (7,084,048.86) | | | | | | | | |
| 06/01/05 | Refco Securities LLC | | | | 7,199,987.00 | | | | | |
| 06/10/05 | Robert W Mann Retirement | | | | (167,000.00) | | | | | |
| 06/24/05 | Devonshire Capital Ltd | | | | (90,790.00) | 92,020.56 | | | 76,410.00 | (50,000.00) |
| 06/24/05 | Transfer | | | | (90,790.00) | 92,020.56 | | | 76,410.00 | (50,000.00) |

**Kevin So v. Land Base**

**Analysis of Account Activity at HSCB London**

**Date Order - Converted to USD**

(Source: Wire Transfer Records)

(Red type signifies currency that was converted to USD currency)

| Date | Payor / Payee | "Univest" 58947825 USD | "Edwards" 59099344 USD | "Mann" 59102753 USD | Converted to USD POUNDS | Converted to USD "Devonshire" 51499734 EURO | Converted to USD "Lamberhurst" 41357875 EURO | Converted to USD "5th Ave. Part." 81489747 EURO | Original Amount in Euro | Original Amount in Pounds |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/27/05 | Kevin So | | | | [shaded] | | | | | |
| 06/27/05 | Land Base | | (1,291,809.41) | | | | | | | |
| 06/27/05 | Robert W Mann Retirement | | | (201,874.49) | | | | | | |
| 07/07/05 | ADM Investor Services | | | | (4,891,710.00) | | | | (4,100,000.00) | |
| 07/12/05 | Land Base | | (678,249.00) | | | | | | | |
| 07/15/05 | Charles Martin Edwards | | 712,500.00 | | | | | | | |
| 07/18/05 | ADM Investor Services | | | | 4,935,170.00 | | | | 4,100,000.00 | |
| 08/04/05 | Devonshire Capital Ltd | | | | (53,352.00) | 54,503.12 | | | 44,175.00 | (30,000.00) |
| 08/04/05 | | | [shaded] | | | | | | | |
| 08/04/05 | Lamberhurst Developments Ltd | | | | (53,352.00) | | 54,503.12 | | 44,175.00 | (30,000.00) |
| 08/04/05 | Lamberhurst Developments Ltd | | | | (53,352.00) | | 54,503.12 | | 44,175.00 | (30,000.00) |
| 08/04/05 | Robert W Mann Retirement | | (106,080.00) | | | | | | | |
| 08/04/05 | Transfer | | | | (53,352.00) | 54,503.12 | | | 44,175.00 | (30,000.00) |
| 08/16/05 | Land Base | | | (593,469.00) | | | | | | |
| 08/17/05 | 5th Avenue Partners Ltd | | | | (72,412.00) | | | 73,567.73 | 59,516.00 | (40,000.00) |
| 08/18/05 | Robert W Mann Retirement | | (106,080.00) | | | | | | | |
| 08/22/05 | MIDLGB22 | | 106,080.00 | | | | | | | |
| 09/06/05 | | | | | [shaded] | | | | | |
| 09/06/05 | Robert W Mann | | | | (92,820.00) | | | | | |
| 09/08/05 | Go-Logo | | | | (1,613.60) | | | | (1,298.78) | |
| 09/20/05 | 5th Avenue Partners Ltd | | | | (144,376.00) | | | 145,729.05 | 119,912.00 | (80,000.00) |
| 09/28/05 | 5th Avenue Partners Ltd | | | | (139,600.90) | | | 141,051.14 | 117,386.10 | (79,000.00) |
| 10/04/05 | 5th Avenue Partners Ltd | | | | (43,890.00) | | | 44,501.81 | 37,340.00 | (25,000.00) |
| | **Subtotals** | 9,080,870.46 | (3,175.88) | (1,813,953.84) | 4,493,465.03 | 293,047.36 | 109,006.23 | 404,849.73 | | |

# Exhibit 7

Kevin So v. Land Base
Analysis of Account Activity at HSCB London
Payor . Payee Order - Converted to USD
(Source: Wire Transfer Records)
(Red type signifies currency that was converted to USD currency)

| Date | Payor / Payee | "Univest" 58947825 USD | "Edwards" 59099344 USD | "Mann" 59102753 USD | Converted to USD — "So???" 58947833 POUNDS | Converted to USD — "Devonshire" 51499734 EURO | Converted to USD — "Lamberhurst" 41357875 EURO | Converted to USD — "5th Ave. Part." 81489747 EURO | Grand Total USD |
|---|---|---|---|---|---|---|---|---|---|
| 05/31/05 | "MR" | | 97,000.00 | | | | | | 97,000.00 |
| | | | | | | | | | |
| 03/18/05 | 5th Avenue Partners Gmbh | | | | 3,009,375.00 | | | | 3,009,375.00 |
| 08/17/05 | 5th Avenue Partners Ltd | | | | (72,412.00) | | | 73,567.73 | 1,155.73 |
| 09/20/05 | 5th Avenue Partners Ltd | | | | (144,376.00) | | | 145,729.05 | 1,353.05 |
| 09/28/05 | 5th Avenue Partners Ltd | | | | (139,600.90) | | | 141,051.14 | 1,450.24 |
| 10/04/05 | 5th Avenue Partners Ltd | | | | (43,890.00) | | | 44,501.81 | 611.81 |
| | | | | | | | | | 3,013,945.83 |
| | | | | | | | | | |
| 04/26/05 | ADM Investor Services | (10,000,000.00) | | | | | | | (10,000,000.00) |
| 07/07/05 | ADM Investor Services | | | | (4,891,710.00) | | | | (4,891,710.00) |
| 07/18/05 | ADM Investor Services | | | | 4,935,170.00 | | | | 4,935,170.00 |
| | | | | | | | | | (9,956,540.00) |
| | | | | | | | | | |
| 05/19/05 | Aircraft Title Services | | | (4,100,000.00) | | | | | (4,100,000.00) |
| | | | | | | | | | |
| 04/20/05 | Bloomberg LP | | | (6,873.75) | | | | | (6,873.75) |
| | | | | | | | | | |
| 02/09/05 | Charles Martin Edwards | | 10,000,000.00 | | | | | | 10,000,000.00 |
| 05/17/05 | Charles Martin Edwards | | 1,155,000.00 | | | | | | 1,155,000.00 |
| 05/19/05 | Charles Martin Edwards | | 4,764.15 | | | | | | 4,764.15 |
| 05/31/05 | Charles Martin Edwards | | 741,218.38 | | | | | | 741,218.38 |
| 07/15/05 | Charles Martin Edwards | | 712,500.00 | | | | | | 712,500.00 |
| | | | | | | | | | 12,613,482.53 |
| | | | | | | | | | |
| 01/13/05 | Christian G. Carlsen | (300,000.00) | | | | | | | (300,000.00) |
| | | | | | | | | | |
| 06/24/05 | Devonshire Capital Ltd | | | | (90,790.00) | 92,020.56 | | | 1,230.56 |
| 08/04/05 | Devonshire Capital Ltd | | | | (53,352.00) | 54,503.12 | | | 1,151.12 |
| | | | | | | | | | 2,381.68 |
| | | | | | | | | | |
| 09/08/05 | Go-Logo | | | | (1,613.60) | | | | (1,613.60) |
| | | | | | | | | | |
| 12/31/04 | Hamilton Aviation SL | (44,296.26) | | | | | | | (44,296.26) |
| 03/15/05 | Hamilton Aviation SL | (50,000.00) | | | | | | | (50,000.00) |

**Kevin So v. Land Base**
**Analysis of Account Activity at HSCB London**
**Payor, Payee Order - Converted to USD**
(Source: Wire Transfer Records)
(Red type signifies currency that was converted to USD currency)

| Date | Payor / Payee | "Univest" 58947825 USD | "Edwards" 59099344 USD | "Mann" 59102753 USD | Converted to USD "Co (lo)" 58997833 POUNDS | "Devonshire" 51499734 EURO | "Lamberhurst" 41357875 EURO | "5th Ave. Part." 81489747 EURO | Grand Total USD |
|---|---|---|---|---|---|---|---|---|---|
| 04/29/05 | Hamilton Aviation SL | (245,459.23) | | | | | | | (245,459.23) |
| | | | | | (339,755.49) | | | | (339,755.49) |
| 01/14/05 | Heusel European SL | (290,090.98) | | | | | | | (290,090.98) |
| 06/01/05 | I.A. Pritchard Stockbrokers | (7,084,048.86) | | | | | | | (7,084,048.86) |
| 04/20/05 | Kevin So | 30,000,000.00 | | | | | | | 30,000,000.00 |
| 05/12/05 | Kevin So | (726,450.00) | | | | | | | (726,450.00) |
| 06/27/05 | Kevin So | | | | (1,214,056.47) | | | | (1,214,056.47) |
| 08/04/05 | Kevin So | | (637,520.00) | | | | | | (637,520.00) |
| 09/06/05 | Kevin So | | | | (557,830.00) | | | | (557,830.00) |
| | | | | | | | | | 26,864,143.53 |
| 08/04/05 | Lamberhurst Developments Ltd | | | | (53,352.00) | | 54,503.12 | | 1,151.12 |
| 08/04/05 | Lamberhurst Developments Ltd | | | | (53,352.00) | | 54,503.12 | | 1,151.12 |
| | | | | | | | | | 2,302.23 |
| 02/02/05 | Land Base | (38,135.43) | | | | | | | (38,135.43) |
| 03/30/05 | Land Base | (402,240.00) | | | | | | | (402,240.00) |
| 04/26/05 | Land Base | (392,812.50) | | | | | | | (392,812.50) |
| 05/12/05 | Land Base | (782,499.00) | | | | | | | (782,499.00) |
| 06/27/05 | Land Base | | (1,291,809.41) | | | | | | (1,291,809.41) |
| 07/12/05 | Land Base | | (678,249.00) | | | | | | (678,249.00) |
| 08/16/05 | Land Base | | | (593,469.00) | | | | | (593,469.00) |
| | | | | | | | | | (4,179,214.34) |
| 03/22/05 | Liberal Democrat Campaign Fund | | | | (2,930,770.00) | | | | (2,930,770.00) |
| 03/30/05 | Liberal Democrat Campaign Fund | | | (1,185,821.60) | | | | | (1,185,821.60) |
| | | | | | | | | | (4,116,591.60) |
| 08/22/05 | MIDLGB22 | | 106,080.00 | | | | | | 106,080.00 |
| 03/31/05 | Premier Equity | | | (472,925.00) | | | | | (472,925.00) |

Kevin So v. Land Base
Analysis of Account Activity at HSCB London
Payor - Payee Order - Converted to USD
(Source: Wire Transfer Records)
(Red type signifies currency that was converted to USD currency)

| Date | Payor / Payee | "Univest" 58947825 | "Edwards" 59099344 | "Mann" 59102753 | "So/B10" 58967833 | Converted to USD | "Devonshire" 51499734 | Converted to USD | "Lamberhurst" 41357875 | Converted to USD | "5th Ave. Part." 81489747 | Converted to USD | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | USD | USD | USD | POUNDS | | EURO | | EURO | | EURO | | USD |
| 02/18/05 | Refco Securities LLC | | (10,000.00) | | | | | | | | | | (10,000.00) |
| 02/18/05 | Refco Securities LLC | | (9,990,000.00) | | | | | | | | | | (9,990,000.00) |
| 06/01/05 | Refco Securities LLC | | | | 7,199,987.00 | 7,199,987.00 | | | | | | | 7,199,987.00 |
| | | | | | | | | | | | | | (2,800,013.00) |
| | | | | | | | | | | | | | |
| 02/28/05 | Robert W Mann | | | 5,000,030.00 | | | | | | | | | 5,000,030.00 |
| 03/30/05 | Robert W Mann | | | (128,000.00) | | | | | | | | | (128,000.00) |
| 05/05/05 | Robert W Mann | | | (125,000.00) | | | | | | | | | (125,000.00) |
| 06/10/05 | Robert W Mann | | | | | (167,000.00) | | | | | | | (167,000.00) |
| 06/27/05 | Robert W Mann | | | (201,874.49) | | | | | | | | | (201,874.49) |
| 08/04/05 | Robert W Mann | | (106,080.00) | | | | | | | | | | (106,080.00) |
| 08/18/05 | Robert W Mann | | (106,080.00) | | | | | | | | | | (106,080.00) |
| 09/06/05 | Robert W Mann | | | | | (92,820.00) | | | | | | | (92,820.00) |
| | | | | | | | | | | | | | 4,073,175.51 |
| | | | | | | | | | | | | | |
| 06/24/05 | Transfer | | | | | (90,790.00) | | 92,020.56 | | | | | 1,230.56 |
| 08/04/05 | Transfer | | | | | (53,352.00) | | 54,503.12 | | | | | 1,151.12 |
| | | | | | | | | | | | | | 2,381.68 |
| | | | | | | | | | | | | | |
| 12/21/04 | Univest Financial | 10,000,000.00 | | | | | | | | | | | 10,000,000.00 |
| 02/02/05 | Univest Financial | (50,847.28) | | | | | | | | | | | (50,847.28) |
| 03/18/05 | Univest Financial | (6,250.00) | | | | | | | | | | | (6,250.00) |
| 03/30/05 | Univest Financial | (256,000.00) | | | | | | | | | | | (256,000.00) |
| 04/21/05 | Univest Financial | (10,000,000.00) | | | | | | | | | | | (10,000,000.00) |
| 04/26/05 | Univest Financial | (250,000.00) | | | | | | | | | | | (250,000.00) |
| | | | | | | | | | | | | | (563,097.28) |

# Exhibit 8

| Kevin So v. Land Base | | | | | |
|---|---|---|---|---|---|
| Analysis of Refco Acct. #11022787 | | | | | |
| 5th Avenue Partners Limited | | | | | |
| | | | | | |
| Date | Cash In / (out) | Source / Recipient | Acct. # | Total Acct. Value | Notes |
| | | | | | |
| 02/01/05 | | | | 0.00 | |
| 02/18/05 | 9,990,000.00 | "Edwards" | 59099344 | 9,990,000.00 | |
| 02/18/05 | 10,000.00 | "Edwards" | 59099344 | 10,000,000.00 | |
| 02/28/05 | 1,452.21 | Interest | | 10,001,452.21 | |
| 03/31/05 | 4,789.84 | | | 10,006,242.05 | |
| 04/30/05 | 5,856.21 | | | 10,012,098.26 | 1 |
| 05/31/05 | (7,199,987.00) | "So / Lu" | 58947833 | 2,812,111.26 | |
| 05/31/05 | 8,390.47 | | | 2,820,501.73 | |
| 06/30/05 | 4,726.38 | | | 2,825,228.11 | |
| 07/29/05 | 5,000.02 | | | 2,830,228.13 | |
| 07/29/05 | 23,428.21 | Fixed Income Margin | | 2,853,656.34 | |
| 08/31/05 | 8,392.22 | | | 2,862,048.56 | |
| 08/31/05 | (7,000.00) | Net Margin Adj. | | 2,855,048.56 | |
| 10/13/05 | (2,855,180.94) | Offshore acct. of Michael Brown | | (132.38) | |
| | | | | | |
| Notes: | 1.  Imputed amount due to statement missing | | | | |

# Exhibit 9

| Kevin So v. Land Base | | | | | | |
|---|---|---|---|---|---|---|
| Analysis of ADM Acct. #770365 | | | | | | |
| 5th Avenue Partners Limited | | | | | | |
| (Sorted by Date - Native Currency) | | | | | | |
| | | | | | Combined Bal. | |
| Date | Cash In / (out) | Source / Recipient | Acct. # | Pounds | US$ | Euro |
| 04/01/05 | Beginning Balance | | | 0 | 0 | 0 |
| 04/26/05 | 10,000,000 | "Univest" | 58947825 | | | |
| 04/30/05 | 303,425 | Net Profit from trades | | 303,425 | 10,000,000 | 0 |
| 05/31/05 | 363,821 | Cash In | | | | |
| 05/31/05 | (363,821) | Cash Out | | | | |
| 05/31/05 | 130 | Interest | | | | |
| 05/31/05 | 3,297 | Interest | | | | |
| 05/31/05 | 275,735 | Net Profit from trades | | 579,290 | 10,003,297 | 0 |
| 06/30/05 | 197,246 | Cash In | | | | |
| 06/30/05 | (197,246) | Cash Out | | | | |
| 06/30/05 | 1,650 | Interest | | | | |
| 06/30/05 | 21,746 | Interest | | | | |
| 06/30/05 | (536,090) | Net Loss from trades | | | | |
| 06/30/05 | (1,856,171) | Net Loss from trades | | 44,850 | 8,168,873 | 0 |
| 07/31/05 | 813,738 | Cash In | | | | |
| 07/31/05 | (813,738) | Cash Out | | | | |
| 07/07/08 | 4,100,000 | Kevin So | 58947833 | | | |
| 07/18/05 | (4,100,033) | Kevin So | 58947833 | | | |
| 07/31/05 | (826) | Interest | | | | |
| 07/31/05 | 20,496 | Interest | | | | |
| 07/31/05 | 132,384 | Net Profit from trades | | 176,408 | 8,189,369 | (33) |
| 08/31/05 | 666,289 | Cash In | | | | |
| 08/31/05 | (666,289) | Cash Out | | | | |
| 08/31/05 | (215) | Interest | | | | |
| 08/31/05 | 19,698 | Interest | | | | |
| 08/31/05 | 2,018 | Interest | | | | |
| 08/31/05 | 200,310 | Net Profit from trades | | | | |
| 08/31/05 | 365,992 | Net Profit from trades | | 376,502 | 8,575,059 | 1,985 |
| 09/30/05 | 363,497 | Cash In | | | | |
| 09/30/05 | (363,497) | Cash Out | | | | |
| 09/30/05 | 875 | Interest | | | | |
| 09/30/05 | 21,347 | Interest | | | | |
| 09/30/05 | (485,306) | Interest | | | | |
| 09/30/05 | 1,513,009 | Net Profit from trades | | (107,929) | 10,109,414 | 1,985 |
| 10/03/05 | 16,250 | Net Profit from trades | | | | |
| 10/05/05 | 19,750 | Net Profit from trades | | | | |
| 10/06/05 | 21,400 | Net Profit from trades | | | | |
| 10/07/05 | 943 | Interest | | | | |
| 10/07/05 | 24,270 | Interest | | | | |
| 10/07/05 | (129,903) | Net Loss from trades | | | | |

| | | | | | Combined Bal. | | |
|---|---|---|---|---|---|---|---|
| Date | Cash In / (out) | Source / Recipient | Acct. # | Pounds | US$ | Euro |
| **Kevin So v. Land Base** | | | | | | | |
| **Analysis of ADM Acct. #770365** | | | | | | | |
| **5th Avenue Partners Limited** | | | | | | | |
| (Sorted by Date - Native Currency) | | | | | | | |
| 10/10/05 | (122,614) | Net Loss from trades | | | | |
| 10/11/05 | (19,900) | Net Loss from trades | | | | |
| 10/12/05 | (329,266) | Net Loss from trades | | | | |
| 10/13/05 | (1,107,425) | Net Loss from trades | | | | |
| 10/14/05 | (228,500) | Net Loss from trades | | | | |
| 10/18/05 | (1,014,209) | Net Loss from trades | | | | |
| 10/19/05 | 2,501,673 | Cash In | | | | |
| 10/19/05 | (2,501,673) | Cash Out | | | | |
| 10/21/05 | 3,001,403 | Net Profit from trades | | | | |
| 10/21/05 | (5,274,365) | Net Loss from trades | | | | |
| 10/25/05 | 2,369 | Net Profit from trades | | | | |
| 10/25/05 | (1,985) | Net Loss from trades | | 0 | 4,861,688 | 0 |

Source: Summary schedule identified as Appendix 4 to David Stern / Vantis Numerica LLP

# Exhibit 10

**Kevin So v. Land Base**
**Analysis of ADM Acct. #770365**
**5th Avenue Partners Limited**
**(Sorted by Date - Converted to USD)**

| Date | Cash In / (out) | Source / Recipient | Acct. # | Activity Pounds | Activity US$ | Activity Euro | Pounds to USD | In USD | Euro to USD |
|---|---|---|---|---|---|---|---|---|---|
| 04/01/05 | | Beginning Balance | | 0 | 0 | 0 | | | |
| 04/26/05 | 10,000,000 | "Univest" | 58947825 | | 10,000,000 | 0 | | 10,000,000 | |
| 04/30/05 | 303,425 | Net Profit from trades | | 303,425 | | 0 | 578,783 | | |
| 05/31/05 | 363,821 | Cash In | | 363,821 | | | 663,391 | | |
| 05/31/05 | (363,821) | Cash Out | | (363,821) | | | (663,391) | | |
| 05/31/05 | 130 | Interest | | 130 | | | 237 | | |
| 05/31/05 | 3,297 | Interest | | | 3,297 | | | 3,297 | |
| 05/31/05 | 275,735 | Net Profit from trades | | 275,735 | | 0 | 502,775 | | |
| 06/30/05 | 197,246 | Cash In | | 197,246 | | | 355,990 | | |
| 06/30/05 | (197,246) | Cash Out | | (197,246) | | | (355,990) | | |
| 06/30/05 | 1,650 | Interest | | 1,650 | | | 2,978 | | |
| 06/30/05 | 21,746 | Interest | | | 21,746 | | | 21,746 | |
| 06/30/05 | (536,090) | Net Loss from trades | | (536,090) | | | (967,535) | | |
| 06/30/05 | (1,856,171) | Net Loss from trades | | | (1,856,171) | 0 | | (1,856,171) | |
| 07/31/05 | 813,738 | Cash In | | 813,738 | | | 1,430,796 | | |
| 07/31/05 | (813,738) | Cash Out | | (813,738) | | | (1,430,796) | | |
| 07/07/08 | 4,100,000 | Kevin So | 58947833 | | 4,100,000 | | | | 4,972,890 |
| 07/18/05 | (4,100,033) | Kevin So | 58947833 | | (4,100,033) | | | | (4,972,930) |
| 07/31/05 | (826) | Interest | | (826) | | | (1,452) | | |
| 07/31/05 | 20,496 | Interest | | | 20,496 | | | 20,496 | |
| 07/31/05 | 132,384 | Net Profit from trades | | 132,384 | | | 232,771 | | |
| 08/31/05 | 666,289 | Cash In | | 666,289 | | | 1,190,392 | | |
| 08/31/05 | (666,289) | Cash Out | | (666,289) | | | (1,190,392) | | |
| 08/31/05 | (215) | Interest | | (215) | | | (384) | | |
| 08/31/05 | 19,698 | Interest | | | 19,698 | | | 19,698 | |
| 08/31/05 | 2,018 | Interest | | | | 2,018 | | | 2,467 |
| 08/31/05 | 200,310 | Net Profit from trades | | 200,310 | | | 357,874 | | |
| 08/31/05 | 365,992 | Net Profit from trades | | | 365,992 | | | 365,992 | |
| 09/30/05 | 363,497 | Cash In | | 363,497 | | | 640,773 | | |

Kevin So v. Land Base
Analysis of ADM Acct. #770365
5th Avenue Partners Limited
(Sorted by Date - Converted to USD)

| Date | Cash In / (out) | Source / Recipient | Acct. # | Activity Pounds | Activity US$ | Activity Euro | Pounds to USD | In USD | Euro to USD |
|---|---|---|---|---|---|---|---|---|---|
| 09/30/05 | (363,497) | Cash Out | | (363,497) | | | (640,773) | | |
| 09/30/05 | 875 | Interest | | 875 | | | 1,542 | | |
| 09/30/05 | 21,347 | Interest | | | 21,347 | | | 21,347 | |
| 09/30/05 | (485,306) | Net Loss from trades | | (485,306) | | | (855,497) | | |
| 09/30/05 | 1,513,009 | Net Profit from trades | | | 1,513,009 | | | 1,513,009 | |
| 10/03/05 | 16,250 | Net Profit from trades | | 16,250 | | | 28,667 | | |
| 10/05/05 | 19,750 | Net Profit from trades | | 19,750 | | | 34,770 | | |
| 10/06/05 | 21,400 | Net Profit from trades | | 21,400 | | | 37,707 | | |
| 10/07/05 | 943 | Interest | | 943 | | | 1,678 | | |
| 10/07/05 | 24,270 | Interest | | | 24,270 | | | 24,270 | |
| 10/07/05 | (129,903) | Net Loss from trades | | (129,903) | | | (231,084) | | |
| 10/10/05 | (122,614) | Net Loss from trades | | (122,614) | | | (215,960) | | |
| 10/11/05 | (19,900) | Net Loss from trades | | (19,900) | | | (34,946) | | |
| 10/12/05 | (329,266) | Net Loss from trades | | (329,266) | | | (575,030) | | |
| 10/13/05 | (1,107,425) | Net Loss from trades | | (1,107,425) | | | (1,939,655) | | |
| 10/14/05 | (228,500) | Net Loss from trades | | (228,500) | | | (401,406) | | |
| 10/18/05 | (1,014,209) | Net Loss from trades | | (1,014,209) | | | (1,779,430) | | |
| 10/19/05 | 2,501,673 | Cash In | | 2,501,673 | | | 4,379,679 | | |
| 10/19/05 | (2,501,673) | Cash Out | | (2,501,673) | | | (4,379,679) | | |
| 10/21/05 | 3,001,403 | Net Profit from trades | | 3,001,403 | | | 5,324,489 | | |
| 10/21/05 | (5,274,365) | Net Loss from trades | | | (5,274,365) | | | (5,274,365) | |
| 10/25/05 | 2,369 | Net Profit from trades | | | 2,369 | | | 2,369 | |
| 10/25/05 | (1,985) | Net Loss from trades | | | | (1,985) | | | (2,379) |

Source: Summary schedule identified as Appendix 4 to David Stern / Vantis Numerica LLP

# Exhibit 11

| | | | Pounds | In | Euro | Grand |
|---|---|---|---|---|---|---|
| Date | Source / Recipient | Acct. # | to USD | USD | to USD | Total |
| | | | | | | |
| 05/31/05 | Cash In | | 663,391 | | | 663,391 |
| 06/30/05 | Cash In | | 355,990 | | | 355,990 |
| 07/31/05 | Cash In | | 1,430,796 | | | 1,430,796 |
| 08/31/05 | Cash In | | 1,190,392 | | | 1,190,392 |
| 09/30/05 | Cash In | | 640,773 | | | 640,773 |
| 10/19/05 | Cash In | | 4,379,679 | | | 4,379,679 |
| | | | | | | 8,661,020 |
| | | | | | | |
| 05/31/05 | Cash Out | | (663,391) | | | (663,391) |
| 06/30/05 | Cash Out | | (355,990) | | | (355,990) |
| 07/31/05 | Cash Out | | (1,430,796) | | | (1,430,796) |
| 08/31/05 | Cash Out | | (1,190,392) | | | (1,190,392) |
| 09/30/05 | Cash Out | | (640,773) | | | (640,773) |
| 10/19/05 | Cash Out | | (4,379,679) | | | (4,379,679) |
| | | | | | | (8,661,020) |
| | | | | | | |
| 05/31/05 | Interest | | 237 | | | 237 |
| 05/31/05 | Interest | | | 3,297 | | 3,297 |
| 06/30/05 | Interest | | 2,978 | | | 2,978 |
| 06/30/05 | Interest | | | 21,746 | | 21,746 |
| 07/31/05 | Interest | | | 20,496 | | 20,496 |
| 08/31/05 | Interest | | (384) | | | (384) |
| 08/31/05 | Interest | | | 19,698 | | 19,698 |
| 09/30/05 | Interest | | 1,542 | | | 1,542 |
| 09/30/05 | Interest | | | 21,347 | | 21,347 |
| 10/07/05 | Interest | | 1,678 | | | 1,678 |
| 10/07/05 | Interest | | | 24,270 | | 24,270 |
| 07/31/05 | Interest | | (1,452) | | | (1,452) |
| 08/31/05 | Interest | | | | 2,467 | 2,467 |
| | | | | | | 117,919 |
| | | | | | | |
| 07/18/05 | Kevin So | 58947833 | | | (4,972,930) | (4,972,930) |
| 07/07/08 | Kevin So | 58947833 | | | 4,972,890 | 4,972,890 |
| | | | | | | (40) |
| | | | | | | |
| 06/30/05 | Net Loss from trades | | (967,535) | | | (967,535) |
| 06/30/05 | Net Loss from trades | | | (1,856,171) | | (1,856,171) |
| 09/30/05 | Net Loss from trades | | (855,497) | | | (855,497) |
| 10/07/05 | Net Loss from trades | | (231,084) | | | (231,084) |
| 10/10/05 | Net Loss from trades | | (215,960) | | | (215,960) |

Kevin So v. Land Base
Analysis of ADM Acct. #770365
5th Avenue Partners Limited
(Sorted by Source / Recipient)

| | | | Pounds | In | Euro | Grand |
|---|---|---|---|---|---|---|
| Date | Source / Recipient | Acct. # | to USD | USD | to USD | Total |
| | | | | | | |
| 10/11/05 | Net Loss from trades | | (34,946) | | | (34,946) |
| 10/12/05 | Net Loss from trades | | (575,030) | | | (575,030) |
| 10/13/05 | Net Loss from trades | | (1,939,655) | | | (1,939,655) |
| 10/14/05 | Net Loss from trades | | (401,406) | | | (401,406) |
| 10/18/05 | Net Loss from trades | | (1,779,430) | | | (1,779,430) |
| 10/21/05 | Net Loss from trades | | | (5,274,365) | | (5,274,365) |
| 10/25/05 | Net Loss from trades | | | | (2,379) | (2,379) |
| | | | | | | (14,133,459) |
| | | | | | | |
| 04/30/05 | Net Profit from trades | | 578,783 | | | 578,783 |
| 05/31/05 | Net Profit from trades | | 502,775 | | | 502,775 |
| 07/31/05 | Net Profit from trades | | 232,771 | | | 232,771 |
| 08/31/05 | Net Profit from trades | | 357,874 | | | 357,874 |
| 08/31/05 | Net Profit from trades | | | 365,992 | | 365,992 |
| 09/30/05 | Net Profit from trades | | | 1,513,009 | | 1,513,009 |
| 10/03/05 | Net Profit from trades | | 28,667 | | | 28,667 |
| 10/05/05 | Net Profit from trades | | 34,770 | | | 34,770 |
| 10/06/05 | Net Profit from trades | | 37,707 | | | 37,707 |
| 10/21/05 | Net Profit from trades | | 5,324,489 | | | 5,324,489 |
| 10/25/05 | Net Profit from trades | | | 2,369 | | 2,369 |
| | | | | | | 8,979,205 |
| | | | | | | |
| 04/26/05 | Univest | 58947825 | | 10,000,000 | | 10,000,000 |
| | | | | | | |
| Source: Summary schedule identified as Appendix 4 to David Stern / Vantis Numerica LLP | | | | | | |

Kevin So v. Land Base
Analysis of ADM Acct. #770365
5th Avenue Partners Limited
(Sorted by Source / Recipient)