# EXHIBIT 5

Haig Kalbian (Admitted *pro hac vice*)
Mary M. Baker (Admitted *pro hac vice*)
D. Michelle Douglas (CA Bar No. 190248)
Aaron Knights (Admitted *pro hac vice*)
KALBIAN HAGERTY L.L.P.
The Brawner Building
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone:    (202) 223-5600
Facsimile: (202) 223-6625
E-mail:    hkalbian@kalbianhagerty.com
           mmb@kalbianhagerty.com
           mdouglas@kalbianhagerty.com
           aknights@kalbianhagerty.com

Louis R. Miller, Esq. (CA Bar No. 54141)
Alexander Frid, Esq. (CA Bar No. 216800)
Miller Barondess, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Phone:    (310) 552-4400
Facsimile:  (310) 552-8400
E-mail:    smiller@millerbarondess.com
           sfrid@millerbarondess.com

*Counsel for Plaintiff Kevin So*

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
(Western Division-Los Angeles)

| | |
|---|---|
| KEVIN SO, | CASE NO. CV 08-3336 DDP (AGRx) |
| Plaintiff, | DECLARATION OF JANET TAN |
| v. | |
| LAND BASE, LLC, et al. | |
| Defendants. | |

Janet Tan, pursuant to 28 U.S.C. § 1746, being duly sworn, deposes and says as follows:

1.    My name is Janet Tan. I am over twenty-one (21) years of age. I am a citizen of the United States and a resident of the Commonwealth of Virginia. I have

1 personal knowledge of and am competent to testify as to the facts stated herein, which are

2 true and accurate.

3       2.    I am a professional translator and interpreter. I am fluent in English and

4 Chinese (Mandarin and Cantonese). I have earned a Bachelor of Fine Arts in Chinese

5 Language and Literature from Jinan University in China where my studies were conducted

6 in the Chinese language, and a Master of Fine Arts from Brown University and Master of

7 Business Administration from St. John's University where my studies were conducted in

8 English.

9       3.    I am qualified to translate from English to Chinese (Mandarin and Cantonese)

10 and back to English. The services I provide include translation, review, proofreading,

11 editing, simultaneous and consecutive interpretation for conferences, seminars,

12 depositions, and court hearings.

13       4.    I have worked as a translator for 20 years. I have provided translation and

14 interpretation services in federal courts in Washington, D.C., and state courts in Maryland,

15 and Virginia. From July of 2004 through August of 2008, I was Coordinator of

16 Translation Services of the Department of State where I was in charge of translation

17 requests from the State Department, White House and other federal agencies, and I was

18 responsible for the quality control of Chinese translations.

19       5.    A true and correct copy of my *curriculum vitae* further setting forth my

20 background and experience is attached as Exhibit A to this Declaration.

21       6.    A copy of the Declaration of Kevin So in Support of Plaintiff's Memorandum

22 of Points and Authorities in Opposition to Defendants Kevin Kondas, Mira Meltzer, KM

23 & Associates International, LLC, KB&M Projects International, LLC, CTL Projects

24 International, LLC's Motion for Summary Judgment ("Declaration"), in Chinese, is

25 attached hereto as Exhibit B. I hereby certify that I translated the Declaration from

26 Chinese to English. The Declaration I translated from Chinese to English is attached

27 hereto as Exhibit C.

28

7.     To the best of my ability the translation I rendered is a true and accurate translation. I further certify that I am competent in both Chinese and English to render and certify such translation.

I declare, under penalty of perjury of the laws of the United States, that the foregoing is true and correct.

**FURTHER AFFIANT SAYETH NOT.**

Executed on this 1st day of June, 2010, in Falls Church, Virginia.


_____
Janet Tan



# JANET TAN

142 Spring Court
Falls Church, VA 22046
(703) 509-1319 (cell)  (703) 534-0248 (home)   jdtan98@gmail.com

## <u>Professional Translator and Interpreter</u>

**Language:** English/Chinese (Mandarin and Cantonese)/English

**Type of Translation and Interpretation:** Translation, review, proofreading, editing, transcription and subtitling (audio and video), conference, seminar, town hall meeting, deposition, court hearing, teleconference.

**Subject Specialized:** Legal and government documents, business and finance, literature, journalism, entertainment, teaching material,  medical equipment and medical/healthcare.

**Clients:** Federal government agencies and contractors, publishing houses, National TV and radio stations, business companies and associations, insurances companies, non-profit organizations, and law firms.

**Most Recent Jobs** :  interpreting for Dalai Lama's conference with the House Speaker and other VIPs, Georgetown University's meetings with Chinese ministers, Federal court, Maryland district court hearing, Virginian district Workers Compensation Commission hearing, and DC government conference. Translating for DC Major's office, DC law firms, DOJ and DOC projects.

**Clearance:** Secret (DOD, DOS)

**Years of working as a freelance translator and interpreter:** 20

## <u>Employment Record</u>

**July 2004 – August 2008,** Translation Coordinator, Translation Services of the
Department of State, Washington D.C.

In charge of translation requests from the State Department, White House and other federal agencies; delegating translation assignments in Chinese, Russian and Arabic languages; translating and reviewing Chinese language text and maintaining quality control on Chinese translations. (Currently still working for the same office as a contractor)

**May 2003 – July 2004:**   Acting Director, Cantonese Service, Radio Free Asia
Washington D.C.

Managed a fifteen-member broadcasting team including in-house staff, overseas contractors and stringers; organized daily on-air programs: news, features, commentary, talk show, and a hotline call-in show; edited and scheduled all broadcasting reports; filed administrative and management reports.

**August 2002 – May 2003:** Senior Editor, Cantonese Service, Radio Free Asia,
Washington D.C.
Organized daily programs; conducted special investigative news reports; edited news, features, and stringer reports.

**Oct. 1999 – August 2002:** Broadcaster, Cantonese Service, Radio Free Asia,
Washington D.C.
Translated and adopted news from English news media; produced feature stories and investigative news reports.

## Education

**Master of Fine Arts** (Writing)        Brown University, Rhode Island.

**Master of Business Administration** (Finance)    St. John's University, New York

**Bachelor of Fine Arts** (Chinese Language and Literature) Jinan University, China

## Additional Information

**Washing DC Community Legal Interpreter Bank contract interpreter
National Geographic Television & Film contract translator**

**Translation publications:**

- "Spanking The Maid" (from English to Chinese) by Robert Coover, Hunan Fine
Arts Publishing House, 1998.

- "The Soul of The Firm" (from English to Chinese) by C. William Pollard. Beijing
Guanghua Publishing House, 1997.

**Samples of Translation Work for the US government quoted from the State Department Translation Services' Weekly reports:**

"Janet Tan finished reviewing a contractor's 56-page into Chinese translation called 'The Measurement and Management of Mortgage Credit Risk in the U.S.,' and sent it out to HUD.  Janet also received glowing words of praise from the Department of Energy for her recent work on a US/China Action Plan.  Janet did much of the work needed to bring the Chinese and English texts of the Plan into conformity during the night of September 17th.  As our client put it: 'Her efforts were a tremendous asset to

our Office's being able to jointly sign the Action Plan with the Chinese…please thank her for a job well done.'  This is just another example of Janet's tireless efforts to ensure that the Division maintains a top-quality Chinese translation program. "

"A Commerce Department expert who asked to review our Chinese version of the US Foreign Corrupt Practices Act (FCPA) proclaimed the LS translation to be "excellent." LS contractors Hsia and Janet Tan deserve the kudos for tackling that very technical text."

**B**

1 | Haig Kalbian (Admitted *pro hac vice*)
  | Mary M. Baker (Admitted *pro hac vice*)
2 | D. Michelle Douglas (CA Bar No. 190248)
  | Aaron Knights (Admitted *pro hac vice*)
3 | KALBIAN HAGERTY L.L.P.
  | The Brawner Building
4 | 888 17th Street, N.W., Suite 1000
  | Washington, D.C. 20006
5 | Phone:     (202) 223-5600
  | Facsimile: (202) 223-6625
6 | E-mail:    hkalbian@kalbianhagerty.com
  |            mmb@kalbianhagerty.com
7 |            mdouglas@kalbianhagerty.com
  |            aknights@kalbianhagerty.com
8 |
9 | Louis R. Miller, Esq. (CA Bar No. 54141)
  | Alexander Frid, Esq. (CA Bar No. 216800)
10 | Miller Barondess, LLP
   | 1999 Avenue of the Stars, Suite 1000
11 | Los Angeles, California 90067
   | Phone:     (310) 552-4400
12 | Facsimile: (310) 552-8400
   | E-mail:    smiller@millerbarondess.com
13 |            sfrid@millerbarondess.com

*Counsel for Plaintiff Kevin So*

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
(Western Division-Los Angeles)

| | |
|---|---|
| KEVIN SO,<br><br>　　　　　原告<br><br>v.<br><br>LAND BASE, LLC, et al.<br><br>　　　　　被告 | CASE NO. CV 08-3336 DDP (AGRx)<br><br>**KEVIN SO 的声明原告观点和理由备忘录：反对被告 KEVIN KONDAS, MIRA MELTZER, KM & ASSOCIATES INTERNATIONAL, LLC, AND CTL PROJECTS INTERNATIONAL, LLC 的即决裁判动议** |

Kevin So, 根据美国法典 28 U.S.C. § 1746, 在此正式立誓作证词如下:

Declaration of Kevin So in Support of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants Kevin Kondas, Mira Meltzer, KM & Associates International, LLC, KB&M Projects International, LLC and CTL Projects International, LLC's Motion for Summary Judgment

1. 　我的名字是 Kevin So,我已经超过二十一岁(21)。我具备个人的认识和有能力就以下真实无误的事实作证。

2. 　我是一个中国公民和香港居民。我是以上提及诉讼的原告。我在一个被称为 "私人配售项目"的投资骗局中遭受巨大损失。我提交这份声明来支持原告反对被告 Kevin Kondas, Mira Meltzer, KM & Associates International, LLC, KB&M Projects International, LLC and CTL Projects International, LLC 提出的即决裁判动议 ("反对动议").

3. 　Henry Yang ("Yang") 和 Lucy Lu ("Lu")是本诉讼里的被告，2004 年 4 月左右他们被介绍给我的商业伙伴和关系 Birui Wang ("Wang")。之后 Yang 和 Lu 开始和 Ms. Wang 和我讨论投资。本诉讼涉及的投资的百分之四十属于我的商业伙伴 Ms. Wang。Ms. Wang 为了这个案子的诉讼将她的投资部分的权利委托给我 。在我的损失发生前, 我和 Yang 和 Lu 结成商业关系，因为他们所起的作用，我同意就他们介绍来的任何投资的所发生的任何利润支付利润分成。 　在 2005 年 2 月 11 日左右，我提供了一份名为"签字授权和决议" ("决议")的文件，授权 Lu 代表我的利益。反对动议展示件 7 是本决议的真正无误复印件。

4. 　我在签署该决议之时并没有怀疑 Lu 是诈骗我的同谋一伙。

5. 　我知道 Lu 后来在 2005 年 3 月 31 日左右假造了一份名为 "签字代理和授权宣誓"。 Lu 利用这份宣誓书，完全控制了寻找投资的处理所有来往交流、出席会议和根据她自己的需要决定告诉我什么信息。一份 Lu 假造的代理宣誓的真正无误的复印件作为反对 动议展示件 32 附上。

6. 　Yang 和 Lu 多次向我保证，他们代表我所做的任何投资,包括私人配售项目都会是安全和我的本金不会有风险。 在 2005 年 2、3 月左右, Lu 向我介绍了一个据我所知叫作私人配售项目的投资机会。 她将这个项目描写成为由一个有技术的债券交易员进行的债券交易投资，机会极其难得，债券交易员会做很多交易，每次交易只产生很小利润,但是频繁交易的总和产生高利润。 Lu 还告诉我说，我的资金会受到 HSBC 保护，是它所支持的投资项目，并且有象英

2

国银行、证券交易所和世界银行这样的权力机关的监督。她还告诉我她已经咨询过专业投资人士，他们向她保证这是真正的投资机会。我根据这些介绍做了参与投资决定，尤其是资金会受到 HSBC 保护并且有权力机关监视。我现在才知道他们没有告诉我他们所谓投资涉及的巨大风险。

7.　　在 2005 年 4 月，Lu 在伦敦出席了和 Land Base 私人配售项目相关的会议。我在 2005 年 4 月左右知道 Lu 到伦敦出席这些会议，Lu 告诉我这些会议是和美国联邦储蓄银行的一个代表和交易员会面。据我所知，Lu 在伦敦和 Robert Minton, Keith Millar, Boris Lopatin ，Michael Brown 等人都见了面。 Lu 还签署了一份名为"参与者受益私人企业资产交换（Private Enterprise Assets Exchange Benefits Participation Agreement）合同，我所知也叫 Land Base Agreement。她以我的名义做的此事。反对动议展示件 17 是 Land Base Agreement 的真正无误的复印本。Lu 还拿到并转交给我一份有 HSBC 盖章的不可撤销银行指示信，由 Lopatin 和 Brown 指示 HSBC 保护我的投资本金。这封信增加了我参加私人配售项目的信心，也和 Lu 说过的 HSBC 会保护我的资金一致。展示件 38 是该银行指示信的真正无误的复印件。

8.　　这些会议之后，我独立向 HSBC 核实 了 Michael Brown 是一个可靠的客户，于是决定投资。我再次被 Lu 保证说我的资金是单独存放在一个 "无耗损" 帐户里,并且有将资金从我的 HSBC 香港帐户直接电汇到 HSBC 伦敦这样一个帐户里的指示。我后来才知道 Michael Brown 有办法将我的资金转到 Brown 控制的一个帐户里。

9.　　在我把我的资金存入伦敦 HSBC 作私人配售项目之后，我知道 Brown 把我的钱的大部分转给了 Land Base 和其他人。

10.　　我知道 Land Base 向 KM&A 和它的成员，包括 Mira Meltzer 和 Kevin Kondas 付了 Michael Brown 用我的资金给 Land Base 的钱。直到我的律师在本诉讼 2008 年 11 月左右从联合银行取得银行记录，我才知道 Land Base 付给 KM&A 这些钱。这些记录显示了 Land Base 给 KM&A 的付款。

11.　我现在知道 HSBC 在 2005 年 11 月或者 12 月提出诉讼, 包括其它事务, 向法庭寻求一个裁决, 要使他们对我在私人配售里的损失免除责任。 HSBC 的一个代表在 2005 年 11 月左右和我联系, 问我一些关于 Michael Brown 和他的项目的问题。当我就 HSBC 这个电话向 Lu 咨询, Lu 告诉我, 她和 Lopatin 讨论过了, 这个电话证实了 HSBC 和 Brown 之间有问题和投资到 HSBC 的资金是安全的。她之后一再就这个信息证实。我要到 2006 年 3、4 月左右才获知我的资金被盗。 2006 年 3、4 月左右, 我获知 Lu 在没有知会我或者获得我授权的情况下, 已经以我的名义在 2005 年 10、11 月左右雇用了英国律师。

12.　到 2006 年 3 月左右, Lu 和我联系关于雇用美国律师 Leonard Suchanek 事宜。她告诉我, 该律师是被 Boris Lopatin 推荐的, 他是美国一个很有权力的法官, 由 Boris Lopatin 推荐给她。 Lu 和我在 2006 年 9 月左右雇用了 Suchanek, 但是他已经在同年 7 月就开始为我们工作。他对我的代理是由他的助手 Meltzer 协助进行的。

13.　Suchanek 一直到 2008 年 1 月都是我的代理。在他代理我的其间, 他一再告诉我说私人配售项目是一个合法的投资项目, Brown 有执行过产生大量利润的交易。 Suchanek 告诉我, 因为 Brown 盗用了我的本金和交易产生的利润, 我可以期待回收的资金在 1.6 亿到 3 亿美元之间。附件展示件 31 是 Suchanek 在 2007 年 8 月 30 日如此向我解释的信件的真实准确的原件复印件。我相信了 Suchanek 告诉我的关于私人配售项目是合法投资而 Michael Brown 进行了交易并且产生了他后来盗走利润的说法。

14.　2007 秋天, 我问 Suchanek, Kondas 和 KM&A 是否参与了 Brown 对我的诈骗, 他向我保证 Kondas 和 KM&A 没有问题和他们没有参与 Brown 的任何阴谋。事实上从 2007 年夏天到 2008 年 1 月他代理我的其间, Suchanek 从来没有告诉过我说我有可能对任何本案的被告要求索赔, 这些人包括了 Kondas, Meltzer, KM&A, CTL 或者 KB&M。 Suchanek 还多次向我保证 Land Base 和 Lopatin 是合法的。 我知道在 2007 年 12 月前后, Meltzer 告诉我的商业伙伴

Declaration of Kevin So in Support of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants Kevin Kondas, Mira Meltzer, KM & Associates International, LLC, KB&M Projects International, LLC and CTL Projects International, LLC's Motion for Summary Judgment

1  Birui Wang 说 Meltzer 她已经从私人配售投资项目中获金钱收益。Birui Wang 把

2  这信息告诉我，我这时是第一次听说 Meltzer 女士从诈骗中收到了钱。

3      15.  在等待英国诉讼进展其间，我获知 Lu 曾经制造了假文件和将假文件

4  上交给了法庭，这些文件包括一份签了我的名字的假证词。她在 2006 年 8 月向英

5  国法庭提交的这份假证词。据我所知，Lu 做的这份假证词也提交给了本法庭以

6  支持 Meltzer, KM&A, KB&M 和 CTL 提出的即决裁判动议。Lu 假造的证词里包

7  括的假信息有关于 Lu 和 So 本人和 So 的家庭的关系，和 Lu 就投资给诈骗阴谋

8  的 3 千万美元股权部分的假冒认领。我在 2007 年 8 月的当时通知了 Meltzer 和

9  Suchanek，告知他们 Lu 有假造我的证词。附上展示件 25 是 Meltzer 在 2007 年 9

10  月 5 日给我的邮件的真实无误的复印件。附件展示件 26 是 Suchanek 于 2007 年

11  9 月 12 日给我的邮件的真实无误的复印件。Suchanek 没有向英国法庭去做任何

12  事情纠正我的证词，包括通知 Antony Brown——Bivonas 律师行的律师，他是我在英

13  国诉讼的主要负责人。

14      16.  我声明根据美国法律若作假证会被惩罚，以上所叙均为事实无误。

16  本证人无误，二零一零年五月二十五日于中国广州

20  Kevin So

Declaration of Kevin So in Support of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants Kevin Kondas, Mira Meltzer, KM & Associates International, LLC, KB&M Projects International, LLC and CTL Projects International, LLC's Motion for Summary Judgment

C

Haig Kalbian (Admitted *pro hac vice*)
Mary M. Baker (Admitted *pro hac vice*)
D. Michelle Douglas (CA Bar No. 190248)
Aaron Knights (Admitted *pro hac vice*)
KALBIAN HAGERTY L.L.P.
The Brawner Building
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone:     (202) 223-5600
Facsimile: (202) 223-6625
E-mail:    hkalbian@kalbianhagerty.com
           mmb@kalbianhagerty.com
           mdouglas@kalbianhagerty.com
           aknights@kalbianhagerty.com

Louis R. Miller, Esq. (CA Bar No. 54141)
Alexander Frid, Esq. (CA Bar No. 216800)
Miller Barondess, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Phone:     (310) 552-4400
Facsimile: (310) 552-8400
E-mail:    smiller@millerbarondess.com
           sfrid@millerbarondess.com

Counsel for Plaintiff Kevin So

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
(Western Division-Los Angeles)

| | |
|---|---|
| KEVIN SO,<br><br>          Plaintiff,<br><br>v.<br><br>LAND BASE, LLC, et al.<br><br>          Defendants. | CASE NO. CV 08-3336 DDP (AGRx)<br><br>**DECLARATION OF KEVIN SO PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS KEVIN KONDAS, MIRA MELTZER, KM & ASSOCIATES INTERNATIONAL, LLC, AND CTL PROJECTS INTERNATIONAL, LLC MOTION FOR SUMMARY JUDGMENT** |

Kevin So, pursuant to 28 U.S.C. § 1746, being duly sworn, deposes and says as follows:

1.      My name is Kevin So.  I am over twenty-one (21) years of age.  I have personal knowledge of and am competent to testify as to the facts stated herein, which are true and accurate.

2.      I am a Chinese citizen and resident of Hong Kong.  I am the plaintiff in the above-captioned action.  I sustained substantial losses in an investment scheme known as the "Private Placement Project."  I provide this declaration in support of Plaintiff's Opposition to Defendants Kevin Kondas, Mira Meltzer, KM & Associates International, LLC, KB&M Projects International, LLC and CTL Projects International, LLC's Motion for Summary Judgment ("Opposition").

3.      Henry Yang ("Yang") and Lucy Lu ("Lu"), who are defendants in this action, were introduced to my business partner and associate, Birui Wang ("Wang"), in or around April of 2004.  Thereafter, Yang and Lu began discussing potential investments with Ms. Wang and me.  Forty percent of the funds eventually invested that are the subject of this case belonged to my business partner, Ms. Wang.  Ms. Wang has assigned her rights to her portion of the investment to me for the purposes of litigating this case.  Prior to incurring my losses, I entered into a business relationship with Yang and Lu.  For their role, I agreed to pay them a portion of any profits attained on any investment they located.  On or about February 21, 2005, I provided a document titled "Resolution and Authorization of Signatory" ("Resolution"), which authorized Lu to act in my interests.  A true and correct copy of this Resolution is Exhibit 7 to the Opposition.

4.      At the time I executed the Resolution, I did not suspect that Lu was part of a conspiracy to defraud me.

5.      I learned that Lu later forged a document titled "Affidavit of Representation and Authorization of Signatory" on or about March 31, 2005.  Lu used this affidavit to

Declaration of Kevin So in Support of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants Kevin Kondas, Mira Meltzer, KM & Associates International, LLC, KB&M Projects International, LLC and CTL Projects International, LLC's Motion for Summary Judgment

1  take complete control over the effort to find an investment by handling all

2  correspondence, attending meetings, and deciding what information to share with me

3  regarding her efforts. A true and correct copy of the Affidavit of Representation, which

4  Lu forged, is attached as Exhibit 32 to the Opposition.

5        6.    Yang and Lu on many occasions assured me that any investment they would

6  pursue on my behalf, including the Private Placement Project, would be safe and that my

7  capital contribution would not be at risk. In February and March of 2005, Lu presented

8  me with an investment opportunity which I understand is referred to as the Private

9  Placement Project. She described the project as a rare opportunity to participate in a bond

10  trading investment program with a skilled bond trader. The bond trader would make

11  many trades. Each trade would produce a small profit, but many trades together would

12  produce large profits. Lu also told me that my funds would be protected by HSBC, which

13  sponsored the investment program, and monitored by the authorities, such as the Bank of

14  England, the Securities Exchange Commission, and the World Bank. She also informed

15  me that she sought advice from investment professionals, who assured her that this was a

16  veritable investment opportunity. I relied on these representations in deciding to

17  participate, especially her representations that the funds would be safeguarded by HSBC

18  and monitored by the authorities. I know now that they failed to share with me the

19  substantial risks associated with the so-called investments they were pursuing.

20        7.    In April of 2005, Lu attended meetings in London relating to the Land Base

21  Private Placement Project. I learned on or around April 9, 2005 that Lu intended to attend

22  these meetings in London. Lu informed me that these meetings were to involve the trader

23  and a representative of the U.S. Federal Reserve. While in London, I understand that Lu

24  met with Robert Minton, Keith Millar, Boris Lopatin and Michael Brown. Lu also

25  executed a document titled "Private Enterprise Assets Exchange Benefits Participation

26  Agreement," which I know as the Land Base Agreement. She purported to do this on my

27  
28                             3

behalf.  A true and correct copy of the Land Base Agreement is Exhibit 17 to the Opposition. Lu also obtained and transmitted to me a document stamped by HSBC titled the "Irrevocable Bank Instruction," by which Lopatin and Brown instructed HSBC to safeguard the principal I invested.  This letter provided me additional comfort to participate in the Private Placement Project, and it was consistent with what Lu had told me about HSBC safeguarding my funds. A true and correct copy of the Irrevocable Bank Instruction is Exhibit 38 to the Opposition.

8.    After these meetings, I independently confirmed with HSBC that Michael Brown was a customer in good standing and decided to go ahead with the investment. Again, I was assured by Lu that my funds would be deposited into a segregated "non-depletion" account, and the wire transfer instructions from my HSBC account in Hong Kong directed HSBC in London to deposit my funds into such an account. I later learned that Michael Brown was able to divert my funds to an account maintained and controlled by Mr. Brown alone.

9.    After I deposited my funds in the Private Placement Project at HSBC London, I understand that Brown transferred substantial sums of my money to, among others, Land Base.

10.    I learned that Land Base paid KM&A and its members, including Mira Meltzer and Kevin Kondas, with my funds that Michael Brown had paid Land Base. I did not know that Land Base paid KM&A until my attorneys in this action obtained banking records from Union Bank in or around November of 2008.  These records showed payments from Land Base to KM&A.

11.    I now know that HSBC initiated litigation in or around November or December of 2005 to, among other matters, seek a ruling from the court that they were not responsible for the losses I incurred in the Private Placement Project.  In or around November of 2005, a representative from HSBC contacted me and asked me questions

regarding Michael Brown and his investment program.  When I inquired of Lu about HSBC's phone call, Lu told me she spoke with Lopatin and confirmed that the call related to a problem between HSBC and Brown and that the invested funds were safe at HSBC. She repeatedly confirmed this information thereafter.  I did not learn that my funds were stolen until in or around March or April of 2006.  In March or April 2006, I learned that Lu, without notifying me or seeking my authority, had retained UK counsel to act on my behalf in October or November of 2005.

12.     In or around March of 2006, Lu contacted me about retaining the American lawyer Leonard Suchanek.  She informed me he was recommended to her by Boris Lopatin and was a powerful U.S. judge recommended to her by Boris Lopatin.  Lu and I retained Suchanek in or around September 2006, but he had started working for us in July of 2006.  He was assisted throughout his representation of me by Meltzer.

13.     Suchanek continued to represent me until in or around January 2008. Throughout his representation of me, he repeatedly told me that the Private Placement Project was a legitimate investment program, and that Brown had executed trades generating substantial profits.  Suchanek told me that, because Brown had stolen both my principal investment and profits from trades, I could expect to recover between $160 million and $300 million.  Attached as Exhibit 31 to the Opposition is a true and correct copy of a letter dated August 30, 2007, which Suchanek sent me where he told me this.  I believed Suchanek when he told me that the Private Placement Project was an authentic investment program, and that Michael Brown executed trades that generated profits, which he then stole.

14.     In or around the Fall of 2007, I asked Suchanek whether Kondas and KM&A were involved with Brown's scheme to defraud me.  He assured me that Kondas and KM&A were bona fide, and that they had no involvement whatsoever in Brown's scheme. In fact, at no time during his representation of me from the summer of 2007 through

1    January of 2008 did Suchanek ever tell me that I had potential claims against any of the

2    defendants to this action, including against Kondas, Meltzer, KM&A, CTL or KB&M.

3    Suchanek also assured me numerous times that Land Base and Lopatin were legitimate.

4    I understand that in or around December of 2007, Meltzer told my business partner, Birui

5    Wang, that she received funds from the Private Placement Project.  Ms. Wang passed this

6    information to me, and this was the first time I learned that Ms. Meltzer received funds

7    from the fraud.

8        15.    While the UK action was pending, I learned that Lu had fabricated evidence

9    submitted to the Court, including by drafting a false witness statement and signing my

10    name to it.  She submitted this false statement to the U.K. Court on August of 2006.  I

11    understand that the witness statement that Lu falsified was submitted in support of the

12    Motion for Summary Judgment filed by Meltzer, KM&A, KB&M and CTL.  The witness

13    statement Lu forged contained false information about Lu's relationship with So and So's

14    family and Lu's claimed ownership of a portion of the $30 million placed into the

15    fraudulent scheme.  I notified Meltzer and Suchanek that Lu had falsified my witness

16    statement in or around August of 2007.  Attached to the Opposition as Exhibit 25 is a true

17    and correct copy of an e-mail dated September 5, 2007 from Meltzer to me.  Also attached

18    to the Opposition as Exhibit 26 is a true and correct copy of an e-mail dated September 12,

19    2007 from Suchanek to me.  Suchanek failed to make any efforts to correct my witness

20    statement with the UK trial court, including by informing Antony Brown of the Bivonas

21    firm, the individual primarily responsible for my case in the UK.

22        16.    I declare, under penalty of perjury of the laws of the United States, that the

23    foregoing is true and correct.

24    **FURTHER AFFIANT SAYETH NOT.**

25    Executed on this 25th day of May, 2010, in Guangzhou, China.

26

27                             6

Declaration of Kevin So in Support of Plaintiff's Memorandum of Points and Authorities in
Opposition to Defendants Kevin Kondas, Mira Meltzer, KM & Associates International, LLC,
KB&M Projects International, LLC and CTL Projects International, LLC's
Motion for Summary Judgment

28

1

2
_____

3   Kevin So

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                         7

28   Declaration of Kevin So in Support of Plaintiff's Memorandum of Points and Authorities in
     Opposition to Defendants Kevin Kondas, Mira Meltzer, KM & Associates International, LLC,
     KB&M Projects International, LLC and CTL Projects International, LLC's
     Motion for Summary Judgment