1  Haig Kalbian (Admitted *pro hac vice*)
   Mary M. Baker (Admitted *pro hac vice*)
2  D. Michelle Douglas (CA Bar No. 190248)
   Aaron Knights (Admitted *pro hac vice*)
3  Kalbian Hagerty L.L.P.
   The Brawner Building
4  888 17th Street, N.W., Suite 1000
   Washington, D.C. 20006
5  Phone:    (202) 223-5600
   Facsimile: (202) 223-6625
6  E-mail:    hkalbian@kalbianhagerty.com
              mmb@kalbianhagerty.com
7              mdouglas@kalbianhagerty.com
              aknights@ kalbianhagerty.com
8
   Louis R. Miller, Esq. (CA Bar No. 54141)
9  Alexander Frid, Esq. (CA Bar No. 216800)
   Miller Barondess, LLP
10 1999 Avenue of the Stars, Suite 1000
   Los Angeles, California 90067
11 Phone:    (310) 552-4400
   Facsimile: (310) 552-8400
12 E-mail:        smiller@millerbarondess.com
              sfrid@millerbarondess.com
13
   *Counsel for Plaintiff Kevin So*
14

15              UNITED STATES DISTRICT COURT FOR THE
                CENTRAL DISTRICT OF CALIFORNIA
16                   (Western Division-Los Angeles)

17  KEVIN SO,                          )  CASE NO. CV 08-03336 DDP (AGRx)
18                                      )
                                        )  **JUDGMENT AS TO KONDAS**
              Plaintiff,                )  **DEFENDANTS PURSUANT TO RULE**
19                                      )  **54(b)**
                                        )
20  v.                                  )
                                        )
21                                      )
                                        )
22  LAND BASE, LLC, et al.              )
                                        )
              Defendants.               )
23  ────────────────────────           )

24       Defendants Kevin R. Kondas, Mira M. Meltzer, KM & Associates International,

25  LLC, CTL Projects International, LLC, and KB&M Projects International, LLC

26  (collectively the "Kondas Defendants"), filed a motion for summary judgment which was

27  granted by this Court on September 2, 2010, (Dkt. 473, the "Summary Judgment Order"),

28
    ─────────────────────────────────────────────────────
            **[PROPOSED] JUDGMENT AS TO KONDAS DEFENDANTS
                   PURSUANT TO RULE 54(b)**

NO JS-6

as to all of Plaintiff's claims against the Kondas Defendants.   Plaintiff Kevin So ("Plaintiff"), having moved the Court pursuant to Federal Rule of Civil Procedure 54(b) for issuance of a final judgment incorporating the rulings contained in the Summary Judgment Order, for purposes of initiating an immediate appeal thereof, and good cause appearing therefor,

**IT IS HEREBY ORDERED** that Judgment is granted in favor of the Kondas Defendants and against Plaintiff in accordance with the Summary Judgment Order, attached hereto as Exhibit 1 and incorporated herein.

**IT IS FURTHER ORDERED** that the Court finds there is no just cause for delay and that the Clerk is hereby directed to enter this as a final Judgment upon its filing, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Kondas Defendants are awarded costs.

**SO ORDERED.**

Dated: December 01, 2010

_____
United States District Judge

---

**[PROPOSED] JUDGMENT AS TO KONDAS DEFENDANTS
PURSUANT TO RULE 54(b)**

**EXHIBIT "1"**

Case 2:08-cv-03336-DDP-AGR  Document 509   Filed 12/01/10  Page 4 of 21  Page ID
#:10534
Case 2:08-cv-03336-DDP-AGR  Document 473   Filed 09/02/10  Page 1 of 18  Page ID
#:9935

1

2

3                                                                    O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  KEVIN SO,                        )   Case No. CV 08-03336 DDP (AGRx)
                                     )
12              Plaintiff,           )   **ORDER GRANTING MOTION FOR SUMMARY**
                                     )   **JUDGMENT FILED BY KONDAS,**
13       v.                          )   **MELTZER, KM&A, KM&B, AND CTL**
                                     )
14  LAND BASE, LLC; UNIVEST          )   [Motion filed on May 7, 2010]
    FINANCIAL SERVICES, INC.;        )
15  BORIS LOPATIN, individually      )
    and d/b/a BORIS LOPATIN          )
16  ASSOCIATES and CHARLES W.        )
    WOODHEAD,                        )
17                                   )
                Defendants.          )
18  _____  )

19       This matter comes before the Court on Moving Defendants'

20  Motion for Summary Judgment or, alternatively, for Summary

21  Adjudication.

22  **I.   Background**

23       **A.   Ponzi Scheme and HSBC Litigation**

24       The plaintiff Kevin So ("Plaintiff") has participated in

25  several lawsuits to recoup a $30 million investment he made in 2005

26  in an investment called the Private Placement Project, which turns

27  out to have been a Ponzi scheme operated by a British man named

28  Michael Brown.

1    Plaintiff alleges that his financial advisor and agent, Lucy
2  Lu ("Lu"), conspired with several defendants in the United States-
3  Boris Lopatin, Land Base, the Moving Defendants, and others- to
4  induce Plaintiff to invest in the Ponzi scheme.

5    Once the Ponzi scheme came to light, HSBC Bank- whose accounts
6  were used to further the scheme- filed a lawsuit for declaratory
7  relief (the "U.K. Litigation") against several investors, and named
8  Plaintiff as one such defendant in November 2005.  Plaintiff filed
9  counterclaims for breach of contract, breach of trust, and
10  negligence, arguing that HSBC and Michael Brown- the man who
11  operated the Ponzi scheme- were solely responsible for his losses.
12  Following seven-week trial in October and November of 2007, the
13  court issued a Judgment rejecting Plaintiff's claims against HSBC.

14  **B.   Present Case and Allegations Against Moving Defendants**

15       **1.   Complaint**

16    Plaintiff filed this case in May 2008, naming Boris Lopatin,
17  Land Base LLC, Charles W. Woodhead, and Univest Financial Services,
18  Inc. as defendants.  The Complaint alleged that in December 2004,
19  Lopatin, through his company Land Base LLC, "developed a scheme
20  whereby they, along with non-party Keith Millar, would entice
21  wealthy investors to deposit money into accounts to be managed by
22  supposed bond-trader and non-party co-conspirator, Michael Brown."
23  (Compl. ¶ 10.)   The Complaint alleged Millar was a friend of his
24  agent and fiduciary, Lucy Lu, and that he (1) introduced Lu to the
25  Lopatin Defendants and (2) convinced Lu that Plaintiff should
26  invest in the Ponzi scheme by representing that it was a legitimate
27  investment with no risk.  (Id. ¶¶ 29-33.)   The Complaint did not
28  name any Doe defendants.

1

## 2. First Amended Complaint

2  On January 16, 2009, Plaintiff filed the First Amended
3 Complaint ("FAC"), which asserted claims against Moving Defendants,
4 Kevin Kondas, Keith Millar, KM & Associates International, LLC,
5 KB&M Projects International, LLC, CTL Projects International LLC,
6 and Mira Meltzer. According to the FAC, (1) Kondas and Millar are
7 both principles of KM&A, (2) Lopatin and KM&A are both principals
8 of KB&M, (3) Meltzer maintained a business relationship with Kondas
9 and Millar, and (4) Meltzer and Kondas were managing members of
10 CTL. (FAC ¶¶ 7-14.)

11  The FAC alleges that, after convincing Lu to invest
12 Plaintiff's money in the Private Placement Project, "Millar
13 requested that Lu and So execute an 'Irrevocable Project Funding
14 Agreement' ('IPFA')," which provided that "KM&A was to receive
15 'project funding, essentially a twenty percent (20%) fee from any
16 profits So earned in the Private Placement Project." (Id. ¶ 56.)
17 In addition, "KM&A and its principals, Millar and Kondas, along
18 with their business partner Mira Meltzer, received in excess of
19 $600,000 in 'project funding' payments directly from the $30
20 million in principal So had invested. These payments were made
21 pursuant to the IPFA for purportedly profitable trades." (Id. ¶
22 112.) The IPFA, attached to the FAC as exhibit C, is signed by
23 Kondas on behalf of KM&A. (Id. Ex. C.) Plaintiff alleges that KB&M
24 and CTL were entities used "to assist with sharing, hiding, and
25 distributing the proceeds from the Private Placement Project."
26 (Id. ¶ 114.)

27  The FAC alleges that once the Ponzi scheme came to light,
28 Lopatin convinced Plaintiff "to retain Lopatin's friend and

 1  business associate, Leonard J. Suchanek ('Suchanek'), an attorney
 2  working out of Washington, D.C., to assist him in the HSBC
 3  Litigation.  Suchanek was assisted at all relevant times by
 4  Defendant Meltzer, whom Suchanek employed as a legal assistant."
 5  (Id. ¶ 105.)

 6       The FAC refers to KM&A, Kondas, Millar, and Lopatin as the
 7  "Conspiring Defendants" and asserts claims against them for
 8  fraud/intentional misrepresentation, negligent misrepresentation,
 9  breach of fiduciary duty, fraud based on concealment of material
10  facts, conversion, and civil conspiracy.  The FAC also asserts
11  claims for unjust enrichment/quasi contract and constructive trust
12  against all of the Moving Defendants, including Meltzer.

13            **3.    Second Amended Complaint**

14       On June 12, 2009, Plaintiff filed a motion to amend the
15  complaint, seeking to add "Meltzer, who we learned served as a
16  director of Defendant KM& Associates International LLC ('KM&A') to
17  the existing causes of action" against the other Moving Defendants.
18  The Court granted the motion and Plaintiff filed the Second Amended
19  Complaint ("SAC") on July 16, 2009.

20       **C.    Motion and Moving Defendants' Evidence**

21       Moving Defendants argue that a three-year statute of
22  limitations applies to all claims against them, that Plaintiff had
23  notice of the claims in the fall of 2005, and that all claims-
24  which were raised no earlier than January 2009- are time barred.

25       In support of this argument, Defendants have submitted a
26  privilege log produced by Plaintiff indicating (1) that he retained
27  counsel in connection with the HSBC matter in October 2005, (2)
28  that he was forwarded draft pleadings by counsel in connection with

                              4

Case 2:08-cv-03336-DDP-AGR Document 509 Filed 12/01/10 Page 8 of 21 Page ID
#:10538
Case 2:08-cv-03336-DDP-AGR Document 473 Filed 09/02/10 Page 5 of 18 Page ID
#:9939

 1 | the HSBC litigation in December 2005, and (3) that he personally
 2 | communicated with counsel in December 2005. (Second Thibodo Decl.
 3 | Ex. D, So Privilege Log at pp. 76-77, 446, 451.) Defendants argue
 4 | this evidence shows Plaintiff was on notice of the existence of the
 5 | Ponzi scheme in the Fall of 2005.

 6 | In addition, Defendants have submitted the deposition
 7 | testimony of Plaintiff, in which he stated that (1) defendant Lu
 8 | told him that "she had already signed a contract with KM. And KM is
 9 | an entity of the U.S. Federal Bank, and Kondas is an official at
10 | U.S. Federal Bank, and this 20-percent commission is something that
11 | has to be paid to him," (First Thibodo Decl. Ex. B 55:13-17); and
12 | (2) "[e]very time when funds were needed to be wired to KM & A, Lu
13 | would bring it up. And she would say that pursuant to the contract
14 | . . . there was a 20-percent commission payable to KM & A. And at
15 | each payment, KM & A would issue a receipt." (Id. 55:4-9.)

16 | Finally, Defendants submit transcripts of Plaintiff's
17 | testimony in the U.K. trial, in which he stated that he was
18 | contacted by an HSBC representative in November 2005. Plaintiff
19 | testified: "During my conversation with this gentleman, I was told
20 | there was some problem between HSBC bank and Mr. Brown. He asked
21 | me to co-operate with the investigation in order for me to get my
22 | $30 million investment back." (First Thibodo Decl., Ex. I, So
23 | Trial Testimony 65:3-66:23.)

24 | Alternatively, Defendants argue that they are entitled to
25 | summary adjudication of Plaintiff's claims for fraudulent
26 | misrepresentation, negligent misrepresentation, fraudulent
27 | concealment, and conspiracy to commit fraud because (1) "none of
28 | the KM Defendants made any representation to him that caused him to

5

Case 2:08-cv-03336-DDP-AGR  Document 509   Filed 12/01/10  Page 9 of 21  Page ID
#:10539
Case 2:08-cv-03336-DDP-AGR  Document 473   Filed 09/02/10  Page 6 of 18  Page ID
#:9940

```
 1  act to his detriment," (Mot. 22:18-21) and (2) Plaintiff cannot
 2  show justifiable reliance because he admitted "that the very
 3  misrepresentations he alleges in his Second Amended Complaint were
 4  'completely incredible.'" (Id. 22:22-25.)
 5       D.    Plaintiff's Opposition and Evidence
 6       Plaintiff opposes the motion, arguing that the accrual of the
 7  statute of limitations is delayed by the discovery rule and the
 8  "last overt act" doctrine and that equitable tolling based on
 9  fraudulent concealment applies.  Plaintiff relies heavily on his
10  own declaration.  Plaintiff states in his declaration that (1) he
11  did not know that KM&A received a "commission" until his lawyers
12  informed him of this fact in November 2008; (2) when he was
13  contacted by an HSBC representative in November 2005, he was simply
14  asked some questions regarding Michael Brown and the investment;
15  (3) he did not learn that his money was stolen until March or April
16  of 2006, when he discovered that Lu, without his permission or
17  knowledge, had retained counsel for him in the HSBC litigation.
18  (So Decl. ¶¶ 10-11.)
19       Plaintiff's declaration also states that Lu convinced him to
20  hire Suchanek, who was assisted by Meltzer, as an attorney in 2006.
21  (Id. ¶¶ 12-13.)  Meltzer did not reveal to Plaintiff (or,
22  apparently, to Suchanek) that she was involved with KM&A and had
23  received proceeds from his investment.  Suchanek failed to disclose
24  to Plaintiff that he was representing Lopatin at the same time,
25  and, while representing Lopatin, continued to advise Plaintiff
26  until late 2007 that the Private Placement Project was legitimate.
27  ///
28  ///
```

6

1  **II.  LEGAL STANDARD**

2       Summary judgment and summary adjudication are appropriate
3  where "the pleadings, the discovery and disclosure materials on
4  file, and any affidavits show that there is no genuine issue as to
5  any material fact and that the movant is entitled to a judgment as
6  a matter of law."  Fed. R. Civ. P. 56(c).  The nonmoving party is
7  not, however, required to "produce evidence in a form that would be
8  admissible at trial in order to avoid summary judgment."  Celotex
9  Corp. v. Catrett, 477 U.S. 317, 322, 324 (1986).

10      All reasonable inferences from the evidence must be drawn in
11 favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477
12 U.S. 242, 248, 255 (1986).  A genuine issue exists if "the evidence
13 is such that a reasonable jury could return a verdict for the
14 nonmoving party," and material facts are those "that might affect
15 the outcome of the suit under the governing law."  Id. at 248.  No
16 genuine issue of fact exists "[w]here the record taken as a whole
17 could not lead a rational trier of fact to find for the non-moving
18 party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
19 U.S. 574, 587 (1986).

20 **III. DISCUSSION**

21      **A.   Statute of Limitations**

22      Plaintiff does not dispute that a three-year statute of
23 limitations applies to all claims against the Moving Defendants,
24 nor that the face of the FAC indicates that the claims are time-
25 barred absent some basis for equitable tolling or delayed accrual.
26 Rather, Plaintiff argues that his claims are not time-barred
27 because of (1) the "last overt act" doctrine, (2) the discovery
28 rule, and (3) equitable tolling based on fraudulent concealment.

7

1          **1.    "Last Overt Act"**

2          Plaintiff argues that the statute of limitations does not
3     begin to run until the "last overt act" in furtherance of the
4     conspiracy is complete.  According to Plaintiff overt acts in
5     furtherance of the conspiracy include defendants "efforts to hide
6     bank records; Lu's submission of a false witness statement to the
7     UK Court in August of 2009, Meltzer's ongoing efforts to conceal
8     her, KM&A and her business partners' roles in the fraud, which
9     continued <u>at</u> <u>least</u> throughout the course of the UK litigation."
10    (Opp'n 19:17-20.)

11         Under California law, "when a civil conspiracy is properly
12    alleged and proved, the statute of limitations does not begin to
13    run . . . until the 'last overt act' pursuant to the conspiracy has
14    been completed."  <u>Wyatt v. Union Mortgage Co.</u>, 598 P.2d 45, 53
15    (Cal. 1979).  This is because "[s]o long as a person continues to
16    commit wrongful acts in furtherance of a conspiracy to harm
17    another, he can neither claim unfair prejudice at the filing of a
18    claim against him nor disturbance of any justifiable repose built
19    upon the passage of time."  <u>Id.</u>  An "overt act is an outward act
20    done in pursuance of the crime and in manifestation of an intent or
21    design, looking toward the accomplishment of the crime."  <u>People v.</u>
22    <u>Zamora</u>, 557 P.2d 75, 82 n.8 (Cal. 1976) (internal quotation marks
23    and citation omitted).[1]  Therefore, an overt act "cannot succeed

24

25    _____

26    [1]Although <u>Zamora</u> involved a criminal conspiracy, "its
      conclusions are applicable as well to a civil conspiracy" because
27    "'[t]he differences between civil and criminal conspiracies are
      somewhat beside the point' in applying the statute of limitations."
28    <u>Livett v. F. C. Financial Assoc.</u>, 177 Cal. Rptr. 411, 419 (Ct. App.
      1981) (quoting <u>Wyatt</u>, 598 P.2d at 53).

8

Case 2:08-cv-03336-DDP-AGR  Document 509   Filed 12/01/10  Page 12 of 21  Page ID
#:10542
Case 2:08-cv-03336-DDP-AGR  Document 473   Filed 09/02/10  Page 9 of 18  Page ID
#:9943

 1  the completion of the substantive offense which is the object of
 2  the conspiracy."  Id.

 3       An act of concealment will only be considered a "last overt
 4  act" delaying accrual of the statute of limitations where
 5  concealment is itself the underlying offense and the object of the
 6  conspiracy.  In Zamora, the defendants were convicted of conspiracy
 7  to commit arson, conspiracy to burn insured property with intent to
 8  defraud the insurer, and conspiracy to commit grand theft in
 9  connection with their scheme to burn down a residential building in
10  order to collect insurance proceeds.  Id. at 77.  On appeal, Zamora
11  argued that the counts were barred by a three-year statute of
12  limitations.  Id. at 78.  As to the conspiracy convictions, the
13  Government pointed to the defendants' efforts to conceal the
14  injuries one of them sustained in the fire, arguing that such
15  concealment should constitute the "last overt act" in furtherance
16  of each of the three conspiracies.  Id. at 83.

17       The court rejected this argument, holding that an act of
18  concealment cannot constitute the "last overt act" in furtherance
19  of a conspiracy whose object has already been accomplished.  The
20  court explained that because "every conspiracy will inevitably be
21  followed by actions taken to cover the conspirators' traces,"
22  allowing "such a conspiracy to conceal to be inferred or implied
23  from the mere overt acts of concealment would . . . extend the life
24  of a conspiracy indefinitely" and would "for all practical purposes
25  wipe out the statute of limitations in conspiracy cases . . . ."
26  Id. at 89 n.18 (internal quotation marks and citations omitted).
27  Therefore, the court also rejected the notion that an act of
28  concealment can constitute the "last overt act" where an explicit

Case 2:08-cv-03336-DDP-AGR  Document 509   Filed 12/01/10   Page 13 of 21   Page ID
#:10543
Case 2:08-cv-03336-DDP-AGR  Document 473   Filed 09/02/10   Page 10 of 18   Page ID
#:9944

1  agreement to conceal is shown, since an "arbitrary" distinction
2  between explicit and implicit agreements would be "contrary to the
3  well established rule that the unlawful design of a conspiracy may
4  be proved by circumstantial evidence without the necessity of
5  showing that the conspirators met and actually agreed to commit the
6  offense which was the object of the conspiracy." Id. at 89.

7      Ultimately, the court concluded that "acts committed by
8  conspirators subsequent to the completion of the crime which is the
9  primary object of a conspiracy cannot be deemed to be overt acts in
10 furtherance of that conspiracy." Id. "Consequently, upon
11 successful attainment of the substantive offense which is the
12 primary object of the conspiracy, the period of the statute of
13 limitations begins to run at the same time as for the substantive
14 offense itself." Id. In so holding, the court noted that because
15 it "perceive[d] little distinction between concealment of ac rime
16 by conspirators and the concealment usually undertaken by a single
17 criminal offender," there was "little reason to create a special
18 conspiracy exception which would afford, in effect, an extended
19 limitation period." Id. at 87. As a result, the court reversed
20 the conspiracy convictions because "[t]he conspiracies to commit
21 arson and to burn insured property were completed . . . when the
22 fire was ignited" and "[t]he conspiracy to commit grand theft was
23 complete with receipt of the last insurance payment . . . ." Id.
24 at 90.

25     On the other hand, in People v. Williams, 158 Cal. Rptr. 778
26 (Ct. App. 1979) [hereinafter Williams II], the court held that an
27 act of concealment could constitute the "last overt act" in
28 furtherance of a conspiracy to conceal stolen property where

10

1  concealing stolen property was itself the underlying offense and
2  the object of the conspiracy. In that case, the defendants were
3  charged with receiving and concealing stolen property and
4  conspiring to do the same. The court held that because "the
5  substantive crime underlying the alleged conspiracy is concealment
6  of stolen property," in violation of California Penal Code section
7  496, the conspiracy to conceal stolen property "terminated when the
8  crime of concealment terminated." Id. at 782.

9       However, in the companion case, Williams v. Super. Ct., 146
10  Cal. Rptr. 311, 319 (Ct. App. 1978) [hereinafter Williams I], the
11  court "assume[d] for purposes of this decision that there were two
12  separate conspiracies, one to receive and another to conceal" the
13  stolen property. The court concluded that although the act of
14  concealment constituted a "last overt act" in furtherance of the
15  conspiracy to conceal stolen property, it did not constitute a
16  "last overt act" in furtherance of the conspiracy to receive stolen
17  property because the underlying offense was completed upon the
18  transfer of the property to the defendant. Id. As a result, the
19  court held that while the conspiracy to conceal stolen property was
20  not time-barred, the conspiracy to receive stolen property was
21  "barred by the statute of limitations." Id.

22      In this case, Plaintiff alleges that Moving Defendants
23  conspired to defraud Plaintiff into investing in the Private
24  Placement Project Ponzi scheme. Following the reasoning in Zamora,
25  the court concludes that the acts of concealment subsequent to
26  Plaintiff's investment in the Private Placement Project cannot
27  constitute "overt acts" in furtherance of the conspiracy to defraud
28  Plaintiff into making that investment. Zamora, 557 P.2d at 89

Case 2:08-cv-03336-DDP-AGR  Document 509   Filed 12/01/10  Page 15 of 21   Page ID
#:10545
Case 2:08-cv-03336-DDP-AGR  Document 473   Filed 09/02/10  Page 12 of 18  Page ID
#:9946

1  ("[U]pon successful attainment of the substantive offense which is
2  the primary object of the conspiracy, the period of the statute of
3  limitations begins to run at the same time as for the substantive
4  offense itself.")

5       Following the reasoning in <u>Williams I</u> and <u>Williams II</u>, it is
6  perhaps conceivable that Plaintiff could have attempted to
7  establish that defendants entered into a separate conspiracy to
8  defraud Plaintiff into paying their legal bills or into hiring
9  Suchanek once the Ponzi scheme was discovered.  But, the FAC does
10 not plead such a claim with the required degree of particularity.
11 <u>Wasco Prods., Inc. v. Southwall Techs., Inc.</u>, 435 F.3d 989, 992
12 (9th Cir. 2006) (affirming summary judgment on statute of
13 limitations grounds where specific elements of conspiracy in
14 support of "last overt act" doctrine were not adequately alleged).
15 Nor would such a claim, even if properly pled, delay accrual of the
16 statute of limitations with respect to the conspiracy to defraud
17 Plaintiff into investing in the Private Placement Project in the
18 first place.  <u>Williams II</u>, 146 Cal. Rptr. at 319 (holding that
19 where "there were two separate conspiracies, one to receive and
20 another to conceal" stolen property, the former was time-barred
21 notwithstanding the fact that the last overt act in furtherance of
22 the latter occurred within the statutory period).

23                    **2.   Discovery Rule**

24      Alternatively, Plaintiff argues that his claims fall within
25 the statute of limitations based on the discovery rule.  The
26 statute of limitations typically commences when the cause of action
27 accrues, which occurs on the date of injury.  <u>Jolly v. Eli Lilly &</u>
28 <u>Co.</u>, 751 P.2d 923, 926 (Cal. 1988).  However, this general rule is

                                    12

Case 2:08-cv-03336-DDP-AGR   Document 509   Filed 12/01/10   Page 16 of 21   Page ID
#:10546
Case 2:08-cv-03336-DDP-AGR   Document 473   Filed 09/02/10   Page 13 of 18   Page ID
#:9947

1 | modified by the common law "discovery rule." <u>Id.</u> "Under the
2 | discovery rule, the statute of limitations begins to run when the
3 | plaintiff suspects or should suspect that her injury was caused by
4 | wrongdoing, that someone has done something wrong to her." <u>Id.</u> at
5 | 927.  Thus, "the limitations period begins once the plaintiff has
6 | notice or information of circumstances to put a reasonable person
7 | on inquiry." <u>Id.</u> at 928 (internal quotation marks and citation
8 | omitted).  As the California Supreme Court put it:

9 |     A plaintiff need not be aware of the specific 'facts'
    necessary to establish the claim; that is a process
10 |     contemplated by pretrial discovery.  Once the plaintiff
    has a suspicion of wrongdoing, and therefore an incentive
11 |     to sue, she must decide whether to file suit or sit on her
    rights.  So long as a suspicion exists, it is clear that
12 |     the plaintiff must go find the facts; she cannot wait for
    the facts to find her.
13 | <u>Id.</u>  But, while "ignorance of a generic element of the cause of
14 | action" will delay accrual of the statute of limitations,
15 | "ignorance of <u>the identity of the defendant</u> does not . . . ." <u>Fox</u>
16 | <u>v. Ethicon Endo-Surgery, Inc.</u>, 110 P.3d 914, 923 (Cal. 2005)
17 | (emphasis added).

18 |     In this case, the undisputed facts show that Plaintiff was on
19 | inquiry notice of his claims by no later than the Fall of 2005.
20 | Defendants have presented evidence that by December of 2005: (1)
21 | Michael Brown's Ponzi scheme had come to light, (2) HSBC had frozen
22 | Plaintiff's account and sued Plaintiff for declaratory relief, (3)
23 | Plaintiff had hired a team of lawyers, (4) Plaintiff had privileged
24 | communications with his lawyers and had reviewed draft pleadings in
25 | connection with the lawsuit, and (5) Plaintiff had been contacted
26 | by an HSBC representative and told that if he cooperated he could
27 | "get [his] $30 million investment back."  These facts were
28 | sufficient to put a reasonable person in Plaintiff's position on

13

Case 2:08-cv-03336-DDP-AGR Document 509 Filed 12/01/10 Page 17 of 21 Page ID
Case 2:08-cv-03336-DDP-AGR Document 473 #:10547 Filed 09/02/10 Page 14 of 18 Page ID
#:9948

1 inquiry notice "that [his] injury was caused by wrongdoing . . . ."
2 Jolly, 751 P.2d at 927.

3     The only evidence submitted by Plaintiff that purportedly
4 contradicts these facts is Plaintiff's declaration. Plaintiff's
5 declaration states, in pertinent part: (1) "In or around November
6 of 2005, a representative from HSBC contacted me and asked me
7 questions regarding Michael Brown and his investment program," but
8 "[w]hen I inquired of Lu about HSBC's phone call, Lu told me she
9 spoke with Lopatin and confirmed that the call related to a problem
10 between HSBC and Brown and that the investment funds were safe at
11 HSBC," (So Decl. ¶ 11); (2) "In March or April 2006, I learned that
12 Lu, without notifying me or seeking my authority, had retained UK
13 counsel to act on my behalf in October or November of 2005," (id.);
14 and (3) "I did not learn that my funds were stolen until in or
15 around March or April of 2006." (Id.)

16     The first statement about his conversation with an HSBC
17 representative is so vague that it does nothing to controvert
18 Plaintiff's sworn testimony that the representative told him he
19 could "cooperate" with HSBC in order to get his "$30 million
20 investment back." (First Thibodo Decl., Ex. I, So Trial Testimony
21 65:3-66:23 (emphasis added).) The second statement directly
22 contradicts Plaintiff's privilege log, which indicates that one
23 such lawyer hired on his behalf sent him draft pleadings in
24 connection with the HSBC litigation and had a privileged
25 conversation with him in December 2005. The third statement is
26 conclusory, self-serving, and also at odds with Plaintiff's
27 privilege log and his sworn testimony concerning his discussion
28 with the HSBC representative. The Ninth Circuit has "refused to

14

Case 2:08-cv-03336-DDP-AGR  Document 509   Filed 12/01/10  Page 18 of 21  Page ID
Case 2:08-cv-03336-DDP-AGR  Document 473 #:10548 Filed 09/02/10  Page 15 of 18  Page ID
#:9949

1  find a 'genuine isue' where the only evidence presented is
2  'uncorroborated and self-serving' testimony." <u>Villiarimo v. Aloha</u>
3  <u>Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing
4  <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996)); <u>see</u>
5  <u>also</u> <u>FTC v. Publ'q Clearing House, Inc.</u>, 104 F.3d 1168, 1171 (9th
6  Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed
7  facts and any supporting evidence, is insufficient to create a
8  genuine issue of material fact.").

9      Therefore, the undisputed facts show that Plaintiff was on
10  inquiry notice of his claims no later than December 2005, more than
11  three years before he filed the FAC in this lawsuit.  Even assuming
12  that Plaintiff was unaware of the identities of some of the
13  defendants until later, "ignorance of the identity of the
14  defendant" does not delay accrual of the statute of limitations
15  pursuant to the discovery rule.  <u>Fox</u>, 110 P.3d at 923.

16          **3.  Fraudulent Concealment**

17      Finally, Plaintiff argues that the statute of limitations
18  should be tolled because the Moving Defendants fraudulently
19  concealed their identities.  In particular, Meltzer acted as a
20  legal assistant to Plaintiff's lawyer, Suchanek, without disclosing
21  (1) her connection to the other Moving Defendants and (2) the fact
22  that Suchanek simultaneously represented Lopatin.  Additionally,
23  while Meltzer assisted Suchanek, Suchanek advised Plaintiff that he
24  did not have a potential claim against Lopatin, KM&A, or Kondas.

25      The California Supreme Court has recognized "the equitable
26  principle that a defendant who intentionally conceals his or her
27  identity may be equitably estopped from asserting the statute of
28  limitations to defeat an untimely claim . . . ."  <u>Bernson v.</u>

15

Case 2:08-cv-03336-DDP-AGR  Document 509   Filed 12/01/10  Page 19 of 21   Page ID
Case 2:08-cv-03336-DDP-AGR  Document 473   Filed 09/02/10  Page 16 of 18  Page ID
#:10549
#:9950

1 | Browning-Ferris Indus., 30 Cal. Rptr. 2d 440, 444-45 (1994).
2 | "[W]here the bar [of the statute of limitations] becomes a sword
3 | rather than a shield, wielded by a party that has intentionally
4 | cloaked its identity, factors of fairness and unjust enrichment
5 | come into play, which courts are bound to consider in equity and
6 | good conscience." Id. at 445.  Therefore, the statute of
7 | limitations "may be equitably tolled" when "as a result of
8 | intentional concealment, the plaintiff is unable to discover the
9 | defendant's actual identity." Id. at 446.

10 | But, this "rule of equitable estoppel includes, of course, the
11 | requirement that the plaintiff exercise reasonable diligence." Id.
12 | As a result, "the statute will toll only until such time that the
13 | plaintiff knows, or through the exercise of reasonable diligence
14 | should have discovered, the defendant's identity." Id.  "One
15 | factor which must be considered pertinent to the diligence inquiry
16 | is whether the filing of a timely Doe complaint would, as a
17 | practical matter, have facilitated the discovery of the defendant's
18 | identity within the requisite three-year period for service of
19 | process." Id.  "Where the identity of at least one defendant is
20 | known, for example, the plaintiff must avail himself of the
21 | opportunity to file a timely complaint naming Doe defendants and
22 | take discovery." Id. (emphasis added).  California Code of Civil
23 | Procedure section 474 permits a plaintiff to file suit against a
24 | Doe party and "[f]rom the time such a complaint is filed, the
25 | plaintiff has three years to identify and serve the defendant."
26 | Jolly, 751 P.2d at 932 (discussing Cal. Code Civ. P. § 474).
27 | Section 474 "effectively enlarg[es] the statute of limitations
28 | period by three years." Id.

Case 2:08-cv-03336-DDP-AGR  Document 509   Filed 12/01/10  Page 20 of 21   Page ID
Case 2:08-cv-03336-DDP-AGR  Document 493 50 Filed 09/02/10  Page 17 of 18  Page ID
#:9951

 1       Here, it is clear that Plaintiff could have filed a timely Doe
 2  Complaint within the limitations period.  In fact, Plaintiff filed
 3  the Complaint in this action on May 20, 2008, just over two years
 4  into the limitations period, naming Land Base, Boris Lopatin, and
 5  Charles Woodhead, and alleging that "Land Base and Lopatin, acting
 6  in concert with various non-party co-conspirators" engaged in a
 7  "conspiracy wherein these Defendants intended to and did steal
 8  millions of dollars from unsuspecting investors like the
 9  Plaintiff."  (Compl. ¶ 1.)  The Complaint, did not, however, name
10  any Doe defendants in the caption, nor did it assert any claims
11  against Doe defendants.  See Fireman's Fund Ins. Co. v. Sparks
12  Const., Inc., 8 Cal. Rptr. 3d 446, 452 (Ct. App. 2004) (noting that
13  section 474 requires that the complaint allege a claim against each
14  Doe defendant and allege that the plaintiff is ignorant of the Doe
15  defendant's names).  Furthermore, Plaintiff filed suit against his
16  former attorney, Suchanek, in December 2008 based on his failure to
17  disclose that he had a conflict of interest due to his
18  representation of Lopatin, but Plaintiff still did not seek to
19  amend his complaint in this case to name Doe defendants.

20       Because the undisputed facts show that Plaintiff failed to
21  exercise due diligence, he is not entitled to rely on fraudulent
22  concealment to toll the statute of limitations.  Bernson, 30 Cal.
23  Rptr. 2d at 446.
24  ///
25  ///
26  ///
27  ///
28  ///

                                 17

Case 2:08-cv-03336-DDP-AGR  Document 509  Filed 12/01/10  Page 21 of 21  Page ID
Case 2:08-cv-03336-DDP-AGR  Document 497-1 Filed 09/02/10  Page 18 of 18  Page ID
#:9952

**IV.    Conclusion**

        For the reasons set forth above, the Court GRANTS the Motion
for Summary Judgment.

IT IS SO ORDERED.

Dated: September 2, 2010

DEAN D. PREGERSON
United States District Judge

18